# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

ASHLEY B BENNETT

vs.

NORTH PENN SCHOOL DISTRICT

NO.  2020-13927

## NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY  BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Francis Alexander, LLC
Francis Malofiy, Esquire
Attorney ID No.:  208494
Alfred (AJ) Fluehr, Esquire
Attorney ID No.: 316503
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

The Court of Common Pleas
Montgomery County, Pennsylvania

| | |
|---|---|
| Ashley B. Bennett<br>*Plaintiff*<br><br>v.<br><br>North Penn School District;<br>North Penn School District Board of Directors;<br>J. Mia Kim;<br>Michael Sean Arney;<br>Curtis R. Dietrich;<br>Christine Liberaski Kroznuski;<br>Martina Stoll;<br>Christian D. Fusco;<br>Elisha K. Gee;<br>Jonathan M. Kassa;<br>Wanda Lewis-Campbell;<br>Timothy MacBain;<br>Juliane D. Ramić;<br>Alfred R. Roesch, III;<br>Catherine A. Wesley<br>*Defendants* | Civil Action No.:<br>2020-13927<br><br>August Term, 2020<br><br>Civil Action:<br><br>1.  1st Amendment -<br>    Free Speech Retaliation<br><br>2.  1st Amendment -<br>    Political Assoc. Retaliation<br><br>3.  14th Amendment<br>    Procedural Due Process Violations<br><br><br><br>*Jury Trial Demanded* |

## Notice to Defend – Civil Complaint

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by plaintiff. You may lose money or property or other rights important to you.
YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.MONTGOMERY BAR ASSOCIATION
Lawyer Reference Service
100 W. Airy Street (REAR)
Norristown, PA 19404-0268
(610) 279-9660, EXTENSION 201

### AVISO

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE MONTGOMERY
Servicio De Referencia Legal
100 W. Airy Street (REAR)
Norristown, PA 19404-0268
(610) 279-9660, EXTENSION 201

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

FRANCIS ALEXANDER, LLC
Francis Malofiy, Esquire
Attorney ID No.:  208494
Alfred (AJ) Fluehr, Esquire
Attorney ID No.: 316503
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

## THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| ASHLEY B. BENNETT<br>*Plaintiff*<br><br>v.<br><br>NORTH PENN SCHOOL DISTRICT;<br>NORTH PENN SCHOOL DISTRICT BOARD<br>OF DIRECTORS;<br>J. MIA KIM;<br>MICHAEL SEAN ARNEY;<br>CURTIS R. DIETRICH;<br>CHRISTINE LIBERASKI KROZNUSKI;<br>MARTINA STOLL;<br>CHRISTIAN D. FUSCO;<br>ELISHA K. GEE;<br>JONATHAN M. KASSA;<br>WANDA LEWIS-CAMPBELL;<br>TIMOTHY MACBAIN;<br>JULIANE D. RAMIĆ;<br>ALFRED R. ROESCH, III;<br>CATHERINE A. WESLEY<br>*Defendants* | CIVIL ACTION NO.:<br>2020-13927<br><br>AUGUST TERM, 2020<br><br>CIVIL ACTION:<br><br>1.  1ST AMENDMENT -<br>FREE SPEECH RETALIATION<br><br>2.  1ST AMENDMENT -<br>POLITICAL ASSOC. RETALIATION<br><br>3.  14TH AMENDMENT<br>PROCEDURAL DUE PROCESS VIOLATIONS<br><br><br>*JURY TRIAL DEMANDED* |

## CIVIL ACTION COMPLAINT
---
## UNCONSTITUTIONAL FREE SPEECH RETALIATION AND
## DUE PROCESS VIOLATIONS

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## Introduction

1.       Mrs. Ashley B. Bennett worked for 27 years with special needs children, and was employed for the last 8 years as Supervisor of Special Education for the North Penn School District. She has a stellar record, a master's degree in special education, and has dedicated her career to helping disadvantaged children.

2.       That all ended when the proverbial social media mob came for Ashley Bennett in late June 2020 because she expressed mainstream political opinions critical of Black Lives Matter and expressed right of center political opinions in a private June 24, 2020 Facebook repost unconnected to her job.

3.       The polestar of civics in the United States is that a public employee cannot be disciplined for the content of private political speech under the First Amendment. This is also enshrined in North Penn's board policies. See, e.g., Board Policy 320 *Freedom of Speech in Nonschool Settings* ("The Board acknowledges the right of administrative, professional and support employees as citizens in a democratic society to speak out on issues of public concern."); Board Policy 321 *Political Activities*.

4.       Yet, North Penn heedlessly joined in eager to attack one if its own. Defendants immediately suspended Bennett without warning on June 25, 2020, placed her under investigation telling her she was a racist, and told her she should start looking for another job.

5.       In case there was any ambiguity about why Defendants were attacking Bennett, North Penn then posted a press release *to its own website* on June 26, 2020—while also providing comment for news outlets—blasting Bennett and forthrightly admitting they had targeted her for expressing political opinions on Black Lives Matter that Defendants disagree with:

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> The comments *do not align* with the North Penn School District's core values. *The views expressed conflict with our work to develop a community that values diversity*. We strive to acknowledge, respect, understand, and celebrate the dynamics of racial and cultural differences. ...
>
> The employee has been placed on administrative leave while an investigation is conducted

<u>See</u> Exhibit 1. This is an astonishing and straightforward admission of viewpoint retaliation and discrimination in violation of Bennett's rights to free speech and political affiliation under the First Amendment.

6.      It is a sad testament to the state of public education that alleged educators could so deliberately violate Ashley's civil rights without any regard for basic principles and tenants of American governance. Defendants, who are overwhelmingly left-wing administrators and elected officials, are criminalizing disagreement with their left wing politics. Defendants believe that they have a monopoly on truth and acceptable political commentary.

7.      Note that if this is how administrators who do not toe the line of left wing orthodoxy are treated, then the Defendants' conduct toward students is almost certain to be far worse.

8.      This press release and press comments by North Penn legitimatized the outrageous attacks on Ashley Bennett, illegally imposed left-wing government speech codes on public employees, and destroyed Ashley Bennett's career.

9.      Aside from violating Bennett's civil rights, the public fusillade leveled against her also unambiguously violated Pennsylvania criminal law which requires strict confidentiality of all disciplinary complaints. <u>See</u> 23 P.S. § 2070.17b(b) (attached); Board Policy 317 (attached). Each publication by Defendants is a third degree misdemeanor punishable by up to 1 year in jail and $2,500 in fines.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

10.     As a result of Defendants' criminal press blitz, Bennett became a pariah overnight—as Defendants intended.

11.     There was never a shred of cause for Defendants to discipline, investigate, or publicly comment on Ashley Bennett, who was engaging in protected political speech.

12.     Despite the lack of cause, following the public attacks Defendants proceeded to interrogate Mrs. Bennett for days about her thoughts, beliefs, and ideas with the goal and purpose of forcing her to resign. Defendants were not subtle about this goal, with the Director of HR Mia Kim stating that if Bennett did not resign the district would terminate her and ruin her career:

> Kim:     You have come in fighting for your job. If you were my sister would be "Listen, *are you planning on working years down the road*, if that is the case, A, you want your job, but the big picture is where do you, *this is going to get ugly, have you thought about the consequences about future employment?* When you have the hearing, you can have a closed hearing, but that information will become public. You can also have an attorney with you. I am not judging you as a person, *what is your plan, do you want to be employed? If the answer is yes, think about the consequences.* If you want to go to the board, you will have a LoudermIlk [sic] hearing. Any information is going to find out about that.
>
> Bennett:  it's already out there, so how much more public could it be?
>
> Kim:     *it's different to be terminated then quitting. If you are terminated, no one will look at your resume, it speaks volumes.*

See Exhibit 6 (emphasis added).

13.      These Orwellian investigation sessions had no legitimate purpose, but instead were meant to coerce her into resigning.

14.     Reeling, and humiliated by the District's false and outrageous public attacks on her, Mrs. Bennett involuntarily resigned on July 9, 2020, under protest as a result of Defendants' coercion. Defendants had never even told her what the charges were against her.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

15.     Defendants' conduct, retaliating against a public employee for private political expression, is utterly alien to a civilized nation of laws. The fact that Bennett was maliciously prosecuted, brow beaten, and publicly humiliated, without regard for law or due process, is a stunning injustice and indictment of the public education system. The actions of the District's petty tyrants shock the conscience of any reasonable observer.

16.     Throughout the hell Bennett was put through the crime was unknown, the process was the punishment, denials were evidence of guilt, and the result predetermined. This conduct is more befitting a Star Chamber, the Soviet Union, or the plot of *1984* than the United States of America.

17.     Ashley Bennett brings this Complaint to protect not only her rights, but also because the Defendants at North Penn have publicly declared that their intent, goal, and purpose is to chill the freedom of speech for all citizens who disagree with their preferred politics.

18.     This anti-American and illegal conduct must be quashed wherever it is found.

*****

## Background

**The Facebook Post and North Penn's Initial Retaliation against Ashley Bennett on June 25 and June 26, 2020**

19.     On the evening of June 24, 2020, at 9:39 pm, North Penn School District's Supervisor of Special Education, Ashley Bennett, reposted a comment on her personal Facebook profile she had seen circulating. She did this on her personal device, not during work.

20.     The private repost concerned the controversial Black Lives Matter political movement and sought to point out that many black lives are ignored and marginalized by the left-wing movement:

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"I'm confused right now.

I see signs all over saying #BlackLivesMatter. I'm just trying to figure out WHICH black lives matter.

It can't be the unborn black babies – they are destroyed without a second thought.

It's not black cops – they don't seem to matter at all.

It's not my black #Conservative friends. They are told to shut the f*ck up if they know what's best for them by their black counterparts. It's not black business owners. Their property, their business and their employees don't mean anything.

So which black lives matter again?!?

I can't keep up. I can't. I'm exhausted trying to figure out what we're all supposed to do, believe, and be offended by, and outraged by next.

....

Just 45 days ago protests weren't "essential" and were considered criminal, selfish, and a murderous activity because of the #Coronavirus. Today they are gloriously critical and celebrated. All of the obvious criminal and murderous activities are simply ignored.

If you protest about lock-downs for freedom, you are selfish and you will spread a virus.

If you protest, loot, and riot for social justice, you are a warrior and immune from the virus.

....

Then came social justice, and social distancing was suddenly no more. #Democrat governors and mayors marched arm-in-arm with protesters. A thousand people at three memorials for someone they never even met.

It's a matter of "respect". But you couldn't have a funeral for a family member.

Black Lives Matter. Of course they do. But then multiple black police officers and individuals were killed during the "peaceful protests". I don't see any outrage.

Black individually owned businesses were burned to the ground. Silence.

Deadliest weekend in Chicago, virtually all black on black violence. The

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

#MainstreamMedia is silent. NOTHING!!

I'm confused now.

Look at the data. NO, not that data.

Do the math. No, you can't do the math like that.

Only the experts can understand the data and the math.

And Black Lives Matter protesters REFUSE to look at or discuss the #FBI Crime Statistics - because the data doesn't support their claims of systemic racism against blacks.

Just listen to the black community leaders. No, not them, only the radicals are right.

....

Remember. It's an election year and #liberals are desperate, don't put anything past them.

They hate #PresidentTrump more than they love #America and they don't care how much damage they do to our country.

So for now I pray.

I pray God will heal our land and Bless the United States of America."

<u>See</u> Exhibit 2.

21.    The repost was not connected to her job duties, was entirely unconnected to her employment, and was on a matter of public concern. <u>See</u> Exhibit 2 - Facebook Post. The repost expressed opinions shared by many, many Americans of all creeds.

22.    Some members of the community, ironically, were outraged with the content of her repost. It is, of course, the right of citizens to disagree with each other.

23.    However, as is often the case these days, a social media mob formed and came for Mrs. Bennett's job at North Penn based on the content of her expression, contacting school officials. These individuals refuse to accept that citizens in a free society have the right to disagree with each other without facing personal ruination.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

24.     The response from the District should have simply been that employees have a First Amendment right to say what they want outside school on matters of public concern. See Garcetti v. Ceballos, 547 US 410, 419 (2006) (stating that public employees who express opinions on matters of public concern unrelated to their employment have the broadest First Amendment protection).

25.     This is, after all, also the District's explicit policy. See Exhibit 3 - Board Policy 320 ***Freedom of Speech in Nonschool Settings*** ("The Board acknowledges the right of administrative, professional and support employees as citizens in a democratic society to speak out on issues of public concern."); Exhibit 4 - Board Policy 321 ***Political Activities*** ("The Board recognizes and encourages the right of administrative, professional and support employees, as citizens, to engage in political activity."). The District certainly should not have offered aid, succor, and legitimacy to such a mob.

26.     To its shame, North Penn (a ***public*** school district) and its officials immediately joined in and targeted one of their own. The District and Director of HR Mia Kim suspended Mrs. Bennett without warning or notice or cause on June 25 for the Facebook post. Kim only told her that her repost was racist and that she was starting a vague and unspecified investigation (apparently of Ashley Bennett's thought crimes). Mrs. Bennett was blindsided.

27.     The District repeatedly (but falsely) assured her on June 25 that the existence of the complaint against her and an investigation would be kept confidential. This is expressly required by law and Board Policy to avoid prejudicing and shaming employees without due process, and violators commit a third degree misdemeanor. See 24 P.S. § 2070.17b(b); Exhibit 5 - Board Policy 317.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

28.     The District's assurances were, however, untrue. The District, having adjudicated Bennett guilty of thought crimes, decided that it did not have to comply with the confidentiality law.

29.     At the same time on June 25, 2020, as the District assured Mrs. Bennett it would keep everything confidential (as it had a legal obligation to do), it was secretly and criminally providing comment to news organizations and drafting a press release for posting on North Penn's website the morning of June 26, 2020. This was prohibited First Amendment retaliation.

30.     This press release was drafted and posted by at least defendant Christine Liberaski Kroznuski (the district spokeswoman) and defendant Kim, and was known about, supervised, and ratified by all other defendants.

31.     The purpose of these illegal public statements were to attack, stigmatize, and otherwise ruin Ashley Bennett, coercing her to resign because she had expressed political viewpoints Defendants hated.

32.     The statements by the District vilified Ashley and expressly claimed that she was being suspended and investigated for expressing viewpoints that contradict the District's values, including diversity:

> The comments *do not align* with the North Penn School District's core values. *The views expressed conflict with our work to develop a community that values diversity.* We strive to acknowledge, respect, understand, and celebrate the dynamics of racial and cultural differences. ...
>
> The employee has been placed on administrative leave while an investigation is conducted.

See Exhibit 1 - 6/26/2020 North Penn Statement (emphases added). Accusations of this sort by an educator's employer, in this environment, effectively spell the end of the educator's employment and career.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

33.     The press release even expressly endorsed and expressed solidarity with certain political movements such as Black Lives Matter, making it abundantly clear that any employee who expresses an opinion perceived as offending that movement will be disciplined and ostracized without regard for the law.

34.     A news article, posted on 9:09 am on June 26, 2020, contained similar comments as the press release, from "district officials" about Bennett:

> "The comments that were brought to our attention do not align with the North Penn School District's core values. The views expressed are in direct conflict with our work to develop a community that values diversity.

Keith Heffintrayer, "North Penn Employee Placed On Administrative Leave Following Comments Opposing Black Lives Matter," NORTH PENN NOW (June 26, 2020, at 9:09 am), https://northpennnow.com/north-penn-employee-placed-on-administrative-leave-following-comments-oppos-p2930-117.htm.

35.     The article further noted, as the headline conveys, that: "Officials said that Bennett has since been placed on administrative leave while they conduct an investigation into her actions." Id.

36.     The officials who spoke with the media were at least defendants Liberaski and Kim, and their contact with the media was known about, supervised, and ratified by all other defendants.

37.     As the District was posting the press release and commenting for the media, the superintendent defendant Curtis Dietrich and several board members also told members of the public agitating to have Bennett fired that the District was addressing her continued employment through "legal and HR."

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

38.    Incredibly, the District's multiple public and media comments forthrightly and expressly admit to unconstitutional viewpoint and political association retaliation.

39.    All of these statements regarding Bennett by the District and its officials make it clear that the retaliation against Ashley was a considered and official action by the District, not the rogue action of one or two employees.

40.    All of these public statements by Defendants are blatant criminal violations of 24 P.S. § 2070.17b and Board Policy 317, punishable by up to 1 year in jail for each violation. See Exhibit 5.

41.    Disclosing even the existence of disciplinary action is a third-degree misdemeanor. See Doe v. Governor of Pa., No. 18-3299   (3d Cir. Nov. 4, 2019) (stating that "discussing anything about the investigation—even its existence—would make" the discloser "subject to criminal penalties").

42.    Furthermore, the confidentiality of disciplinary proceedings is so ingrained in public education administrators that the publicizing of this matter could only have been done with willful disregard of the criminal penalties imposed for disclosure. Indeed, defendant Kim repeatedly told Bennett that she had to keep the process confidential—while Kim and the other Defendants deliberately breached the confidentiality law. See Exhibit 6 - Meeting Notes (Kim telling Bennett on 6/29/2020: "This is a confidential meeting, do not talk to anyone about the issue.").

43.    Upon waking up on the morning of June 26, 2020, and seeing the public comments by the District and Superintendent and Board, Ashley Bennett found herself blindsided for the second time in 24 hours. She was mentally and emotionally devastated, watching her career, reputation, and life crumble in a matter of hours.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

44.     By publicly attacking Ashley, contrary to its express promises of confidentiality and the law, the District effectively made it impossible for Ashley to defend herself at work or in public as she was still trying to cope with the shock of what had happened to her. It is hard to imagine a more direct and egregious violation of a public employee's Federal and State rights, and the District's very own policies.

45.     The press release was allowed to remain on NPSD's website for several weeks, thereby indicating that its posting was known about and approved by all Defendants, until it was quietly deleted without explanation evidencing consciousness of guilt. The actions of the District's petty tyrants shock the conscience of any reasonable observer.

46.     Yet, despite the District ignoring its constitutional and other legal obligations to Mrs. Bennett, it continued to insist that she keep the matter confidential, muzzling her from defending herself from the illegal public broadside she had just been subjected to. See Exhibit 6 - Meeting Notes (Kim telling Bennett on 6/29/2020: "This is a confidential meeting, do not talk to anyone about the issue.").

47.     That this happened to a public employee is a manifest and outrageous injustice; however, Bennett's Orwellian nightmare was just beginning.

**The District Threatens Bennett to Resign, or Be Subjected to Further Public Retaliation and Termination, Despite Having No Cause Whatsoever to Discipline or Investigate Her in the First Place**

48.     Following the illegal conduct of Defendants on June 25 and June 26, 2020, North Penn's clearly illegal conduct then continued unabated over the next several days despite there never having been a shred of cause to lift a finger against Bennett.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

49.     At no point was Bennett told what rule or policy or law she had violated, other than that her Facebook post was racist and allegedly "does not line up with North Penn values"—nostrums she vigorously disagrees with. See Exhibit 6.

50.     However, the content of the private posts unrelated to her job are irrelevant under the Constitution; she does not have to explain her beliefs to the government.

51.     No notice of the actual charges or evidence against her was *ever* provided. These actions taken against her were a malicious prosecution: a knowingly illegitimate and reckless proceeding with no legal cause or factual basis.

52.     Instead of being given notice of the charges and evidence against her, and a Loudermill hearing as required by due process, North Penn instead took it upon itself to engage in repeated interrogation sessions of Bennett on 6/29, 6/30, and 7/1/2020, not about any actual violation of any policy or law, but instead her beliefs. Defendants Kim and Arney were present. The minutes of these meetings were taken down by an Act 93 representative and show that Defendants were acting brazenly in threatening Bennett.

53.     These sessions had no legitimate investigative purpose or legal justification, and were conducted with the intent and purpose to force and coerce her to resign by threatening her with termination. Defendants also stated that if she contested the termination, instead of resigning, that they would destroy her career in education.

54.     "If an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive." Schultz v. United States Navy, 810 F. 2d 1133, 1136 (Fed. Cir. 1987). Here, the threatened removal was not predicated on any legal foundation, had no connection to her job, could not be substantiated, and was in fact blatantly in violation of the US and Pennsylvania constitutions.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

55.     The meetings started with Defendants informing Ashley in the 6/29 session that she was suspended on June 25 and is now being investigated because "The post does not line up with North Penn values." This is yet another express admission—in addition to the public comments made by Defendants—that all actions taken by Defendants against Bennett were retaliation for her private political opinions.

56.     Defendants then outrageously told Bennett that "This is a confidential meeting, do not talk to anyone about the issue"—after having already publicly (and illegally) attacked her in the press.

57.     Following these initial admonitions, Ashley was repeatedly interrogated on 6/29 and 6/30 and asked to justify the thought processes and purposes behind each idea in her political Facebook posts. See Exhibit 6.

58.     Government agents have no right to interrogate an employee about their private political beliefs and mental thought processes, especially when unmoored from any real allegation of wrongdoing. This is a truly outrageous abuse of governmental power, and a stark warning about the erosion of constitutional protections in this country.

59.     After Defendants finished dissecting Bennett's thought crimes on the first two days, on July 1, 2020, Bennett told Defendants that she was going to "fight for my job."

60.     However, Defendants had other ideas, and threatened Bennett with termination and career ruin if she did not immediately resign:

> Kim:     You have come in fighting for your job. If you were my sister would be "Listen, *are you planning on working years down the road*, if that is the case, A, you want your job, but the big picture is where do you, *this is going to get ugly, have you thought about the consequences about future employment?* When you have the hearing, you can have a closed hearing, but that information will become public. You can also have an

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> attorney with you. I am not judging you as a person, *what is your plan, do you want to be employed? If the answer is yes, think about the consequences.* If you want to go to the board, you will have a LoudermIlk [sic] hearing. Any information is going to find out about that.

Bennett:    it's already out there, so how much more public could it be?

Kim:    *it's different to be terminated then quitting. If you are terminated, no one will look at your resume, it speaks volumes.*

See Exhibit 6 (emphasis added). It is incredible to see such blatantly coercive threats so candidly and casually delivered by a high-level administrator.

61.     Note that discipline can only be made public if Bennett was in fact found to have so seriously violated a policy that nonprivate discipline had to be imposed; when Kim said "that [hearing] information will become public" she was in effect telling Bennett that it had already been determined she would be disciplined and terminated.

62.     Remember, these threats against Bennett's job, career, future, and reputation are being made solely because she engaged in private and protected political expression. They were particularly credible threats given that Defendants had already demonstrated it had no compunction about criminally attacking her publicly and ruining her life.

63.     It is particularly insidious that Kim would attempt to make it seem as if she is kindheartedly providing advice to Bennett as a sister would, when she is actually trying to destroy Bennett's life over political differences.

64.     Kim continued making it unambiguously clear that Bennett's only option was to resign and that she would be terminated otherwise:

Bennett:    this is my only option? *There is no other option to get a second chance?*

Kim:    how can we set you up for success. *Honesty, it would be very difficult setting you up for success, I don't see us moving in that direction.* I

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> would not bring up Loudermilk [sic] if that was a consideration of keeping your employment with the district.

See Exhibit 6 (emphasis added). Again, it is being made unambiguously clear to Bennett that there is no other option other than resignation, because she is going to be terminated.

65.     Kim also told Bennett to consider "Who the board is" and how it would "ruin your future" if Bennett defended herself and did not resign.[1] This was plainly a reference to the liberal Democrat composition of the Board and their political opposition to her Facebook post.

66.     The interrogation sessions concluded with Ashley expressing desperate incredulity that she was losing her job and career, as Defendants had made explicitly clear was going to happen. The recorded response of defendant Mia Kim defies belief:

> Bennett:    "This is unbelievable, I am losing my job because people took this post the wrong way, and now I lost my career......."
>
> Kim:    "If other people heard what you just said they would walk away thinking that 'she really does not understand'............or get it."

See Exhibit 6.

67.     In fact, it is Kim and Defendants who do not "get it." They behaved in a grossly illegal fashion, attacking a fellow professional educator for expressing political beliefs different than theirs. The callous indifference, and malice, of Kim to the horrible position she had placed Bennett is unambiguous.

68.     A summary of Kim's threats, both express and veiled, is:

▪ "this is going to get ugly, have you thought about the consequences about future employment?" when pushing Bennett to resign

▪ It would be impossible to "come back" from this professionally and personally if she defended herself in front of the Board.

---

[1] The Act 93 representative taking the meeting minutes did not accurately record this comment, but it was made by Kim on July 1, 2020.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

- To consider "Who the board is" and how it would "ruin your future" if Bennett defended herself and did not resign.

- Telling her that attempting to go through a <u>Loudermill</u> hearing would not turn out well for her and that she would be terminated.

- That there would be no "other options" or "second chances" for Bennett.

- Responding to Bennett decrying the loss of her job and career, Kim stated that Bennett's refusal to agree with this result shows that she "does not get it."

69.     Defendants, in sum and substance, admitted that any attempt by Bennett to fight or defend herself would be used against her, that they would destroy her career if she did not resign, and that any hearings were a futile sham. Throughout all this, Defendants never once identified a legal or policy violation warranting termination.

70.     The crime is unknown, the process is the punishment, a denial is evidence of guilt, and the result predetermined. This conduct is more befitting a Star Chamber, the Soviet Union, or the plot of *1984* than the United States of America. Again, not a shred of cause exists for any of these outrageous actions against Bennett.

71.     North Penn's delay in providing a <u>Loudermill</u> hearing (although there was no basis to hold one) while it publicly attacked Ashley, publicly destroyed her reputation, and engaged in a sham investigation designed to force and coerce her into resigning is utterly despicable behavior.

72.     To be clear, there was never any probable cause, or any other basis whatsoever, to suspend, discipline, investigate, terminate, publicly comment, or otherwise take any action whatsoever against Ashley Bennett. The notion that she would be subjected to such Stalinist conduct from a governmental employer in the United States, resulting in abject career and personal ruination, is absurd.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

73.     Despite being suspended, investigated, and threatened with termination for weeks she was never once told what the charges were against her, making it abundantly clear that there were none.

74.     Bennett was told that she had to resign immediately or face termination—and in the meantime Defendants had poisoned the district and its employees against her making a return impossible.

75.     This conduct by Defendants goes far beyond "purely coercive" conduct by a governmental employer that occurs when the employer cannot substantiate the basis for removal. Here, there was not only not basis for the threatened removal, but the reason given was entirely illegal.

**Defendants Characterized Bennett as Someone So Racist and Opposed to Diversity that She had to Be Disciplined because of a Political Facebook Post, Despite Knowing that Before this Incident She Pushed for Diversity in Her Own Department and at North Penn**

76.     It is expressly prohibited to retaliate against a public employee for their political expression, regardless of the content of the expression.

77.     However, it should be noted that the Defendants knew that their portrayal of Bennett as some irredeemable racist opposed to diversity was ridiculous and false.

78.     In the months before this incident, from January to March 2020, *Bennett had repeatedly voiced concern about the whether the hiring process at North Penn lived up to North Penn's alleged commitment to diversity*. Bennett pointed this out to Defendants during her interrogation sessions, but it was ignored by Mia Kim and Sean Arney because Defendants had already determined Bennett would not get a "second chance."

79.     In January 2020 an African American gentleman ("PW") interviewed for a supervisor position in the special education department, and scored higher than any other

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

applicant. To Bennett's surprise, he was instead passed over for a white male with no special education experience who had not applied for the job, did not interview for the job, and had little interest in the job.

80.     Bennett brought it up to Assistant Superintendent Jenna Rufo and asked why PW had not been hired. Bennett was taken aback when she was told by Rufo that someone looked him up on social media and that "he looked like a flirt and we don't need that here." A review of PW's social media shows nothing remarkable, and the stated reason appears to be entirely pretextual.

81.     A few weeks later Bennett was conducting interviews with principal TJ Seidenberger and then-Director of Special Education Ruth Desiderio. During a break Bennett commented to Seidenberger and Desiderio that unqualified candidates with no special education supervision were being hired for their department instead of experienced candidates, specifically the African-American man, PW. Another Assistant Superintendent, Todd Bauer, overheard her and told her that her comment was not appreciated. Bennett responded, "I have a master's degree in special education, how do you think we feel when people without qualifications keep being hired for this department?" The response was that the District had its reasons.

82.     A few weeks later in February 2020, a regular department meeting took place at the Education Services Center. Approximately seven people were present, including Bennett, the director Ruth Desidario, supervisor Tiffany D'Amore, and Christine Mueller. While the group was talking before the start of the meeting, Bennett again raised that PW had been passed over for an unqualified white man who had not interviewed. The director glossed over the issue and vaguely stated that the District had its reasons.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

83.     Then in early March 2020, director Desidario went on leave and defendant Sean Arney was installed as interim director for special education. He had previously been the math curriculum supervisor. There was no interview or application by Arney, he was simply appointed. He had no special education experience.

84.     This prompted Bennett to write to a fellow administrator in the district:



Mar 5, 2:38 PM

85.     Bennett points out these facts to show that four separate times in the months preceding the events at issue she expressed concerns to fellow administrators and superiors that North Penn was not living up to its ideals about equity.

86.     These comments were completely genuine, as Bennett could have no way of knowing what was going to happen on June 25, 2020.

87.     Defendants knew and should have known that Bennett is a good person, and that the evil caricature that they sought to portray to the public to belittle her and destroy her life is absurdly false.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

88.     It may be inconceivable to Defendants, but adults on the other side of the political divide can still be fundamentally good people despite having disagreements on many issues.

89.     Because of Defendants' retaliatory actions Plaintiff's life has been destroyed, she lost her job, her career, and her reputation.

90.     In today's day and age, accusations of the sort that Defendants publicized against Bennett are a stake through the heart of a public educator's career. Defendants knew this, and acted deliberately to punish Bennett and coerce her resignation.

91.     As a result she has suffered severe economic, mental, and emotional damages.

92.     The individual Defendants cannot claim any qualified privilege because the rights at issue are clearly established.

**North Penn and Its Officials Have Ruined Ashley Bennett's Life, Forced Her to Resign, Made Further Employment at North Penn Impossible, and Destroyed her 27-Year Career Helping Special Needs Students**

93.     As a result of North Penn's actions, Bennett has now been vilified in the press, on the internet, in the public, in the community, among parents, among students, and at work. She was promised by the District that any attempt to defend herself would result not only in termination, but further retaliation and ruination. The process is the punishment.

94.     This "purely coercive" retaliatory conduct by the District, lacking any legal or factual basis, is beyond belief and involuntarily forced her to resign her position at the district, resulting in a constructive discharge/termination.

95.     A resignation is considered a constructive discharge if it was "involuntarily procured" "by coercion or duress," or by misrepresentations of material fact. See Judge v. Shikellamy School District, 905 F. 3d 122 (3d Cir. 2018); Schultz v. U.S. Navy, 810 F.2d 1133,

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1136 (Fed. Cir. 1987). Also relevant is whether a reasonable person "would have felt compelled to resign." Id.

96.     "An example of an involuntary resignation based on coercion is a resignation that is induced by a threat to take disciplinary action that the agency knows could not be substantiated." Staats v. US Postal Service, 99 F.3d 1120 (Fed. Cir. 1996).

97.     The Third Circuit holds that where there is no cause for the threatened termination "the choice between resignation and the initiation of termination proceedings was 'purely coercive.'" Judge, 905 F.3d at 123 (quoting Schultz, supra).

98.     As a result of the Defendants' utterly baseless campaign to force and coerce her to resign in lieu of immediate termination (and further public retaliation), Bennett was in fact forced to involuntarily resign.

99.     Bennett wrote a letter at July 9, 2020 (Exhibit 7), decrying her forced and coerced departure after she was given a draft agreement which demanded that resign and she give up all her rights for a few months pay:

> Dear North Penn,
>
> I will not sign the agreement you offered me. I have always been a good employee and have represented North Penn well for eight years. I shared a post about a public political issue on my personal Facebook page. It had nothing to do with my employer or job.
>
> It was explained to me by you during several meetings that my only option was to resign immediately and that there would be no second chance. I do not even really understand what I was suspended for, what I am being investigated for, and why I am facing termination. All I know is that I'm terrified and that my life has been ruined.
>
> I was told by Mia Kim, the Director of HR, in no uncertain terms that I had to resign because I would otherwise be terminated and no one would ever look at my resume again. She also said "If I were your sister, I would tell you to look for another job." I was also told by Kim that if I go before the

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

board to defend myself I would never be able to "come back" from this professionally and personally. I was also told by Kim that I need to consider "Who the board is" and how it would "ruin my future" if I tried to contest what was happening to me.

You have forced me out of a position I love and care about: helping special education students. You have forever destroyed my career, reputation and ability to gain future employment. This district has baselessly vilified me in the community, among parents, and among my co-workers. This has been the most devastating moment of my life.

I am truly shattered that my time at North Penn had to end this way.

Sincerely,
Ashley B. Bennett

See Exhibit 7.

100.    Bennett thought that this would end the matter for the time being until she could

get her head around what had just happened to her. She was wrong.

**North Penn Refuses to Acknowledge Bennett's Departure Because She Did Not Sign the Release of Liability, and Tries to Force Her to Falsely Characterize Her Resignation as "Voluntary"**

101.    Defendant Kim then bizarrely wrote back on the evening of July 9, 2020, acting as

if Bennett was still employed, and again threatening that resignation was "in your best interest":

Dear Ms. Bennett,

I am in receipt of your email from this morning. *I still consider it to be in your best interest to resign under the circumstances.* However, as I have informed you previously, you have the right to be heard before the Board of School Directors. Therefore*, I want to afford you the due process*. The process first requires a Loudermill proceeding *where you will be afforded the opportunity to hear the evidence against you* regarding your Face book posting and its impact on your current role and the operation of the District.

The Loudermill proceeding has been scheduled for Monday, July 13, 2020, at 8:30 am. It will be held virtually in a Google meeting (Meeting ID meet.google.com/wvo-ifue-mgk, Phone Numbers (US)+ 1 813-482-9804 PIN : 428 951 792#), and Dr. Arney will be in attendance. Please be advised that this proceeding does not include your attorney; however, you may bring an Act 93 member.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

At the proceeding, you will be given an opportunity to provide your explanation with regard to the evidence against you. Based upon your explanation, a decision will be made whether or not to discipline you, suspend you without pay and benefits, and/or terminate your employment with the district. If the termination is chosen, District Administration will prepare written charges against you that will be received and considered at a meeting of the Board.

Also, I am seeking clarification regarding your email from this morning. You wrote that you will not sign the agreement **but you indicated ending your employment with North Penn School District. Did you intend the email to be your resignation from the District?** If this is the case, Loudermill proceeding will not be necessary. Please let me know.

You will continue to be on administrative leave with pay until further notice. If you have any further questions, please contact me at 215-853-1040. Thank you for your attention and cooperation.

Sincerely,

J. Mia Kim, Ed.D.

<u>See</u> Exhibit 8 (emphases added).

102. ***At or around this time, someone deleted the illegal press release from North Penn's website.*** This evidences consciousness of guilt and shows that North Penn knew what they were doing to Bennett was wrong.

103. A <u>Loudermill</u> notice is supposed to identify the charges and policy/legal violations and evidence at issue—***before*** the hearing—so the respondent can have a meaningful opportunity to be heard. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (stating that before hearing employer must give "notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story"). ***Kim's letter fails to identify any violations of policy or law, or any evidence that was to be used against her***. Indeed, at no point has Bennett ever been told of the charge against her.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

104.    Instead, the letter incredibly states only that, at the proceeding, "you will be afforded the opportunity to hear the evidence against you regarding your Facebook posting." See Exhibit 8. This is backwards and the opposite of due process. A refusal to define the alleged crime, and a refusal to provide the substance of the evidence prior to the hearing, are the defining hallmarks of nearly every kangaroo court in history. Nothing about the District's actions, either substantively or procedurally, have been legitimate.

105.    The letter demonstrates that the District was going to conceive a pretextual basis to terminate Bennett at the hearing, where she would not have an attorney and there would be no transcription. This is not due process, and it is also not a Loudermill hearing (even if Bennett were still employed, which she was not). It is a Stalinist thought-crime inquisition dressed up in the skinsuit of Loudermill.

106.    At this point the Defendants were desperate to make it seem as if "due process" had been followed. Yet it is critical to note that they, at no point, ever stopped to ask if they were justified *in initiating or continuing the process in the first place*. See Daniels v. Williams, 474 US 327, 331 (1986). A school district cannot politically retaliate against an employee, and then claim they followed the correct process.

107.    Mrs. Bennett responded to Kim's letter on July 10, 2020, stating:

> You forced me to resign. In your letter, you threatened me again, even though you still did not tell me what I did wrong.
>
> If you will remember, on June 25 you repeatedly told me my suspension and investigation would be kept confidential. Yet, the very next day the school district posted a statement on the North Penn website and commented to the media attacking me. I do not trust anything you say.
>
> This has been the worst experience of my life. I am in a state of shock.  Do not contact me anymore.
>
> Ashley Bennett

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

<u>See</u> Exhibit 9.

108.   Despite Bennett's unequivocal letters stating that she was no longer an employee, and asking not to be contacted, Defendants continued to mislead her and attempt to prejudice her rights.

109.   Defendant Kim sent the following email on July 12, 2020:

Hi Ms. Bennett,

Although I have certainly expressed my opinion that *it would be a good idea for you to resign in light of the concerns that have been brought to our attention from the community, parents, and other District employees, I obviously cannot force you to do so*. At this point, you have been placed on administrative leave with full pay and benefits pending the Administration's investigation *and no disciplinary action has been taken*. As I stated in my letter, *the purpose of the hearing on Monday (7/13/2020) is to present you with the information that we have gathered as part of our investigation into your social media postings and allow you the opportunity to respond*. The Administration would then determine whether to impose disciplinary consequences, the most severe of which would be to recommend to the Board that you be discharged from your employment.

Although you have asked that I no longer contact you, I have every right to do so in my capacity as Director of Human Resources given the fact that you are still an employee of the District. *Your prior communications have not been clear as to whether you wish to continue your employment with the District*. Therefore, please respond to this email to clarify whether you wish to resign from the District effective 7/13/2020. If you respond to confirm that you wish to resign effective 7/13/2020, I will submit your resignation to the School Board for acceptance and we can make arrangements for you to return District property and obtain your personal items from the Educational Services Center. *If you do not respond to this email to indicate that you are resigning*, <u>you are hereby directed to attend the Loudermill proceeding tomorrow morning, July 13, 2020, at 8:30 a.m.</u> As I stated previously, you may bring an Act 93 representative to this meeting but you are not permitted to have an attorney participate.

Please let me know if you have any questions or require further clarification.

Sincerely,

J. Mia Kim, Ed.D.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

See Exhibit 9 (bold emphases added). Note that this letter ***still does not manage to identify the charges or evidence against Bennett***, but only says there were vague "concerns."

110.    There is much wrong with this letter.

    a.  **First,** Bennett is yet again threatened by Kim's insinuation it would be a "good idea" to resign.

    b.  **Second,** Bennett was not being put through this hell because of "concerns" from the community, but instead because Defendants disagree with her political speech.

    c.  **Third,** contrary to the letter's assertions, Kim and the District can very obviously force an employee to resign by making their life hell, treating them with contempt, maliciously prosecuting them, illegally violating the confidentiality of the disciplinary process, and otherwise not affording her to due process.

    d.  **Fourth,** Bennett's communications made it unequivocally clear that her employment with the district was finished, which Kim knew.

    e.  **Fifth,** disciplinary action had certainly been taken despite Kim's absurd denials. Bennett was suspended without warning or notice, placed under investigation for unspecified thought crimes, and then threated with termination if she did not immediately resign.

111.    At this point, Mrs. Bennett was retaining counsel and had him respond to defendant Kim, since Kim had refused to stop contacting Bennett who was emotionally and mentally distraught.

112.    Counsel sent the following email on July 12, 2020, at 10:02 pm:

Dear Ms. Kim,

Mrs. Ashley Bennett is in the process of retaining my firm to represent her.

I'm not sure what part of my client's prior communications to you were unclear. You forced her to resign. Therefore, she is no longer an employee of North Penn.

Additionally, she asked you not to contact her anymore. Please respect this simple request as she is dealing with her life being destroyed.

Please be sure to that you and the District retain and preserve all documents relating to Mrs. Bennett, her employment, and her discipline.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

All future communications should be directed to my attention.

With every good wish, I am,

Francis Malofiy, Esquire

<u>See</u> Exhibit 10.

113.   Despite counsel making unequivocally clear that Bennett was no longer employed, and that all contact must go through counsel, Kim and the District deliberately ignored the attorney and continued to try to provide erroneous legal advice to Bennett *while omitting Bennett's counsel from the communications*:

Dear Ms. Bennett,

Last night I received the below communication from an individual stating that he is your attorney.  This is a different individual than your attorney with whom we had been in communication last week.  In his message, he states that you were "forced" to resign and that you are no longer an employee of the District.  *As I explained to you in my email yesterday afternoon, I have no ability to force you to resign*.  To this point, the District worked with your prior attorney last week to prepare an agreement that included your resignation but you rejected this agreement.  I have also explained to you that your status with the District is that you are on administrative leave with full pay and benefits.  In my email from yesterday afternoon, I stated that if you did not indicate that you had resigned from the District effective 7/13/2020, you were directed to attend the Loudermill proceeding with me at 8:30 a.m. this morning.  *Your immediate supervisor, Dr. Arney, and I were on the call at 8:30 a.m. this morning but you did not join us*.

Because you may be receiving conflicting information from an attorney with whom you are apparently consulting, I am willing to reschedule our meeting for <u>tomorrow, Tuesday, July 14, 2020, at 8:30 a.m.</u>  As I have stated, you may bring an Act 93 representative to this meeting but you may not be accompanied by an attorney.  Here is the link for the meeting: Meeting ID <u>meet.google.com/hhk-nrzt-wmh</u>.  I will also send a Google Meeting invitation.

*The only way in which your employment with the District may end is through voluntary resignation or termination by the School Board*.  Since you have not provided a resignation notice *indicating that you are voluntarily resigning* and because the School Board has taken no action with regard to

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> your employment, you are still an employee of the District receiving full pay and benefits.  To be completely clear: it is your choice to make as to whether you wish to resign.  If you do not attend the meeting tomorrow morning, I will take this to mean that your choice is to resign from the District and your resignation will be placed on the agenda for acceptance by the School Board at its next meeting with an effective date of July 14, 2020.
>
> Sincerely,
>
> J. Mia Kim, Ed.D.

<u>See</u> Exhibit 11 (emphases added).

114.    This is an unconscionable attempt to prejudice Mrs. Bennett's rights. This email from Kim was plainly written to convince Bennett to take actions which could have seriously harmed her legal rights while refusing to copy Bennett's attorney on the letter.

115.    It is particularly absurd to pretend to hold <u>Loudermill</u> hearings after Bennett and her attorney have already informed Defendants that she was no longer employed. Bennett never received any notice of the charges or evidence that could support termination.

116.    Following Defendants' improper and outrageous contact with Bennett, counsel for Bennett wrote a formal letter on July 13, 2020, demanding that District cease and desist contacting Bennett, and explaining in detail that Defendants' conduct was blatantly illegal. It was sent to defendants Kim, Arney, the Superintendent, the entire Board, and the District's solicitor. The letter begins:

> I represent Ashley Bennett, who supervised special education at North Penn School District (the "District") for the last eight years. She has dedicated 27 years of her life to helping students with special needs and has a stellar record.
>
> Unfortunately, the actions by North Penn School District, the Board, and the Director of HR Mia Kim have irrevocably tarnished Ashley's career and reputation by illegally and outrageously retaliating against and punishing her for expressing private political viewpoints on Facebook they disagree with.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

She was suspended without notice, then subjected to repeated interrogations and threats that if she did not resign, and instead defended herself, it would result in her career and personal ruination. There was never any cause to take any action against her, and she has *never* been told what policy or law she violated. She was forced to resign as a result by the District's purely coercive behavior.

The District's conduct is utterly alien to a civilized nation of laws. Viewpoint discrimination and retaliation is illegal and unconstitutional. Yet, the District forthrightly and expressly admits to illegal discrimination in a press release and media comments, claiming that she is being disciplined and investigated for expressing views which "contradict" the District's "values." Note that making public attacks on Ashley was a third degree misdemeanor as state law required the District to maintain confidentiality....

<u>See</u> Exhibit 12.

117.    The letter then observed—as this complaint also alleges—that even if Bennett had

not resigned 4 days prior, the <u>Loudermill</u> notice was utterly defective:

A <u>Loudermill</u> notice is supposed to identify the policy/legal violations and evidence at issue— *before* the hearing—so the respondent can have a meaningful opportunity to be heard. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (stating that before hearing employer must give "notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story"). *Kim's letter fails to identify any violations of policy or law, or any evidence that was to be used against her.*

Instead, it incredibly states only that, at the proceeding, "you will be afforded the opportunity to hear the evidence against you regarding your Facebook posting." <u>See</u> Exhibit 7. This is backwards and the opposite of due process. A refusal to define the alleged crime, and a refusal to provide the substance of the evidence prior to the hearing, are the defining hallmarks of nearly every kangaroo court in history. Nothing about the District's actions, either substantively or procedurally, have been legitimate.

In further letters, despite Bennett reiterating that she is no longer employed and has been forced to resign, Kim unilaterally refused to accept this fact. The undersigned counsel then made it clear on July 12 that Ashley was no longer employed and that all future communications should be directed to counsel. Kim, however, improperly and outrageously

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> continued to contact my client in an attempt to seriously prejudice her
> rights.

Id. (emphasis in original).

118.    The letter also detailed that the District had caused millions in extensive
economic harm to Bennett's 27-year career as a special needs educator, and incalculable mental
and emotional harm.

119.    The letter and an accompanying email also stated unequivocally that Bennett was
represented by counsel and that all contact was to go through counsel. The letter could not have
been more unequivocal about where matters stood, and asked for a response in 14 days.

120.    Despite this, Defendants held another fake Loudermill hearing the morning of
July 14 and yet again contacted Bennett later that day—and again deliberately omitted her
counsel from the email—in an effort to confuse Bennett and prejudice her.

121.    The email read:

> Dear Ms. Bennett,
>
> As I indicated in the email yesterday, we had scheduled another Loudermill
> proceeding this morning.  Dr. Arney and I were present, and, again, you did not
> attend.  Based upon the communication that we've had as well as
> correspondence that the District received from your attorney, it is clear that you
> wish to resign from the North Penn School District.  Therefore, your resignation,
> effective July 14, 2020, will be submitted to the Board for consideration at a
> board meeting.
>
> With regards to getting your personal belongings and returning District issued
> equipment and materials such a laptop, ID badge, key card, any materials, etc.,
> we can schedule a time for Friday, July 24, 2020.  Please let me know the specific
> time you prefer.
>
> Thank you for your attention.
>
> Sincerely,
>
> J. Mia Kim, Ed.D.

See Exhibit 13.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

122.    Kim then emailed Bennett again, ***and deliberately omitted her counsel***, on July 17, 2020, again prejudicing her rights and falsely asserting that Bennett had not resigned until July 14:

> Dear Ms. Bennett,
>
> As I indicated in the email on July 14, 2020, based upon your absence at another Loudermill proceeding and the communication that we've had as well as correspondence that the District received from your attorney, it was clear that you wished to resign from the North Penn School District. Therefore, your resignation, effective July 14, 2020, was submitted to the Board for consideration and accepted at the July 16, 2020 board meeting.

<u>See</u> Exhibit 13. This letter also claimed that Bennett had worked up until July 14 and would be paid for those days, when Bennett had actually only worked up to July 8, 2020.

123.    In other words, Defendants falsified official documents and misrepresented her resignation date as July 14, 2020, even after receiving a detailed and unambiguous letter on July 13 from an attorney explaining that Bennett was no longer employed as of July 9, 2020.

124.    Defendants refused to deal with Bennett's counsel which violated her rights and was done with the intent and purpose to prejudice her rights.

125.    Defendants knew that their conduct was wholly deficient and that they had not provided Bennett with even minimal due process prior her to forced resignation on July 9, 2020.

126.    Thus, instead of recognizing that she had retained counsel, the Defendants proceeded to hold fake <u>Loudermill</u> hearings on July 13 and 14 (despite never having even told her what the charges were) ***after she had already been forced to resign***. Defendants then falsely listed the resignation date at July 14, 2020, to make it seem like they had given her hearings and she refused to attend.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Defendants' Attack on Bennett's Free Speech Rights is An Attack on All Administrators, Teachers, Employees, Students, and Parents**

127.     Note that the harm here goes far beyond Mrs. Bennett. North Penn has chilled the free speech rights of every employee, student, and parent. Everyone is now on notice that if anyone expresses a thought or opinion out of sync with North Penn's leadership, the offender will be publicly vivisected and exiled.

128.     The District itself is not the only liable party. All those who participated, enabled, acquiesced, and supervised the attack on Ashley Bennett are personally/individually liable because they violated Bennett's clear, unambiguous, and long-established Constitutional rights.

129.     Bennett's right to free speech and political affiliation in non-school settings is as fundamental a right as can be found in United States jurisprudence, so much so that it is even enshrined in multiple Board Policies for the defendant school district.

130.     Bennett has also tried to mitigate her damages by applying and interviewing with multiple school districts. She was necessarily forced to disclose what had happened at her last job at North Penn.

131.     Despite being more than qualified for these positions, and interviewing well, Bennett did not receive any invitations to a second round of interviews for three of the positions. For another position she did not even receive a first round interview.

132.     She is continuing to apply to jobs, trying to salvage what is left of a 27-year career that Defendants destroyed.

133.     It is clear as day that the stigma surrounding her from North Penn's actions have severely hindered her job search, especially in the current political climate. She is now unemployable in her chosen profession because of Defendants' actions and omissions.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

134.    As a result of the outrageous conduct of the Defendants, Ashley Bennett has suffered the following harms:

     a.   Loss of wages

     b.   Loss of career

     c.   Loss of reputation

     d.   Loss of free speech rights

     e.   Loss of due process, and

     f.   Severe mental and emotional damages

*****

## Parties

135.    Plaintiff, Ashley Bennett, ("Bennett"), is an adult individual residing in Pottstown, PA. She was the Supervisor of Special Education for North Penn School District since August 2013, and has had a 27-year career. She is a certified administrator who has the equivalent of tenure and can only be fired for cause.

136.    Defendant North Penn School District, ("North Penn" or "District") is public school district in Lansdale, Pennsylvania, which employed Ashley Bennett as a certified administrator, specifically the Supervisor for Special Education, from August 2013 to July 9, 2020.

137.    Defendant North Penn School District School Board of Directors, ("Board") is the governing body of the North Penn School District in Lansdale, Pennsylvania.

138.    Defendant J. Mia Kim is the Director of Human Resources for North Penn School District, and is a resident of Pennsylvania. Defendant Kim directly participated, supervised, and

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

139.    Defendant Michael Sean Arney is the interim Director of Special Education for North Penn School District, and is a resident of Pennsylvania. Defendant Arney directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

140.    Defendant Curtis R. Dietrich is Superintendent for the North Penn School District, and is a resident of Pennsylvania. Defendant Dietrich directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

141.    Defendant Christine Liberaski Kroznuski (identifies herself as Liberaski) is the Director of School and Community Engagement (the district spokeswoman). Defendant Liberaski directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

142.    Defendant Martina Stoll is President of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Stoll directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

143.    Defendant Christian D. Fusco is vice president of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Fusco directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

144.    Defendant Elisha K. Gee is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Gee directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

145.    Defendant Jonathan M. Kassa is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Kassa directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

146.    Defendant Dr. Wanda Lewis-Campbell is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Lewis-Campbell directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

147.    Defendant Timothy MacBain is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant MacBain directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments,

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

148.     Defendant Juliane D. Ramić is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Ramić directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

149.     Defendant Alfred R. Roesch, III is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Roesch directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

150.     Defendant Catherine A. Wesley is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Wesley directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

151.     When Plaintiff refers to "defendants" or North Penn or the District she is referring to all defendants jointly, unless otherwise specified.

152.     All individual defendants, including the defendant board members, were aware of Bennett's discipline on June 25, 2020, and were also aware of the public disclosure of Bennett's discipline and public comments by the District about Bennett. All individual defendants were also aware of the "investigation" being conducted into Bennett, and had the ability to access the

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

meeting notes. The individual defendants were further also aware of Bennett's involuntary resignation because they were emailed by Bennett, and were then also aware of the subsequent actions taken by District officials leading up to the Board Meeting on July 16, 2020. Despite the entirety of the targeting of Plaintiff being utterly lawless, and in violation of many state laws, the individuals defendants participated, supervised, approved, and acquiesced to the illegal attacks on Ashley Bennett.

153.    All individual defendants' conduct was of the sort that when considered separately, and in conjunction, was the type that imposes liability on North Penn School District.

154.    An individual defendants' "conduct implements official policy or practice or custom under several types of circumstances, imposing liability on the entities which employ them, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred." Hill v. Borough of Kutztown, 455 F. 3d 225, 245 (3d Cir. 2006); (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478-484, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir.2005); LaVerdure v. County of Montgomery, 324 F.3d 123, 125-126 (3d Cir.2003)).

155.    Here, the actions by Defendants were not that of a rogue employee, but were entirely sanctioned by the District, Board, and chief executive at all points, from the morning of June 25, 2020 to the Board's sham meeting on July 16, 2020. This included:

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

a.  Bennett being suspended and placed under investigation on June 25, 2020, without cause, by the Director of HR and interim Director of Special Education, at the direction of Dietrich, the District, the Board, and the Board Members;

b.  Defendant Dietrich (the superintendent and chief executive) and board members (illegally) disclosing to members of the public on June 25, 2020, that Bennett's continuing employment was being addressed through "legal and HR,"

c.  The drafting and posting of a formal press release by Defendants (including Christine Liberaski and Mia Kim) about Bennett on North Penn's official website (illegally) disclosing Bennett's discipline and attacking her, which remained on the website for two weeks;

d.  Defendants illegally providing comments to multiple news organizations, through an official North Penn spokesperson and officials (including defendants Liberaski and Kim) disclosing her discipline and attacking her;

e.  Defendants directing defendants Kim and Arney to conduct three coercive interrogation sessions where they questioned her on the propriety of her political opinions and threatened her to resign or be terminated and humiliated; and,

f.  the actions taken by Defendants after Bennett's July 9, 2020 involuntary resignation to attempt to prejudice her legal rights, misdate and mischaracterize the nature of the employment termination on official records, and

g.  the Board and executive committee's sham "approval" of Bennett's resignation on July 16, 2020.

156.    From June 25, 2020 to July 9, 2020—and beyond—the District, Board and the individual defendants denied plaintiff due process, never even identifying the charges against her or the evidence to support the charge.

157.    Not only were all these actions and omissions done at the direction of the District and Board's final policy makers, but all actions and omissions that are the subject of this lawsuit were delegated by the District and Board to the District's employees.

158.    Restated, all actions by the Defendants in this lawsuit were "official" actions which impose liability on the entities, and were not the actions of individual employees acting

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

without official imprimatur. Furthermore, even if a district employee did not have "official" authority at the time of an action or omission, the District and Board ratified that conduct by continuing and participating in the persecution of Ashley Bennett.

159.    The actions and omissions of the conduct were intentional, malicious, reckless, and/or negligent and demonstrated willful indifference and callous disregard for Mrs. Bennett's rights.

*****

## JURISDICTION AND VENUE

160.    Jurisdiction over the parties in the Courts of the Commonwealth of Pennsylvania is proper pursuant to the provisions of 42 Pa. C.S. § 5301 *et seq.* Specifically, jurisdiction as to the Defendants is proper pursuant to 42 Pa. C.S. § 5301 (a)(3)(iii) by reason of "carrying on of a continuous and systematic part of its general business within this Commonwealth." Defendants transacted business in this Commonwealth and caused harm and compensable injury to Plaintiff and the assignors by acts or omissions committed in the Commonwealth of Pennsylvania that are the subject of the present complaint.

161.    Venue is proper in the Montgomery County Court of Common Pleas under Pennsylvania Rules of Civil Procedure 2130 and 1006 inasmuch as Defendants reside here, and regularly conduct business in Montgomery County, and inasmuch as the cause of action arose and/or a majority of the harm, occurrences, and transactions.

162.    All federal claims are brought pursuant to and under 42 U.S.C. § 1983.

*****

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# COUNT I – FIRST AMENDMENT FREE SPEECH RETALIATION FOR PRIVATE POLITICAL EXPRESSION

*Ashley Bennett*

*v.*

*All Defendants*

163.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint pursuant to Pa. RCP 1019(g).

164.    "'[A] State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.' *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred. *See Gorum v. Sessoms,* 561 F.3d 179, 184 (3d Cir.2009)." Dougherty v. Sch. Dist. of Phila., 772 F.3d 979, 986 (3d Cir. 2014). The courts also hold that there are an additional two elements: (4) the employee also has to show that any ordinary employee in Plaintiff's circumstances would be deterred from engaging in similar speech by the Defendants' retaliatory conduct, and (5) that Defendants acted under color of law. Id.

165.    Dougherty applies the Supreme Court's Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) and Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) tests, which address when a public employee's speech is protected and the considerations taken into account when dismissing an employee for speech-related reasons.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

166.    Here, the speech was made outside school, the content was unrelated to Plaintiff's employment, and the school has publicly admitted to disciplining the employee based solely on her political viewpoints.

**First Element - Whether the Speech is Protected**

167.    The first element to be satisfied is whether the employee's speech is protected by the First Amendment.

168.    "As the Supreme Court has reiterated time and time again, 'free and unhindered debate on matters of public importance' is 'the core value of the Free Speech Clause of the First Amendment.' *Pickering*, 391 U.S. at 573, 88 S.Ct. 1731. Accordingly, 'public employees do not surrender all their First Amendment rights by reason of their employment.' *Garcetti,* 547 U.S. at 417, 126 S.Ct. 1951. At the same time, the Supreme Court also aptly recognizes the government's countervailing interest—as an employer—in maintaining control over their employees' words and actions for the proper performance of the workplace. *See id.* at 418-19, 126 S.Ct. 1951. Thus, '[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively.' *Id.* at 419, 126 S.Ct. 1951." Dougherty, 772 F.3d at 993-94.

169.    Under Garcetti there is a three-step inquiry to determine if speech is protected by the First Amendment: (1) the employee must speak as a citizen not an employee, (2) the speech must involve a matter of public concern, and (3) the government must lack an 'adequate justification' for treating the employee different than the general public based on its needs as an employer under Pickering. See Dougherty, 772 F.3d at 987. Under Pickering the courts "'balance... the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

services it performs through its employees.' 391 U.S. at 568, 88 S.Ct. 1731. The more tightly the First Amendment embraces the employee's speech, the more vigorous a showing of disruption must be made by the employer. *McGreevy,* 413 F.3d at 365." <u>Dougherty</u>, 772 F.3d at 991.

170.    There is no question under <u>Garcetti</u> and <u>Pickering</u> that Bennett's speech is protected.

171.    **First,** the Facebook reposts in question by Ashley Bennett were in her capacity as a private citizen and were unconnected to her employment. They were not made in the course of her official duties and had nothing to do with her job. The North Penn School District's own policies specifically ensure that employees such as Plaintiff have the right to speak freely on political issues in non-school settings and to affiliate politically as they wish. <u>See</u> Board Policies 320 and 321.

172.    **Second**, the speech in question was in fact on matters of public concern—hotly contested political issues—unrelated to her job. Bennett's political speech on non-school issues in a non-school setting is afforded the broadest protection, as if she was a private citizen.

173.    **Third,** the governmental Defendants have the heaviest burden—a burden they cannot meet—showing that Bennett's speech could cause disruption. The <u>Pickering</u> test arose to address where the speech in question has some relation to the employee's job which could cause disruption in the workplace.

174.    Here, the speech in question has no connection to Bennett's employment at all, and thus no work-related disruption is conceivable. The employer is not permitted to characterize political speech unrelated to school as controversial and then claim that it would be disruptive. Controversial political speech is exactly the type of speech meant to be protected by the First Amendment, and allowing Defendants to claim that it can terminate employees for

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

controversial speech would give carte blanche to the Heckler's Veto and render the First Amendment a dead letter.

175.    Thus, Bennett's speech is squarely protected by the First Amendment.

**Second and Third Elements - Defendants Retaliated against Plaintiff Because of Her Protected Speech**

176.    The second element is that Bennett must show that her protected speech was a substantial motivating factor in retaliatory actions taken against her by Defendants, and that there was not some other legitimate reason for her termination.  In other words, she needs to show causation. Mirabella v. Villard, 853 F. 3d 641, 651-52 (3d Cir. 2017).

177.    In a retaliation claim, the courts ask "whether the Government is punishing the plaintiffs for exercising their rights." Id. (quoting Miller v. Mitchell, 598 F.3d 139, 148 n.9 (3d Cir. 2010)).

178.    Where the retaliation includes "official speech" by the Defendants the Courts ask whether there was "a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow." Id.

179.    Here, there is no question that the governmental employer punished Bennett for exercising free speech rights on political issues they disagreed with, and that Defendants' speech included overt threats, coercion, and intimidation, as well as intimation of punishment and sanction. This is not a close case.

180.    Bennett was expressly told by Defendants that all the adverse actions by Defendants against her were because of her political Facebook posts, which are protected speech. For that matter, the Defendants also informed the entire world of this fact with a press release and multiple comments to news organizations.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

181.   Overall, Bennett was disciplined and then constructively discharged from her job as punishment for privately expressing political views Defendants did not like.

182.   There are many specific examples of retaliatory actions leading up to her constructive discharge which are independently and jointly actionable:

a. Defendants Kim and Arney suspending Bennett without notice or cause on the morning of June 25, 2020, because of the Facebook post.

b. Defendants Kim and Arney calling Bennett a racist while suspending her on June 25, 2020, because of the Facebook post.

c. Defendants Kim and Arney placing Bennett under investigation on June 25, 2020, without cause for the Facebook post.

d. Defendant Kim falsely assuring Bennett repeatedly on June 25, 2020 that all aspects of this matter would be kept confidential and not disclosed.

e. Defendant Superintendent Dietrich and multiple defendant board members illegally telling activist Corina Fiore on June 25, 2020, who was agitating for Bennett to be fired because of the Facebook post, that Bennett's continuing employment was being addressed through "legal and HR."

f. Defendants providing illegal comments for a North Penn Now article published at 9:09 am on June 26, 2020, stating that Bennett had been suspended and placed under investigation because of the Facebook post for "directly contradicting" the District's values, despite repeated assurances from defendant Kim that the matter would be kept confidential. See Keith Heffintrayer, "North Penn Employee Placed On Administrative Leave Following Comments Opposing Black Lives Matter," NORTH PENN NOW (June 26, 2020, at 9:09 am), https://northpennnow.com/north-penn-employee-placed-on-administrative-leave-following-comments-oppos-p2930-117.htm

g. Defendants illegally posting a similar press release on North Penn's website on the morning of June 26, 2020, disclosing her suspension and investigation, and stating that she was being disciplined because her Facebook post "contradicted" the District's values.

h. Defendants illegally disclosing Bennett's discipline to The Reporter for a June 29, 2020 article, which heavily quoted the press release, and contained additional comments from Defendants. See Dan Sokil, "North Penn School District administrator placed on leave after Facebook post," THE REPORTER (June 29, 2020), https://www.thereporteronline.com/news/north-penn-school-district-

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

administrator-placed-on-leave-after-facebook-post/article_4f1ba7d2-ba15-11ea-812c-17d14bdc3925.html.

i.  Defendants overall course of conduct in deliberately and illegally publicizing their discipline of Bennett for the purpose of damaging her reputation, stigmatizing her in the community, legitimizing her political opponents' attacks on her, causing her humiliation, ruining her career, and creating an environment where it would be impossible for Bennett to return to work at North Penn.

j.  After disclosing and publicizing this discipline, and after falsely telling Bennett it would be kept confidential, Defendants then continued to insist that Bennett was bound by confidentiality and could not publicly defend herself.

k.  Conducting three interrogation sessions of Bennett about her private Facebook postings on 6/29/2020, 6/30/2020, and 7/1/2020, where her private political viewpoints were attacked and dissected by governmental agents, defendants Mia Kim and Sean Arney, as part of an effort to coerce her to resign.

l.  Defendants Kim and Arney bringing up a past private political Facebook post by Bennett and claiming this also showed she was a racist.

m.  Defendant Kim both threatening Bennett with termination during the "investigation" if Bennett did not immediately resign, and threatening that any attempt to defend herself would be used to ruin her both professionally and personally, including the following comments:

   i.  "If I were your sister, I would tell you to look for another job."

   ii.  If you contest your termination and do not resign "this is going to get ugly, have you thought about the consequences about future employment?"

   iii.  It would be impossible to "come back" from this professionally and personally if she defended herself in front of the Board.

   iv.  To consider "Who the board is" and how it would "ruin your future" if Bennett defended herself and did not resign.

   v.  Telling her that attempting to go through a Loudermill hearing would not turn out well for her and that she would be terminated.

n.  Defendants falsely telling Bennett that she could be disciplined and terminated for a private Facebook post, when in fact this was not true.

o.  Defendants Kim and Arney telling Bennett that she would not be given a "second chance" and that she had to resign or that she would be terminated.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

p.  Defendants Kim and Arney coercing Bennett to resign by telling her that if she resigned she may get another job, but if they terminated her "no one will look at your resume."

q.  Defendants engaging in a lengthy investigation without cause, with the goal of forcing and coercing Bennett to resign, and delaying holding a <u>Loudermill</u> hearing while seeking to accomplish this goal (although there was no basis for either the investigation or the hearing).

r.  Defendants never identifying what charge, policy violation, or other legal violation she was being disciplined, investigated, and threatened with termination for.

s.  Defendants never mentioning or providing Bennett with Board Policy *Freedom of Speech in Nonschool Settings* and Board Policy 321 *Political Activities*.

t.  Defendants demanding that Bennett resign and sign an extortionary release of liability (including for constitutional violations) in lieu of termination which conditioned the removal of the District's illegal press statement about Bennett on the signing of the release.

u.  Defendants' constructive discharge of Bennett on July 9, 2020, where she was forced and coerced to resign under threat of immediate termination and further reprisal.

v.  Defendants' refusal to recognize Bennett's resignation, and scheduling of fake <u>Loudermill</u> hearings after her employment ended, to attempt to make it appear they had afforded her due process.

w.  Defendants' repeated attempts to prejudice Bennett's rights by legally advising her, even though she now had counsel at this point, that she had to tell the district she "voluntarily resigned."

x.  Defendants' refusal to acknowledge or communicate with Bennett's attorney, and instead repeated attempts to contact Bennett alone to try to give her highly prejudicial legal advice.

y.  Defendants' falsification of Bennett's resignation date on official public records, listed as July 14 instead of July 9, to make it falsely appear to the public and courts that the District accepted a voluntary resignation from Bennett after she had been provided with <u>Loudermill</u> hearings.

z.  The District and Board Defendants' acceptance of a false and misdated July 14, 2020 resignation of Bennett (which never happened) to make it falsely appear to the public and courts that the District accepted a voluntary resignation from Bennett.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

183.   All the retaliatory actions were intended as punishment, and were taken by the Defendants because they desired to punish Bennett for expressing viewpoints they disagreed with.

184.   Note that a baseless suspension with pay for a retaliatory reason is itself actionable on its own and by itself.  See Smith v. Borough of Dunmore, 633 F. 3d 176, 180 (3d Cir. 2011).

185.   Smith illustrates the egregious nature of Defendants' actions. Smith held that a suspension without notice or a hearing is an extreme measure only appropriate in cases where public safety is directly implicated—a reason which is not even remotely applicable in this case. Id.

186.   Defendants' vicious retaliatory conduct for Bennett's Facebook post also violated multiple state criminal laws and Board Policies, including laws requiring that the District keep disciplinary matters confidential and prohibiting tampering with public records.

187.   Note that the illegal press release posted by Defendants was deleted on or around July 7 to July 9, 2020. This evidences consciousness of guilt, both about the improper retaliation against Bennett and the criminal liability for disclosing the discipline against Bennett, establishing that the retaliation was in fact because of her protected speech.

188.   The third element of a First Amendment retaliation claim states that when Bennett has shown political retaliation played a part in her termination, then the burden is on the Defendants to show that there was some other legitimate reason for their actions.

189.   The evidence and Defendants' own admissions overwhelmingly prove that Defendants' actions were solely retaliation for Bennett's private Facebook post, and that they cannot meet any such burden.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Fourth and Fifth Element - That an Ordinary Employee would Be Deterred from Engaging in Protected Speech and that Defendants Acted Under Color of Law**

190.     The fourth element is that an ordinary employee would be deterred by the retaliatory actions of the employer, and the fifth is that the Defendants acted under color of law.

191.     Here, there is no question, given the extraordinary public assault on Plaintiff that took place, that an ordinary employee in Bennett's position will be deterred from privately posting about Facebook on politics. In a matter of a few hours, her life was destroyed. The District then threatened to terminate her and destroy her career if she fought back. The message was loud and clear, not only to Bennett but to all residents, teachers, and administrators of North Penn.

192.     Defendants at all points acted under color of law and held themselves out as having the authority and right to take the retaliatory actions against Bennett.

**Bennett's Involuntary Resignation was a Constructive Discharge**

193.     Plaintiff alleges that she was constructively discharged on July 9, 2020. She was forced and coerced to resign, after enduring weeks of vicious retaliation for private political expression she posted on Facebook that the Defendants politically opposed.

194.     A resignation is considered a constructive discharge if it was "involuntarily procured" "by coercion or duress," or by misrepresentations of material fact. See Judge v. Shikellamy School District, 905 F. 3d 122 (3d Cir. 2018); Schultz v. U.S. Navy, 810 F.2d 1133, 1136 (Fed. Cir. 1987). Also relevant is whether a reasonable person "would have felt compelled to resign." Id.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

195.   "An example of an involuntary resignation based on coercion is a resignation that is induced by a threat to take disciplinary action that the agency knows could not be substantiated." <u>Staats v. US Postal Service</u>, 99 F.3d 1120 (Fed. Cir. 1996).

196.   The Third Circuit holds that where there is no cause for the threatened termination "the choice between resignation and the initiation of termination proceedings was 'purely coercive.'" <u>Judge</u>, 905 F.3d at 123 (quoting <u>Schultz</u>, *supra*).

197.   Here, Defendants' actions against Bennett go far beyond even the "purely coercive" conduct referenced in <u>Judge</u> and <u>Schultz</u>. Not only could the reason for discharge not be substantiated, but no disciplinary charge warranting dismissal (or any other punishment) was ever even identified. This was a malicious prosecution in every sense.

198.   The reason given for the threatened termination was purely illegal unconstitutional retaliation for protected private speech.

199.   She was suspended without warning and interrogated about her beliefs for several days, without cause, as part of a plan to force her out of North Penn for private political expression the District disagreed with.

200.   She was told that she was not welcome at North Penn and that she would not be given a "second chance." Bennett was specifically told by Defendants that any attempt to defend herself against termination would be used against her and would ruin her career and personal life.

201.   This followed the District criminally attacking her in public and disclosing the discipline against her. This illegal public disclosure was designed to coerce Bennett's resignation. The disclosure legitimized the social media mob attacking her based on political differences,

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

endorsed the baseless attempt to have her fired, and vilified her in the eyes of the community, parents, students, and her co-workers.[2]

202.    This is the "due process" that Ashley Bennett was afforded by Defendants: a public charade designed to destroy her life because her governmental employer disagreed with her out of school political expression.

203.    As noted throughout this Complaint, the retaliation against Bennett was a malicious prosecution without any cause and was blatantly illegal "regardless of the fairness of the procedures used." See Daniels v. Williams, 474 US 327, 331 (1986).

204.    A reasonable person facing this concerted and illegal effort to coerce a resignation would feel compelled to resign. Returning to Bennett's position as a pariah is unthinkable after being humiliated, attacked, and stigmatized by Defendants—which was all done to make sure that she did in fact feel compelled to resign.

205.    Furthermore, Defendants made material misrepresentations to obtain her resignation. They told her that they could terminate her and her ruin life if she did not resign. In fact, they had no legal basis to do so.

206.    As a result of the Defendants' utterly baseless campaign to force and coerce her to resign in lieu of immediate termination (and further public retaliation), Bennett was in fact forced to involuntarily resign.

207.    The choice Bennett was given—resign or be terminated and have her career ruined—was purely coercive. There was not a shred of cause or ability for the District to terminate Bennett. Despite this, Bennett was told on many occasions that she had to resign

---

[2] Hargray v. City of Hallandale, 830 F. Supp. 1467, fn 12 (SD Fla. 1993) (citing Schulz, supra) ("(a resignation is not voluntary where an agency imposes the terms of an employee's resignation, the employee's circumstances permit

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

immediately or face immediate termination. This was done to publicly mark Bennett with a Scarlet Letter, make her a pariah, and force her to resign. A reasonable person would have felt overwhelmingly forced and coerced to resign in Bennett's place.

**The Individual Defendants are Not Entitled to Qualified Immunity**

208.     When governmental officials are sued in their individual capacities under § 1983, they can only claim qualified immunity if the Constitutional rights at issue were not clearly established.

209.     Here, the right at issue is Plaintiff's right to freedom of speech in non-school settings on issues not related to the school district.

210.     Courts generally look to the Supreme Court and Courts of Appeal as to whether a right is clearly established; however, other authority may be cited as well.

211.     Here, the right of public employees to speak freely about political issues in non-school settings on matters of public concern is near absolute, and even codified in Board Policy 320 *Freedom of Speech in Nonschool Settings* ("The Board acknowledges the right of administrative, professional and support employees as citizens in a democratic society to speak out on issues of public concern."). The only restrictions on non-school speech are to require educators to: (1) refrain from comments that would interfere with student discipline, (2) refrain from public comments about the district known to be false, and (3) to refrain from threats against District employees. None of these restrictions in the policy remotely apply to this case.

212.     Indeed, the right to free speech in the First Amendment which protects Ashley Bennett's Facebook posts is basic Civics 101.

---

no alternative but to accept, and those circumstances were the result of improper acts of the agency").

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

213.    The case law is likewise clear that public employees have a right to speak out on issues of public concern, as explained by the Third Circuit in <u>Dougherty v. Sch. Dist. of Phila.</u>, 772 F.3d 979, 993-94 (3d Cir. 2014):

   a.    "Since at least 1967, "it has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." <u>Connick</u>, 461 U.S. at 142, 103 S.Ct. 1684 ; <u>see also</u> <u>Rankin</u>, 483 U.S. at 383, 107 S.Ct. 2891 (finding the same principle "clearly established"). In the case at bar, Dougherty's particular type of speech—made as a concerned citizen, purporting to expose the malfeasance of a government official with whom he has no close working relationship—is exactly the type of speech deserving protection under the Pickering and <u>Garcetti</u> rules of decision and our subsequent case law. See, e.g., Pickering, 391 U.S. at 566, 88 S.Ct. 1731 (protecting speech by teacher to local newspaper criticizing the school board and the superintendent's allocation of school funds); <u>O'Donnell</u>, 875 F.2d at 1060, 1061–63 (protecting speech by chief of police to local television station that accused township supervisors of various corrupt practices, legal improprieties, and abuses of their positions); Watters, 55 F.3d at 897–98 (protecting speech by program manager to local newspaper criticizing departmental program the employee oversaw where dispute existed over cause of disruption); <u>Baldassare</u>, 250 F.3d at 199–200 (protecting investigation into alleged wrongdoing of law enforcement officers where there was no "alter ego" relationship). Thus, Appellants had fair notice that their

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

retaliation against Dougherty's constitutionally protected speech would not be shielded by qualified immunity."

214.    This case is far more clear-cut than even those cases cited by <u>Dougherty</u>. The cases cited by <u>Dougherty</u> all involved speech that at least related in some way to the governmental employer's operations.

215.    Here, the speech in dispute was private political expression on Bennett's private Facebook account completely unrelated to her employment, and in fact was a repost of someone else's comments about Black Lives Matter, COVID, and other political issues. It also contained a mention of President Donald Trump.

216.    All individual Defendants knew and should have known that Bennett's speech was protected, as evidenced by even their own Board Policies. They therefore have no qualified immunity.

217.    Mrs. Ashley Bennett has applied to several other positions and interviewed, but has been rejected despite being highly qualified. She has been unable to mitigate her damages.

218.    As a result of the First Amendment retaliation against Bennett, she has suffered grievous harm, including to her career, economically, mentally, emotionally, and reputationally.

219.    Due to the outrageous actions and omissions of Defendants, their evil motives, their wanton and intentional conduct, and their reckless indifference to her rights, she demands punitive damages from all Defendants.

****

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# COUNT II – FIRST AMENDMENT RETALIATION FOR POLITICAL AFFILIATION

*Ashley Bennett*

*v.*

*All Defendants*

220.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint pursuant to Pa. RCP 1019(g).

221.    To make out a claim of discrimination based on political association, a public employee must allege (1) that the employee works for a public employer in a position that does not require a political affiliation, (2) that the employee maintained a political affiliation, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision. Goodman v. Pennsylvania Turnpike Com'n, 293 F.3d 655, 663-664 (3d Cir. 2002). Plaintiff must also show that an ordinary employee in her circumstances would be deterred from holding and expressing her political affiliations, and that Defendants acted under color of law.

222.    Here, Bennett's position as Supervisor of Special Education for the defendant District does not require a political affiliation.

223.    Bennett's private Facebook contained and expressed statements of political affiliation, including a favorable mention of President Donald J. Trump's 2020 reelection campaign.

224.    As described throughout this complaint, Defendants took adverse action against Bennett based on the content of the post, and also because of the express and implied political affiliations the post conveyed.

225.    Proof of this comes from several sources:

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

a.   **Defendants' 6/26/2020 Press Release** - The illegal release first makes it clear that it is taking official action against Bennett because her Facebook post expressed opinions on a political movement, Black Lives Matter, which Defendants thought opposed the movement. Further, the press release specifically stated that Defendants had "overwhelming support" for Black Lives Matter, and that the school district "stands 100%" behind those values. These statements demonstrate that the Defendants are acting against Bennett (and others like her) based on their perception that she is opposed to and does not affiliate with Defendants' favored political movement.

b.   **Defendants' Media Comments** - The media comments made by North Penn about Bennett expressed the same sentiments as the press release.

c.   **Defendants' Various Website Postings** - Defendants have made various postings supporting Black Lives Matter on 5/30 and 6/1, and posted official statements from administrators Jenna Rufo and D'Ana Waters on "cultural proficiency." As Defendants' actions and statements against Bennett show, Defendants are punishing Bennett because they perceive her as opposing Black Lives Matter and affiliating politically with those who they also perceive as opposing such sentiments.

d.   **Proposed and Approved Board Policies** - As Bennett was being disciplined, the Board considered and approved a resolution on "the development of an anti-racist school climate" and also a new "Equity Statement." As with the Website Postings, Defendants actions against Bennett show that Defendants are punishing an employee perceived to affiliate with those who oppose the

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

sentiments expressed in these policies. The policy language is also overbroad, vague, and unconstitutional, especially if it is being twisted to discipline employees.

e. **Defendant Mia Kim's Comments about the Board** - Kim told Bennett that she had to consider "who the Board is" and what the board will do to her if she contests her termination, instead of resigning. This comment was unmistakably meant to convey that all the Board Members are liberal Democrats who would undoubtedly punish Bennett for her allegedly non liberal opinions if she were to not resign.

f. **Defendants' Statements During the "Investigation"** - The statements by Defendants in the so-called "investigation" unambiguously perceived Bennett as being opposed to political movements like Black Lives Matter. Bennett was interrogated at length about Black Lives Matter, Donald Trump, and repeatedly pushed by Defendants to admit that her Facebook post was "wrong."

226.   In general, it has to be taken into account that the North Penn School District personnel and culture are overwhelmingly liberal and democratic. The Defendant board members are uniformly Democrats.

227.   The tenor of the public debate is now that any person perceived as having unacceptable opinions can and should be canceled for being offensive, as Mia Kim made unequivocally clear to Bennett in her interrogation sessions.

228.   As a direct and proximate result of Bennett's perceived political associations and perceived opposition to Defendants' favored political associations, she was disciplined,

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

suspended, investigated, threatened, coerced into involuntarily resigning, and was constructively discharged by Defendants.

229.    Note that as with the free speech retaliation claim, the rights at issue are longstanding and indisputable. The right to engage in Political Activities and associate and identify as one likes in nonschool settings is expressly recognized and codified in Board Policy. See Board Policies 320 and 321 ("The Board recognizes and encourages the right of administrative, professional and support employees, as citizens, to engage in political activity."). As a result, no defendant being sued on an individual basis can invoke qualified immunity.

230.    As noted above, Plaintiff has attempted to mitigate her damages by applying for jobs but has been rejected.

231.    As a result of the First Amendment retaliation against Bennett, she has suffered grievous harm, including to her career, economically, mentally, emotionally, and reputationally.

232.    Due to the outrageous actions and omissions of Defendants, their evil motives, their wanton and intentional conduct, and their reckless indifference to her rights, she demands punitive damages from all Defendants.

*****

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# COUNT III - PROCEDURAL DUE PROCESS VIOLATIONS

*Ashley Bennett*

*v.*

*All Defendants*

233.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint pursuant to Pa. RCP 1019(g).

234.    A plaintiff must allege that (1) she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to her did not provide "due process of law." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.2000). An essential principle of due process is that a "deprivation of life, liberty, or property `be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57, 94 L.Ed. 865 (1950)). Due process fundamentally requires that the individual be given an opportunity for a hearing before she is deprived of her property interest. Id. Where a discharged public employee is given notice of the charges, an adequate explanation of the evidence, and an adequate opportunity to present his side of the story, his due process rights are not violated. McDaniels v. Flick, 59 F.3d 446 (3d Cir.1995), *cert. denied*, ____ U.S. ____, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996).

235.    Bennett alleges due process violations of three distinct types:

a.    A property based due process claim, because she was suspended, investigated, publicly attacked, and constructively discharged without notice depriving her of her right to continue in her employment

b.    A stigma plus liberty due process claim

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

c.    A reputation plus liberty due process claim

236.    Note that certain government actions are barred regardless of the fairness of the procedures used to implement them, which serves to prevent governmental power from being "used for purposes of oppression," See Daniels v. Williams, 474 US 327, 331 (1986).

237.    Plaintiff wants to be absolutely clear that Defendants had no basis upon which to take any adverse action against her, and that even if she had been given the fairest of process it could not legitimatize what Defendants have done.

238.    However, the conduct of Defendants during this so called process was so deficient that it must be subject to court review as a matter of public record.

**a.    Due Process Claim for Property Interest in Continued Employment**

239.    Ashley Bennett has a clear and indisputable property interest in her continuing employment.

240.    "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir.2005) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Whether a person has a legitimate entitlement to — and hence a property interest in — his government job is a question answered by state law. Id.

241.    Here, under Pennsylvania law, Ashley Bennett was a longtime certified administrator who could only have adverse action taken against for cause. In other words, she has the equivalent of tenure. She therefore has a property interest in continuing employment and not being disciplined without cause.

242.    The following actions were taken by the district without notice or an opportunity

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

to be heard, in violation of the due process protections under the Fourteenth Amendment.

    a. Bennett's indefinite suspension with pay on June 25 because of her Facebook post

        i. Bennett was suspended by Defendants without notice or the opportunity to be heard. <u>Smith v. Borough of Dunmore</u>, 633 F. 3d (3d Cir. 2011) (stating that where employee can only be dismissed for cause, the plaintiff has a property interest in not being suspended without cause). Only a strong government interest can justify the pre-hearing deprivation of a property right, usually related to public safety concerns, <u>id.</u>, which are not implicated by this case.

    b. Bennett being placed under investigation without cause

        i. Bennett was suspended without cause and placed under investigation. This investigation had no legitimate purpose or predicate, and was conducted to interrogate Bennett about her thoughts, and coerce and threaten her to resign. The "investigation" violated due process.

    c. Defendants publicly attacked Bennett and disclosed her discipline, without cause and in violation of state law

        i. Bennett had a right to be free of Defendants publicly condemning her and disclosing her discipline, without cause, especially when there had been no notice or hearing. The District specifically assured her, multiple times on June 25, that everything would be kept confidential, which state law requires. Confidentiality is required so that employees are not prejudiced and shamed without due process.

        ii. The promises were fraudulent. The District posted a press release on its website condemning her and stating that she is opposed to diversity. The district told multiple news organizations the same comments. The district's press release also disclosed her suspension and investigation, which directly violates state law. This breach of confidentiality was a third degree misdemeanor. The disclosure also falsely implied to the public that Bennett had something so egregiously racist that it required her immediate suspension, an investigation, and likely termination.

        iii. The posting of the press release was a deliberate attempt to punish Bennett for expressing First Amendment protected speech. It was also a deliberate attempt to coerce and force Bennett to resign, by marking her as a pariah. The press release effectively prevented Bennett from receiving any due process and being able to effectively defend herself. Moreover, the District insisted Bennett thereafter keep everything confidential, applying one standard to itself and another for Bennett, and further resulting in deficient process.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

iv. The deletion of the press release around the time Bennett was forced to resign is proof of consciousness of guilt.

d. The delay in providing Bennett notice and a hearing

i. At no point was Bennett told what the charge was against her, or what policy she had violated, or what evidence supported such charges. Instead, Bennett was told that she had to resign, or face termination and additional public ruination starting with a Loudermill hearing. This delay and the reasons for the delay violated her due process rights. The delay is exacerbated by the fact that the disciplinary process had no legal basis whatsoever, and that the investigation was baseless and a delay tactic to attempt to force her to resign.

e. Bennett was constructively discharged without notice or a hearing

i. Bennett was publicly and privately attacked by Defendants from June 25 to July 9, made into a pariah, and told in no uncertain terms that she would not get a second chance. She was told that her only choice was resign or further publicly vivisected and attacked. Because there was no cause to terminate or discipline Bennett, this conduct was "purely coercive." Bennett therefore involuntarily resigned on July 9, 2020, and was constructively discharged. From June 25 to July 9 she was never given notice of the charges against her, and also never told what evidence could support those unidentified charges.

ii. The intent, goal, and purpose of Defendants conduct prior to July 9, 2020, was to force and coerce her into resigning without affording her due process.

**Defendants Engaged in Sham Due Process After Bennett was Constructively Discharged to Disguise How Bad Their Conduct Had Been**

243.    As noted, prior to Defendants' constructive discharge of Bennett she was given no notice of the charges against her and the evidence against her was not described. She was instead placed under investigation, publicly attacked, and coerced to resign. This blatantly violated Plaintiff's due process rights and was purely coercive; the District' actions before July 9, 2020, did not even pretend due process existed.

244.    Nothing about what Defendants did was in the regular course of business as required by the Districts policies, procedures, and practices.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

245.    If Defendants attempt to claim that they provided due process or attempted to provide due process to Bennett, such allegations are false and were part of a sham.

246.    Defendants refused to acknowledge Bennett's involuntary resignation on July 9, 2020. Following Bennett informing defendant Kim that her employment was over, Kim wrote Bennett a letter on July 9, 2020, pretending as if Bennett was still employed, and scheduling a purported Loudermill hearing for July 13, 2020. The letter was also apparently intended as a (defective) Loudermill notice.

247.    Defendants did this for two reasons: (1) At around the same time the press release was deleted from the internet, showing that someone at North Penn realized that their targeting of Bennett was a serious problem. This letter from Kim was part of an attempt to cover up what Defendants had done; (2) Bennett had not signed the release of liability that Defendants thought would resolve a bad situation for them.

248.    Even if Bennett's employment had not already been terminated, the Loudermill notice was extraordinarily deficient. A notice has to identify the charges or violations she is accused of, and generally describe the evidence.

249.    Yet, the so-called notice identifies no charges against her and only states she will get to hear the evidence against her at the hearing. This is backwards and demonstrates that the process was a sham and futile. See Alvin v. Suzuki, 227 F. 3d 107, 118 (3d Cir. 2000). The District failed to identify any charge against Bennett from June 25 to July 9, 2020, and the purported post-termination Loudermill notice also failed to do so.

250.    Defendants plainly wanted to devise new charges during the course of the alleged Loudermill proceeding. Bennett has no obligation to participate in a kangaroo court designed to illegally prejudice her rights.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

251.    Defendants can call this a Loudermill hearing all they want, but that does not make it so. This was a sham, designed to cover up and disguise what Defendants had done to Bennett.

252.    Even after Bennett, and later her attorney, repeatedly told the District that Bennett had been forced to resign, the district proceeded to hold two fake Loudermill hearings on July 13 and July 14, 2020, to make it seem as if they had afforded Bennett due process.

253.    Defendants further ignored direct instructions from Bennett's counsel to stop contacting her, and objections from Bennett's counsel which pointed out that the fake Loudermill hearings were a sham. Counsel pointed out that (1) Bennett had involuntarily resigned 4 days prior, and (2) that the Loudermill notice did not even identify the charges and evidence against Bennett.

254.    Despite this, Defendants persisted in contacting Plaintiff directly (and omitted her counsel). They provided false legal advice to her telling her that she could only "voluntarily resign" or be terminated. They stated that otherwise she had to attend a Loudermill hearing because she had not "voluntarily resigned."

255.    "Voluntarily resign" is, of course, a legal term which Defendants wanted Bennett to recite, so they could claim she had not been forced to resign and constructively discharged.

256.    This was an attempt by Defendants to advise and scare her into unwittingly give up her rights by characterizing her coerced resignation as "voluntary." This is reprehensible conduct which is intolerable in a civilized society.

257.    This sham process continued as Defendants sent Bennett yet another letter on July 14 (again omitting her counsel), claiming that Bennett had resigned effective July 14, 2020 (instead of the actual date July 9, 2020).

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

258.    The transparent reason Defendants want to use the July 14 date is to make it seem as if they held <u>Loudermill</u> hearings ***before*** Bennett was terminated, when nothing could be further from the truth.

259.    The Defendants then promulgated false Board documents identifying Bennett's resignation date as July 14, 2020, and had the defendant Board Members and executive committee approve her alleged July 14, 2020 resignation at a July 16, 2020 meeting. This was all done so the defendants could dishonestly claim that they tried to provide due process.

260.    Setting aside the utter absurdity and malice replete in Defendants' amateurish cover up, Defendants fail to recognize that even if they provided Bennett a full and fair process (they did not) that does not mean Defendants had the right to prosecute and punish her in the first place.

261.    Defendants' conduct shows they were uninterested in justifying initiating discipline against Bennett, only in trying to be able to claim that they complied with <u>Loudermill</u> in the belief this would immunize them.

262.    A <u>Loudermill</u> hearing does not have some sort of talismanic effect, where the invocation of its name grants Defendants safe harbor for their misconduct.

263.    Everything about Defendants' actions—starting with the fact that there was no basis to take any action against Plaintiff and ending with the tampering of public records—evidence a malicious intent and lack of due process.

**b.   Plaintiff has a Stigma-Plus Due Process Claim against Defendants**

264.    A "stigma plus" claim occurs when the government imposes "a stigma or other disability that foreclose[s] [the plaintiff's] freedom to take advantage of other employment opportunities." <u>O'Donnell</u>, 148 F.3d at 1140 (quoting <u>Roth</u>, 408 U.S. at 573). The theory is, in

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

essence, that some government action might impose such a harsh taint that it interferes with an individual's "right to follow a chosen trade or profession." Cafeteria Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895-96 (1961).

265.    This implicates Plaintiff's liberty interest, as opposed to her property interests.

266.    The government must impose so great a constraint on an individual's future employment opportunities that it "involve[s] a tangible change in status" — that is, it must amount to "an adjudication of status under law." Kartseva v. Department of State, 37 F.3d 1524, 1527 (D.C. Cir. 1994); O'Donnell, 148 F.3d at 1141 ("[A] plaintiff who . . . seeks to make out a claim of interference with the right to follow a chosen trade or profession that is based exclusively on reputational harm must show that the harm occurred in conjunction with, or flowed from, some tangible change in status."). The action must have a "broad effect of largely precluding [her] from pursuing her chosen career." Kartseva, 37 F.3d at 1528; see GE Co. v. Jackson, 610 F.3d 110, 121 (D.C. Cir. 2010).

267.    The stigma does not have to result from official speech, but can also result from the overall nature of the conduct by Defendants.

268.    Here, Plaintiff was suspended without notice or cause in violation of due process and placed under investigation for expression of political views which Defendants publicly stated "directly contradicted" the District's values. This was illegal First Amendment retaliation.

269.    In violation of state law requiring confidentiality and contrary to repeated assurances to Bennett that everything would be kept confidential, the District placed a press release disclosing the discipline on North Penn's website, harshly condemning Bennett's views, and stating Bennett was opposed to diversity. This was done to attack and punish Bennett. Defendants intended readers of the public comments to (falsely) believe that Bennett had done

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

something so egregiously racist that it warranted suspension, investigation, and likely termination from her job.

270.    The District also made similar comments to multiple news outlets. Although the press release was quietly deleted several weeks, it was quoted in the news articles and remains on the internet today. These articles appear prominently when search engines are searched for keywords such as "North Penn" or "Ashley Bennett North Penn."

271.    The District Superintendent and several board members also disclosed that Bennett's employment was being addressed through "legal & HR" to a woman agitating to have Bennett fired, who further publicized this matter on Facebook.

272.    As a result of the concerted and deliberate effort by Defendants to publicly and illegally condemn Bennett, and characterize her beliefs as beyond the pale in a civilized society worthy of formal discipline and termination, Defendants have severely harmed and stigmatized Bennett and made it largely impossible for her to pursue her chosen career.

273.    She has suffered severe damage as a result, including loss of employment and future employment.

c.  **Plaintiff has a Reputation-Plus Due Process Claim Against Defendants**

274.    As opposed to a stigma plus claim, a reputation plus claim requires that Plaintiff show that she was defamed and be accompanied by a discharge or demotion. This claim is only actionable when the employer has disseminated the reasons for the termination and the dissemination is defamatory.

275.    Here, Plaintiff was suspended, investigated, and then constructively terminated without cause or notice. Suspension with pay without notice and constructive termination are sufficient to constitute the "plus."

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

276.   Furthermore, the Defendants widely disseminated the reason for the suspension and discipline.

277.   The last remaining element requires that the dissemination be defamatory.

278.   The press release and media comments by the Defendants were in fact defamatory and placed Bennett is a false light. Defendants told the world that Ashley Bennett and her Facebook repost were directly contrary to the District's values, including diversity.

279.   The Defendants painted Bennett as an archetypal racist in their public statement, a provably false assertion.

280.   The Defendants further disclosed that Bennett had been suspended and was being investigated, insinuating and implying that Bennett had engaged in racist conduct so egregious as to constitute "cause" warranting disciplinary action. All of this is demonstrably false and placed Bennett, a private individual, in a false light.

281.   The Facebook post does not support these accusations.

**d.  Defendants Should Have Known that Its Allegations Against Bennett were False**

282.   What is more, Defendants knew or should have known its defamatory attacks on Bennett were false. In the months before this incident, from January to March 2020, ***Bennett had repeatedly voiced concern about the whether the hiring process at North Penn lived up to North Penn's alleged commitment to diversity***.

283.   In January 2020 an African-American gentleman interviewed for a supervisor position in special education, and scored higher than anyone else. To Bennett's surprise, he was instead passed over for a white male with no special education experience who had not applied for the job, did not interview for the job, and had little interest in the job.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

284.     Bennett brought it up to Assistant Superintendent Jenna Rufo, and asked why the black applicant had not been hired. She was implausibly told that someone looked him up on social media and that "he looked like a flirt and we don't need that here." A review of the man's social media shows nothing remarkable.

285.     A few weeks later Bennett was conducting interviews with principal TJ Seidenberger and then Director of Special Education Ruth Desiderio. During a break Bennett commented to Seidenberger and Desiderio that unqualified candidates with no special education supervision were being hired instead of experienced candidates, specifically the African-American man. Another Assistant Superintendent, Todd Bauer, overheard her and told her that her comment was not appreciated. Bennett responded, "I have a master's degree in special education law, how do you think we feel when people without qualifications keep being hired for this department?" The response was that the District had its reasons.

286.     A few weeks later in February 2020, a regular department meeting took place at the Education Services Center. Approximately seven people were present, including Bennett, the director Ruth Desidario, supervisor Tiffany D'Amore, and Christine Mueller. While the group was talking before the start of the meeting, Bennett again raised that the black man applicant had been passed over for an unqualified white man who had not interviewed. The director glossed the issue and stated that the District had its reasons.

287.     Then in early March 2020, the director went on leave, and defendant Sean Arney was installed as interim director for special education. He had previously been the mass curriculum supervisor. There was no interview or application by Arney, he was simply appointed. He had no special education experience.

288.     This prompted Bennett to write to a fellow administrator in the district:

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



Mar 5, 2:38 PM

289.    Bennett points out these facts to show that four separate times in the months preceding the events at issue she expressed concerns to her coworkers and high level administrators that North Penn was not living up to its ideals about equity.

290.    These comments were completely genuine, as Bennett could have no way of knowing what was going to happen on June 25, 2020.

291.    Defendants knew and should have known that Bennett is a good person, and the evil caricature that they sought to portray to the public when attacking her is ridiculous.

292.    It may be inconceivable to Defendants, but adults on the other side of the political divide can still be fundamentally good people despite having disagreements on many issues.

293.    Because of Defendants' actions, Plaintiff's life has been destroyed, she lost her job, her career, and her reputation.

294.    In today's day and age, accusations of the sort that Defendants publicized against Bennett are a stake through the heart of a public educator's career. Defendants knew this, and acted deliberately to punish Bennett and coerce her resignation.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

295.    As a result she has suffered severe economic, mental, and emotional damages.

296.    The individual Defendants cannot claim qualified privilege because the rights at issue are clearly established.

297.    Due to the outrageous actions and omissions of Defendants, their evil motives, their wanton and intentional conduct, and their reckless indifference to her rights, she demands punitive damages from all Defendants.

*****

FRANCIS ALEXANDER, LLC
*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
Alfred (AJ) Fluehr, Esquire
Attorney ID No.: 316503
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ October 23, 2020*

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# <u>RELIEF REQUESTED</u>

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendants, jointly and severally, on all counts and claims compensatory damages in an amount in excess of this court's jurisdictional limitations, thereby guaranteeing Plaintiff a jury trial, exclusive of interests and costs, and an award of punitive damages, as well as prejudgment interest, post judgment interest, delay damages, costs, and such other equitable relief as the Court deems necessary; and requests that this Court determine and declare that Plaintiff be awarded for all counts:

a.    Compensatory damages, inclusive of any and all harm attributable to Defendants' actions or inaction, including loss of earnings, loss of career, reputational/stigma damage,

b.    Mental and emotional pain and suffering;

c.    Punitive damages to punish the Defendants for their outrageous conduct, self-interest, and duplicitous behavior, reckless and callous indifference to Bennett's rights, and evil motives;

d.    Exemplary damages to set an example for others;

e.    Attorneys' fees, costs, and court costs under § 1988;

f.    interest;

g.    prejudgment interest;

h.    Delay damages;

i.    Other equitable relief that may be necessary to enforce Plaintiff's rights; and,

j.    Such other and further relief and/or equitable relief that this Court deems just and/or necessary.

\*\*\*\*\*

FRANCIS ALEXANDER, LLC
*/s/ Francis Malofiy*
_____

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Francis Malofiy, Esquire
Attorney ID No.:  208494
Alfred (AJ) Fluehr, Esquire
Attorney ID No.: 316503
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ October 23, 2020*

Case # 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, ASHLEY BENNETT, hereby verify that that the facts set forth herein are true and correct to the best of my knowledge, information, and belief. I further understand that the statements herein are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904 relating to unsworn falsification to authorities.

/s/ _Ashley Bennett_
ASHLEY BENNETT

/s/ 10/23/2020
DATE

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# SPOLIATION NOTICE -- PRESERVATION OF EVIDENCE

Plaintiffs hereby demand and requests that Defendants take necessary actions to ensure the preservation of all documents, records, communications, whether electronic or otherwise, items and things in their possession or control, or any entity over which any party to this action has control, or from whom any party to this action has access to, any documents, items, or things which may in any manner be relevant to or relate to the subject matter of the causes of action and/or the allegations of this complaint. This includes all personal electronic devices and messaging applications.