IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY B. BENNETT, | : | Civil Action No. 20-cv-05841-AB |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NORTH PENN SCHOOL DISTRICT | : | Jury Trial Demanded |
| BOARD OF SCHOOL DIRECTORS, et al., | : | |
| Defendants, | : | |

DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER FED. R. CIV. PROCEDURE 12(b)(6)

For the reasons set forth below, Defendants J. Mia Kim, Dr. Michael Sean Arney, School Superintendent Curtis R. Dietrich, Christine Liberaski, Martina Stoll, Christian D. Fusco, Elisha K. Gee, Jonathan M. Kassa, Wanda Lewis-Campbell, Timothy MacBain, Juliane D. Ramić, Alfred R. Roesch, III, and Catherine A. Wesley, respectfully request that the claims against them in their individual capacities be dismissed for failure to state a claim upon which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6).

I.      Introduction

1.      On or about October 23, 2020, Plaintiff, Ashley Bennett (hereinafter "Bennett"), filed a Complaint in the Court of Common Pleas for Montgomery County, Pennsylvania, against the North Penn School District, which employed her to assist with Special Needs students until her resignation in July, 2020. She has also named as Defendants the Board of Directors for the North Penn School District, and all of the individuals named above, in both their official and individual capacities.

2.      Defendants promptly removed this action to the District Court for the Eastern District of Pennsylvania, as permitted by 28 U.S.C. § 1441.

3. Bennett's Complaint can fairly be described as inflated to its maximum volume. At 74 pages, it is long for a three-count Complaint concerning facts which took place over a few weeks. Its language is inflated for maximum drama, and set forth in a pseudo-Colonial font, which perhaps seeks to align Bennett with our Founders' struggle against tyranny. Crucially, the number of defendants is also inflated. In this, Bennett has fallen afoul of the law under which she brings this case, 42 U.S.C. §1983.

4. In her first two counts, Bennett has alleged the violation of her right to free speech and political affiliation under the First Amendment of the United States Constitution. Complaint at ¶¶ 163 *et seq.* and 220 *et seq.*, respectively. In her third count, Bennett alleges a number of violations of procedural due process. Complaint at ¶233 *et seq*. Each count is asserted against "All Defendants." Id. at pages 42, 56, and 60.

5. Each one of the moving Defendants is named in both his or her official, and individual, capacities. Complaint at ¶¶ 138-150.

6. The Complaint states as to each one of the individual Defendants, without differentiation, that he or she "directly participated, supervised and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment." Id.

7. Yet, the names of Defendants Stoll, Fusco, Gee, Kassa, Lewis-Campbell, MacBain, Ramić, Roesch, and Wesley – all of whom are members of the North Penn School Board – are not even mentioned in the Complaint other than the single paragraphs where they are named as Defendants. Id. at ¶¶ 142-150.

8.      School Superintendent Dietrich and Ms. Liberaski are mentioned as each having had one brief contact with the public about matters of public concern involving Bennett. Id. at ¶155(b)(c) and (d).

9.      Defendant Mia Kim, as Director of Human Resources for the North Penn School District, communicated with Bennett in connection with the matters underlying this action, and she therefore bears the brunt of Bennett's specific factual allegations. Dr. Arney is alleged to have accompanied or assisted Kim at some times. As explained below, however, neither Ms. Kim nor Dr. Arney is properly named in an individual capacity, any more than are the other Defendants.

II.     Factual Background

10.     On the night of June 24, 2020, Bennett reposted on her Facebook page the following:

> I'm confused right now.
>
> I see signs all over saying #BlackLivesMatter. I'm just trying to figure out WHICH black lives matter.
>
> It can't be the unborn black babies – they are destroyed without a second thought.
>
> It's not black cops – they don't seem to matter at all.
>
> It's not my black #Conservative friends. They are told to shut the f*ck up if they know what's best for them by their black counterparts. It's not black business owners. Their property, their business and their employees don't mean anything.
>
> So which black lives matter again?!?
>
> I can't keep up. I can't. I'm exhausted trying to figure out what we're all supposed to do, believe, and be offended by, and outraged by next.
>
> …

Just 45 days ago protests weren't "essential" and were considered criminal, selfish, and a murderous activity because of the #Coronavirus. Today they are gloriously critical and celebrated. All of the obvious criminal and murderous activities are simply ignored.

If you protest about lock-downs for freedom, you are selfish and you will spread a virus.

If you protest, loot, and riot for social justice, you are a warrior and immune from the virus.

…

Then came social justice, and social distancing was suddenly no more. #Democrat governors and mayors marched arm-in-arm with protesters. A thousand people at three memorials for someone they never even met.

It's a matter of "respect." But you couldn't have a funeral for a family member.

Black Lives Matter. Of course they do. But then multiple black police officers and individuals were killed during the "peaceful protests". I don't see any outrage.

Black individually owned businesses were burned to the ground. Silence.

Deadliest weekend in Chicago, virtually all black on black violence. The #MainstreamMedia is silent. NOTHING!!

I'm confused now.

Look at the data. NO, not that data.

Do the math. No, you can't do the math like that.

Only the experts can understand the data and the math.

And Black Lives Matter protesters REFUSE to look at or discuss the #FBI Crime Statistics – because the data doesn't support their claims of systemic racism against blacks.

Just listen to the black community leaders. No, not them, only the radicals are right.

…

Remember. It's an election year and #liberals are desperate, don't put anything past them.

They hate #PresidentTrump more than they love #America and they don't care how much damage they do to our country.

    So for now I pray.

    I pray God will heal our land and Bless the United States of America.

Complaint at ¶ 20.

    11.    Unsurprisingly, this post generated a great deal of disruption in the diverse North Penn community, and community members who perceived the post as racist expressed much concern to the North Penn School District. Bennett has conceded this in ¶ 23 of her Complaint, although she calls it a "social media mob … [coming] for her job." The matter received media attention. Complaint at ¶ 34.

    12.    As a result of the disruption caused by Bennett's Facebook post, and of the expressions of anger and concern made directly to the North Penn School District from members of the community who perceived the post as racist, the North Penn School District placed Bennett on administrative leave on June 25, 2020, with full pay and benefits, pending an investigation of the incident. Complaint at ¶ 26.

    13.    Also in response to community disruption, and the resultant public interest, which was strong enough to attract media attention, the North Penn School District issued a statement on its website on June 26, 2020, which Bennett alleges was drafted by Liberaski. Complaint at ¶32. The statement did not name Bennett. It affirmed the North Penn School District's commitment to "acknowledge, respect, understand, and celebrate the dynamics of racial and cultural differences." Id.

    14.    The statement on the North Penn School District website stated that "the views expressed" in the Facebook post by the unnamed employee – which, as above, denied the existence of systemic racism, and invoked "destroyed black babies," "looting and rioting for social justice" and "black on black crime" – did not align with the North Penn School District's

core values.  Id.  The statement concisely and accurately reported that the unnamed employee had "been placed on administrative leave while an investigation is conducted."  Id.

15. On June 29, June 30, and July 1, 2020, Bennett met with North Penn School District's Director of Human Resources, Mia Kim, for informal discussions regarding how Bennett would proceed.  Complaint at ¶52.  No coercive circumstances were present.

16. During Bennett's meetings with Kim, the possibility of Bennett's resignation was discussed, as was the possibility of her "fighting for her job" and appearing at a due process hearing with the opportunity to respond, as required by Cleveland Board of Education v. Loudermill, 40 U.S. 532 (1985).  Complaint at ¶ ¶ 59-60.

17. On a date which Bennett does not specify (as is appropriate in a 12(b)(6) motion, all facts cited herein appear in Bennett's Complaint), the North Penn School District provided her with the paperwork necessary to support a resignation.  Complaint at ¶99.

18. On July 9, 2020, Bennett wrote a letter addressed to "North Penn" in which she indicated she would not sign the resignation paperwork with which she had been provided.  Id.

19. Accordingly, on the same day, Kim wrote to Bennett, seeking to determine whether her letter constituted a resignation, and notifying her that – if not – she was invited to a Loudermill hearing on the following Monday, July 13, 2020.  Complaint at ¶ 101.

20. On the morning of Friday, July 10, 2020, Bennett responded to Kim with a letter which strongly suggested that she was engaged in manufacturing a claim of constructive discharge, by writing:  "You forced me to resign", despite the fact that Bennet knew she had a date for a Loudermill hearing on the following Monday.  Complaint at ¶107.

21. Kim responded on Sunday, July 12, 2020, clarifying that (a) she had no power to "force" Bennett to resign; (b) Bennett had not been terminated; (c) Bennett had not, at this

point, been subject to any disciplinary action; and that (d) if Bennett did not wish to resign, she should attend her Loudermill hearing the next morning. Complaint at ¶ 109.

22. Despite the foregoing, Bennett's present counsel wrote to Kim that Sunday night at ten, stating: "You forced her to resign." Complaint at ¶ 112.

23. After Bennett failed to attend the July 13, 2020, Loudermill hearing, Kim wrote to her reiterating that she had no ability to force Bennett to resign, and that Bennett had not been terminated. Complaint at ¶13. Some confusion was caused to Kim by the fact that the attorney of the previous night was the second lawyer Bennett had retained in the nineteen days following her Facebook post. Id. Kim agreed to reschedule Bennett's Loudermill meeting for the morning of the next day, July 14, 2020.

24. On July 14, 2020, when Bennett failed to attend the second scheduled Loudermill hearing, and following a second, July 13, 2020, communication from counsel which – among other verbiage – stated that Bennett had been "forced to resign" (again, despite the upcoming hearing), Kim emailed Bennett, telling her that the facts would be construed as an expression of Bennett's wish to resign. Complaint at ¶ 121. Bennett did not respond to this email.

25. On July 17, 2020, Kim emailed Bennett to inform her that, at a July 16, 2020, board meeting, the Board of Directors had accepted her resignation, effective July 14, 2020. Complaint at ¶ 122. The North Penn School District would pay Bennett through July 14, 2020. Id.

III. Claims for Relief

A. All Defendants Should Be Dismissed In Their Individual Capacities

26. Qualified immunity protects all public officials from liability when their conduct does not violate a federal right that is clearly established, not merely as a broad general proposition, but in light of the *specific context* of the case. Mullenix v. Luna, 577 U.S. 7, 11-12 (2015). (Emphasis supplied).

27. The United States Supreme Court has "repeatedly stressed" that courts must not define clearly established law at a high level of generality, since doing so avoids the "crucial question" whether the official acted reasonably in the particular circumstances that he or she faced. D.C. v. Wesby, -- U.S. --, 138 S. Ct. 577, 590 (2018); Saucier v. Katz, 533 U.S. 194, 202 (2001). A rule is too general if the unlawfulness of the conduct "does not follow immediately from the conclusion that [the rule] was firmly established." Wesby, supra.

28. Because pointing to broad, general, propositions is insufficient to defeat qualified immunity, it is not enough that Bennett relies on Pickering v. Bd. of Education of Township High Sch. Dist. 205, Will Cty. Illinois, 391 U.S. 563, 568 (1968), and Garcetti v. Ceballos, 574 U.S. 410, 416-8 (2002) in both of which the United States Supreme Court held that the First Amendment compels a balance between the interest of a School District employee, as a citizen, in commenting upon matters of public concern, and the interest of the School District in promoting the efficiency and effectiveness of the public services it performs.

29. Indeed, the United States Supreme Court ruled long ago that the test established by Pickering and Garcetti "is difficult, [and] the courts must reach the most appropriate balancing of the competing interests." Connick v. Meyers, 461 U.S. 138, 150 (1983). This balancing test is highly fact-sensitive and depends upon the nature of the employee's specific expression. Id. As a

result, the employee's statement "will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." Rankin v. McPherson, 483 U.S. 378, 388 (1987), citing Connick, supra, at 152-3, and Givhan v. Western Line Consolidated School Dist., 439 U.S. 410, 415 at n.4 (1979). Logically, therefore, the unlawfulness of any defendant's conduct toward Bennett cannot follow immediately from the conclusion that Pickering and Garcetti are firmly established.

30. Black Lives Matter is a relatively new phenomenon, and it raises strong feelings. There is no clearly established body of case law as to whether the Pickering test shields from censure a teacher's social media post dismissing Black Lives Matter as nothing more than an expression of hate for the United States President, denying the existence of systemic racism, and invoking "destroyed black babies" and "black on black crime", and which has admittedly caused significant disruption in the community specifically addressed to the employer school district.

31. Such precedent as exists regarding an employee's social media post attacking Black Lives Matter in racially problematic terms indicates that the speech does not warrant First Amendment protection. See Sabatini v. Las Vegas Metro. Police Department, 396 F. Supp.3d 1066 (D. Nev. 2019) reconsideration denied, Civ. A. 217-01012JADNK, 2019 WL 3307040 (D. Nev. July 23, 2019) (police department's interest in maintaining public trust outweighed the plaintiffs' interest in their speech regarding BLM); Atwater v. Tucker, 807 S.E.2d 56 (Ga. App. 2017), cert. denied 303 Ga. 791 (June 4, 2018), cert. denied 139 S. Ct. 459 (Nov. 15, 2018) (defendants dismissed in both their individual and official capacities, terminating a First Amendment case filed by a teacher who was disciplined for a public media post about BLM.

32. Ultimately, this and other law will lead to the failure of Bennett's action. For the moment, however, it is sufficient to state that the individual defendants named in this case did not violate any clearly established Constitutional right.

33. Even if merit could be found in one or more of Bennett's claims, all individual defendants would still be entitled to qualified immunity: "The qualified immunity doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000).

34. It is clear even from the facts pled in Bennett's Complaint that the individual defendants could reasonably have thought that their actions violated no clearly established Constitutional right. They are therefore entitled to the protection of qualified immunity. Accordingly, all claims against defendants in their individual capacities must be dismissed.

B. Defendants Stoll, Fusco, Gee, Kassa, Lewis-Campbell, MacBain, Ramić, Roesch and Wesley Must Be Dismissed in Their Individual Capacities As They Are Not Alleged to Have Taken Any Specific Acts

35. A state official is protected by qualified immunity except where the plaintiff has alleged facts sufficient to show that the official took specific acts in violation of her civil rights. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011); Hyman v. Capital One Auto Fin., 826 F. App'x 244 (3d Cir. 2020). A defendant in a civil rights action must, in any case, have personal involvement in the alleged wrongs. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988), citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981). Allegations of participation or actual knowledge and acquiescence must be made with appropriate particularity. Rode, supra. There is no *respondeat superior* liability in a § 1983 case. Id.

36. Without conceding that any defendant in this matter is properly sued in his or her individual capacity, it is particularly clear that the individual members of the North Penn School

District Board of Directors, i.e., Martina Stoll, Christian D. Fusco, Elisha K. Gee, Jonathan M. Kassa, Wanda Lewis-Campbell, Timothy MacBain, Juliane D. Ramić, Alfred R. Roesch, III, and Catherine A. Wesley, must be dismissed because they are not even alleged to have taken any specific action. Their names appear nowhere in the Complaint other than where they are identified as defendants.

37. Where each individual Director is named, Bennett repeats, as a boilerplate nod to the controlling law, that the Director "directly participated, supervised, and acquiesced" in the deeds alleged to have been wrought upon Bennett. Complaint at ¶¶ 142-150. Yet, Rode's "appropriate particularity" is lacking. None of the Directors is mentioned in the Complaint as having done a single thing.

38. The North Penn School District Board of Directors as a whole is scarcely alleged to have taken any action. At most, the Board of Directors ratified Bennett's resignation on July 16, 2020. It is impossible to portray this as a knowing violation of clearly established law by any individual director. No director is specifically alleged to have said anything or done anything.

39. Bennett has not even attempted to cite law establishing that a school board's ratification of an employee's resignation is a violation of her First Amendment Rights. Further, where, as here, the resignation was presented to the Board of Directors only after two Loudermill hearings, there can be no argument that Bennett's right to procedural due process was violated.

40. Again, this will inevitably lead to the failure of Bennett's case. However, it is sufficient for now to point out that each one of the defendants named in paragraph 34, above, is entitled to qualified immunity because Bennett has failed to allege any facts which demonstrate that Martina Stoll, Christian D. Fusco, Elisha K. Gee, Jonathan M. Kassa, Wanda Lewis-

Campbell, Timothy MacBain, Juliane D. Ramić, Alfred R. Roesch, III, or Catherine A. Wesley, took any action whatsoever with respect to the events of June 24-July 16, 2020.

IV. Conclusion

In accordance with the foregoing, Defendants J. Mia Kim, Dr. Michael Sean Arney, School Superintendent Curtis R. Dietrich, Christine Liberaski, Martina Stoll, Christian D. Fusco, Elisha K. Gee, Jonathan M. Kassa, Wanda Lewis-Campbell, Timothy MacBain, Juliane D. Ramić, Alfred R. Roesch, III, and Catherine A. Wesley, respectfully request that the claims against them in their individual capacities be dismissed for failure to state a claim upon which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6).

Respectfully Submitted,

SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: November 24, 2020

By: /s/Karl A. Romberger, Jr.
Karl A. Romberger, Jr., Esquire, PA60636
Justin D. Barbetta, Esquire, PA318221
331 Butler Avenue, Post Office Box 5069
New Britain, Pennsylvania 18901
*t* (215) 345-9111
*kromberger@sweetstevens.com*
*jbarbetta@sweetstevens.com*
Attorneys for Defendants