**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

ASHLEY B BENNETT

vs.

NORTH PENN SCHOOL DISTRICT

NO.  2020-13927

## NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY  BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Francis Alexander, LLC**
Francis Malofiy, Esquire
Attorney ID No.: 208494
Alfred (AJ) Fluehr, Esquire
Attorney ID No.: 316503
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

The Court of Common Pleas
Montgomery County, Pennsylvania

| | |
|---|---|
| Ashley B. Bennett<br>*Plaintiff*<br><br>v.<br><br>North Penn School District;<br>North Penn School District Board of Directors;<br>J. Mia Kim;<br>Michael Sean Arney;<br>Curtis R. Dietrich;<br>Christine Liberaski Kroznuski;<br>Martina Stoll;<br>Christian D. Fusco;<br>Elisha K. Gee;<br>Jonathan M. Kassa;<br>Wanda Lewis-Campbell;<br>Timothy MacBain;<br>Juliane D. Ramić;<br>Alfred R. Roesch, III;<br>Catherine A. Wesley<br>*Defendants* | Civil Action No.:<br>2020-13927<br><br>August Term, 2020<br><br>Civil Action:<br><br>1. 1st Amendment -<br>Free Speech Retaliation<br><br>2. 1st Amendment -<br>Political Assoc. Retaliation<br><br>3. 14th Amendment<br>Procedural Due Process Violations<br><br><br>*Jury Trial Demanded* |

## Notice to Defend – Civil Complaint

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.MONTGOMERY BAR ASSOCIATION

Lawyer Reference Service
100 W. Airy Street (REAR)
Norristown, PA 19404-0268
(610) 279-9660, EXTENSION 201

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE MONTGOMERY
Servicio De Referencia Legal
100 W. Airy Street (REAR)
Norristown, PA 19404-0268
(610) 279-9660, EXTENSION 201

Page 1 of 78

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**FRANCIS ALEXANDER, LLC**
Francis Malofiy, Esquire
Attorney ID No.: 208494
Alfred (AJ) Fluehr, Esquire
Attorney ID No.: 316503
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

## THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| **ASHLEY B. BENNETT**<br>*Plaintiff*<br><br>v.<br><br>**NORTH PENN SCHOOL DISTRICT;**<br>**NORTH PENN SCHOOL DISTRICT BOARD**<br>**OF DIRECTORS;**<br>**J. MIA KIM;**<br>**MICHAEL SEAN ARNEY;**<br>**CURTIS R. DIETRICH;**<br>**CHRISTINE LIBERASKI KROZNUSKI;**<br>**MARTINA STOLL;**<br>**CHRISTIAN D. FUSCO;**<br>**ELISHA K. GEE;**<br>**JONATHAN M. KASSA;**<br>**WANDA LEWIS-CAMPBELL;**<br>**TIMOTHY MACBAIN;**<br>**JULIANE D. RAMIĆ;**<br>**ALFRED R. ROESCH, III;**<br>**CATHERINE A. WESLEY**<br>*Defendants* | **CIVIL ACTION NO.:**<br>2020-13927<br><br>**AUGUST TERM, 2020**<br><br>**CIVIL ACTION:**<br><br>1. **1ST AMENDMENT -**<br>**FREE SPEECH RETALIATION**<br><br>2. **1ST AMENDMENT -**<br>**POLITICAL ASSOC. RETALIATION**<br><br>3. **14TH AMENDMENT**<br>**PROCEDURAL DUE PROCESS VIOLATIONS**<br><br><br>*JURY TRIAL DEMANDED* |

## CIVIL ACTION COMPLAINT
---
## UNCONSTITUTIONAL FREE SPEECH RETALIATION AND
## DUE PROCESS VIOLATIONS

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## INTRODUCTION

1.    Mrs. Ashley B. Bennett worked for 27 years with special needs children, and was employed for the last 8 years as Supervisor of Special Education for the North Penn School District. She has a stellar record, a master's degree in special education, and has dedicated her career to helping disadvantaged children.

2.    That all ended when the proverbial social media mob came for Ashley Bennett in late June 2020 because she expressed mainstream political opinions critical of Black Lives Matter and expressed right of center political opinions in a private June 24, 2020 Facebook repost unconnected to her job.

3.    The polestar of civics in the United States is that a public employee cannot be disciplined for the content of private political speech under the First Amendment. This is also enshrined in North Penn's board policies. See, e.g., Board Policy 320 **Freedom of Speech in Nonschool Settings** ("The Board acknowledges the right of administrative, professional and support employees as citizens in a democratic society to speak out on issues of public concern."); Board Policy 321 **Political Activities**.

4.    Yet, North Penn heedlessly joined in eager to attack one if its own. Defendants immediately suspended Bennett without warning on June 25, 2020, placed her under investigation telling her she was a racist, and told her she should start looking for another job.

5.    In case there was any ambiguity about why Defendants were attacking Bennett, North Penn then posted a press release **to its own website** on June 26, 2020—while also providing comment for news outlets—blasting Bennett and forthrightly admitting they had targeted her for expressing political opinions on Black Lives Matter that Defendants disagree with:

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> The comments *do not align* with the North Penn School District's core values. *The views expressed conflict with our work to develop a community that values diversity.* We strive to acknowledge, respect, understand, and celebrate the dynamics of racial and cultural differences. ...
>
> The employee has been placed on administrative leave while an investigation is conducted

<u>See</u> Exhibit 1. This is an astonishing and straightforward admission of viewpoint retaliation and discrimination in violation of Bennett's rights to free speech and political affiliation under the First Amendment.

6.      It is a sad testament to the state of public education that alleged educators could so deliberately violate Ashley's civil rights without any regard for basic principles and tenants of American governance. Defendants, who are overwhelmingly left-wing administrators and elected officials, are criminalizing disagreement with their left wing politics. Defendants believe that they have a monopoly on truth and acceptable political commentary.

7.      Note that if this is how administrators who do not toe the line of left wing orthodoxy are treated, then the Defendants' conduct toward students is almost certain to be far worse.

8.      This press release and press comments by North Penn legitimatized the outrageous attacks on Ashley Bennett, illegally imposed left-wing government speech codes on public employees, and destroyed Ashley Bennett's career.

9.      Aside from violating Bennett's civil rights, the public fusillade leveled against her also unambiguously violated Pennsylvania criminal law which requires strict confidentiality of all disciplinary complaints. <u>See</u> 23 P.S. § 2070.17b(b) (attached); Board Policy 317 (attached). Each publication by Defendants is a third degree misdemeanor punishable by up to 1 year in jail and $2,500 in fines.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

10.     As a result of Defendants' criminal press blitz, Bennett became a pariah overnight—as Defendants intended.

11.     There was never a shred of cause for Defendants to discipline, investigate, or publicly comment on Ashley Bennett, who was engaging in protected political speech.

12.     Despite the lack of cause, following the public attacks Defendants proceeded to interrogate Mrs. Bennett for days about her thoughts, beliefs, and ideas with the goal and purpose of forcing her to resign. Defendants were not subtle about this goal, with the Director of HR Mia Kim stating that if Bennett did not resign the district would terminate her and ruin her career:

> Kim:     You have come in fighting for your job. If you were my sister would be "Listen, *are you planning on working years down the road*, if that is the case, A, you want your job, but the big picture is where do you, *this is going to get ugly, have you thought about the consequences about future employment?* When you have the hearing, you can have a closed hearing, but that information will become public. You can also have an attorney with you. I am not judging you as a person, *what is your plan, do you want to be employed? If the answer is yes, think about the consequences.* If you want to go to the board, you will have a LoudermIlk [sic] hearing. Any information is going to find out about that.

> Bennett:     it's already out there, so how much more public could it be?

> Kim:     *it's different to be terminated then quitting. If you are terminated, no one will look at your resume, it speaks volumes.*

See Exhibit 6 (emphasis added).

13.     These Orwellian investigation sessions had no legitimate purpose, but instead were meant to coerce her into resigning.

14.     Reeling, and humiliated by the District's false and outrageous public attacks on her, Mrs. Bennett involuntarily resigned on July 9, 2020, under protest as a result of Defendants' coercion. Defendants had never even told her what the charges were against her.

2020-13927-0001 Complaint In, Page 7

Case # 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

15.     Defendants' conduct, retaliating against a public employee for private political expression, is utterly alien to a civilized nation of laws. The fact that Bennett was maliciously prosecuted, brow beaten, and publicly humiliated, without regard for law or due process, is a stunning injustice and indictment of the public education system. The actions of the District's petty tyrants shock the conscience of any reasonable observer.

16.     Throughout the hell Bennett was put through the crime was unknown, the process was the punishment, denials were evidence of guilt, and the result predetermined. This conduct is more befitting a Star Chamber, the Soviet Union, or the plot of *1984* than the United States of America.

17.     Ashley Bennett brings this Complaint to protect not only her rights, but also because the Defendants at North Penn have publicly declared that their intent, goal, and purpose is to chill the freedom of speech for all citizens who disagree with their preferred politics.

18.     This anti-American and illegal conduct must be quashed wherever it is found.

***** 

## Background

**The Facebook Post and North Penn's Initial Retaliation against Ashley Bennett on June 25 and June 26, 2020**

19.     On the evening of June 24, 2020, at 9:39 pm, North Penn School District's Supervisor of Special Education, Ashley Bennett, reposted a comment on her personal Facebook profile she had seen circulating. She did this on her personal device, not during work.

20.     The private repost concerned the controversial Black Lives Matter political movement and sought to point out that many black lives are ignored and marginalized by the left-wing movement:

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"I'm confused right now.

I see signs all over saying #BlackLivesMatter. I'm just trying to figure out WHICH black lives matter.

It can't be the unborn black babies – they are destroyed without a second thought.

It's not black cops – they don't seem to matter at all.

It's not my black #Conservative friends. They are told to shut the f*ck up if they know what's best for them by their black counterparts. It's not black business owners. Their property, their business and their employees don't mean anything.

So which black lives matter again?!?

I can't keep up. I can't. I'm exhausted trying to figure out what we're all supposed to do, believe, and be offended by, and outraged by next.

....

Just 45 days ago protests weren't "essential" and were considered criminal, selfish, and a murderous activity because of the #Coronavirus. Today they are gloriously critical and celebrated. All of the obvious criminal and murderous activities are simply ignored.

If you protest about lock-downs for freedom, you are selfish and you will spread a virus.

If you protest, loot, and riot for social justice, you are a warrior and immune from the virus.

....

Then came social justice, and social distancing was suddenly no more. #Democrat governors and mayors marched arm-in-arm with protesters. A thousand people at three memorials for someone they never even met.

It's a matter of "respect". But you couldn't have a funeral for a family member.

Black Lives Matter. Of course they do. But then multiple black police officers and individuals were killed during the "peaceful protests". I don't see any outrage.

Black individually owned businesses were burned to the ground. Silence.

Deadliest weekend in Chicago, virtually all black on black violence. The

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

#MainstreamMedia is silent. NOTHING!!

I'm confused now.

Look at the data. NO, not that data.

Do the math. No, you can't do the math like that.

Only the experts can understand the data and the math.

And Black Lives Matter protesters REFUSE to look at or discuss the #FBI Crime Statistics - because the data doesn't support their claims of systemic racism against blacks.

Just listen to the black community leaders. No, not them, only the radicals are right.

....

Remember. It's an election year and #liberals are desperate, don't put anything past them.

They hate #PresidentTrump more than they love #America and they don't care how much damage they do to our country.

So for now I pray.

I pray God will heal our land and Bless the United States of America."

<u>See</u> Exhibit 2.

21.     The repost was not connected to her job duties, was entirely unconnected to her employment, and was on a matter of public concern. <u>See</u> Exhibit 2 - Facebook Post. The repost expressed opinions shared by many, many Americans of all creeds.

22.     Some members of the community, ironically, were outraged with the content of her repost. It is, of course, the right of citizens to disagree with each other.

23.     However, as is often the case these days, a social media mob formed and came for Mrs. Bennett's job at North Penn based on the content of her expression, contacting school officials. These individuals refuse to accept that citizens in a free society have the right to disagree with each other without facing personal ruination.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

24. The response from the District should have simply been that employees have a First Amendment right to say what they want outside school on matters of public concern. See Garcetti v. Ceballos, 547 US 410, 419 (2006) (stating that public employees who express opinions on matters of public concern unrelated to their employment have the broadest First Amendment protection).

25. This is, after all, also the District's explicit policy. See Exhibit 3 - Board Policy 320 *Freedom of Speech in Nonschool Settings* ("The Board acknowledges the right of administrative, professional and support employees as citizens in a democratic society to speak out on issues of public concern."); Exhibit 4 - Board Policy 321 *Political Activities* ("The Board recognizes and encourages the right of administrative, professional and support employees, as citizens, to engage in political activity."). The District certainly should not have offered aid, succor, and legitimacy to such a mob.

26. To its shame, North Penn (a *public* school district) and its officials immediately joined in and targeted one of their own. The District and Director of HR Mia Kim suspended Mrs. Bennett without warning or notice or cause on June 25 for the Facebook post. Kim only told her that her repost was racist and that she was starting a vague and unspecified investigation (apparently of Ashley Bennett's thought crimes). Mrs. Bennett was blindsided.

27. The District repeatedly (but falsely) assured her on June 25 that the existence of the complaint against her and an investigation would be kept confidential. This is expressly required by law and Board Policy to avoid prejudicing and shaming employees without due process, and violators commit a third degree misdemeanor. See 24 P.S. § 2070.17b(b); Exhibit 5 - Board Policy 317.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

28.     The District's assurances were, however, untrue. The District, having adjudicated Bennett guilty of thought crimes, decided that it did not have to comply with the confidentiality law.

29.     At the same time on June 25, 2020, as the District assured Mrs. Bennett it would keep everything confidential (as it had a legal obligation to do), it was secretly and criminally providing comment to news organizations and drafting a press release for posting on North Penn's website the morning of June 26, 2020. This was prohibited First Amendment retaliation.

30.     This press release was drafted and posted by at least defendant Christine Liberaski Kroznuski (the district spokeswoman) and defendant Kim, and was known about, supervised, and ratified by all other defendants.

31.     The purpose of these illegal public statements were to attack, stigmatize, and otherwise ruin Ashley Bennett, coercing her to resign because she had expressed political viewpoints Defendants hated.

32.     The statements by the District vilified Ashley and expressly claimed that she was being suspended and investigated for expressing viewpoints that contradict the District's values, including diversity:

> The comments *do not align* with the North Penn School District's core values. *The views expressed conflict with our work to develop a community that values diversity.* We strive to acknowledge, respect, understand, and celebrate the dynamics of racial and cultural differences. ...
>
> The employee has been placed on administrative leave while an investigation is conducted.

See Exhibit 1 - 6/26/2020 North Penn Statement (emphases added). Accusations of this sort by an educator's employer, in this environment, effectively spell the end of the educator's employment and career.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

33.     The press release even expressly endorsed and expressed solidarity with certain political movements such as Black Lives Matter, making it abundantly clear that any employee who expresses an opinion perceived as offending that movement will be disciplined and ostracized without regard for the law.

34.     A news article, posted on 9:09 am on June 26, 2020, contained similar comments as the press release, from "district officials" about Bennett:

> "The comments that were brought to our attention do not align with the North Penn School District's core values. The views expressed are in direct conflict with our work to develop a community that values diversity.

Keith Heffintrayer, "North Penn Employee Placed On Administrative Leave Following Comments Opposing Black Lives Matter," NORTH PENN NOW (June 26, 2020, at 9:09 am), https://northpennnow.com/north-penn-employee-placed-on-administrative-leave-following-comments-oppos-p2930-117.htm.

35.     The article further noted, as the headline conveys, that: "Officials said that Bennett has since been placed on administrative leave while they conduct an investigation into her actions." Id.

36.     The officials who spoke with the media were at least defendants Liberaski and Kim, and their contact with the media was known about, supervised, and ratified by all other defendants.

37.     As the District was posting the press release and commenting for the media, the superintendent defendant Curtis Dietrich and several board members also told members of the public agitating to have Bennett fired that the District was addressing her continued employment through "legal and HR."

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

38.   Incredibly, the District's multiple public and media comments forthrightly and expressly admit to unconstitutional viewpoint and political association retaliation.

39.   All of these statements regarding Bennett by the District and its officials make it clear that the retaliation against Ashley was a considered and official action by the District, not the rogue action of one or two employees.

40.   All of these public statements by Defendants are blatant criminal violations of 24 P.S. § 2070.17b and Board Policy 317, punishable by up to 1 year in jail for each violation. See Exhibit 5.

41.   Disclosing even the existence of disciplinary action is a third-degree misdemeanor. See Doe v. Governor of Pa., No. 18-3299  (3d Cir. Nov. 4, 2019) (stating that "discussing anything about the investigation—even its existence—would make" the discloser "subject to criminal penalties").

42.   Furthermore, the confidentiality of disciplinary proceedings is so ingrained in public education administrators that the publicizing of this matter could only have been done with willful disregard of the criminal penalties imposed for disclosure. Indeed, defendant Kim repeatedly told Bennett that she had to keep the process confidential—while Kim and the other Defendants deliberately breached the confidentiality law. See Exhibit 6 - Meeting Notes (Kim telling Bennett on 6/29/2020: "This is a confidential meeting, do not talk to anyone about the issue.").

43.   Upon waking up on the morning of June 26, 2020, and seeing the public comments by the District and Superintendent and Board, Ashley Bennett found herself blindsided for the second time in 24 hours. She was mentally and emotionally devastated, watching her career, reputation, and life crumble in a matter of hours.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

44.    By publicly attacking Ashley, contrary to its express promises of confidentiality and the law, the District effectively made it impossible for Ashley to defend herself at work or in public as she was still trying to cope with the shock of what had happened to her. It is hard to imagine a more direct and egregious violation of a public employee's Federal and State rights, and the District's very own policies.

45.    The press release was allowed to remain on NPSD's website for several weeks, thereby indicating that its posting was known about and approved by all Defendants, until it was quietly deleted without explanation evidencing consciousness of guilt. The actions of the District's petty tyrants shock the conscience of any reasonable observer.

46.    Yet, despite the District ignoring its constitutional and other legal obligations to Mrs. Bennett, it continued to insist that she keep the matter confidential, muzzling her from defending herself from the illegal public broadside she had just been subjected to. See Exhibit 6 - Meeting Notes (Kim telling Bennett on 6/29/2020: "This is a confidential meeting, do not talk to anyone about the issue.").

47.    That this happened to a public employee is a manifest and outrageous injustice; however, Bennett's Orwellian nightmare was just beginning.

**The District Threatens Bennett to Resign, or Be Subjected to Further Public Retaliation and Termination, Despite Having No Cause Whatsoever to Discipline or Investigate Her in the First Place**

48.    Following the illegal conduct of Defendants on June 25 and June 26, 2020, North Penn's clearly illegal conduct then continued unabated over the next several days despite there never having been a shred of cause to lift a finger against Bennett.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

49.     At no point was Bennett told what rule or policy or law she had violated, other than that her Facebook post was racist and allegedly "does not line up with North Penn values"—nostrums she vigorously disagrees with. See Exhibit 6.

50.     However, the content of the private posts unrelated to her job are irrelevant under the Constitution; she does not have to explain her beliefs to the government.

51.     No notice of the actual charges or evidence against her was *ever* provided. These actions taken against her were a malicious prosecution: a knowingly illegitimate and reckless proceeding with no legal cause or factual basis.

52.     Instead of being given notice of the charges and evidence against her, and a Loudermill hearing as required by due process, North Penn instead took it upon itself to engage in repeated interrogation sessions of Bennett on 6/29, 6/30, and 7/1/2020, not about any actual violation of any policy or law, but instead her beliefs. Defendants Kim and Arney were present. The minutes of these meetings were taken down by an Act 93 representative and show that Defendants were acting brazenly in threatening Bennett.

53.     These sessions had no legitimate investigative purpose or legal justification, and were conducted with the intent and purpose to force and coerce her to resign by threatening her with termination. Defendants also stated that if she contested the termination, instead of resigning, that they would destroy her career in education.

54.     "If an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive." Schultz v. United States Navy, 810 F. 2d 1133, 1136 (Fed. Cir. 1987). Here, the threatened removal was not predicated on any legal foundation, had no connection to her job, could not be substantiated, and was in fact blatantly in violation of the US and Pennsylvania constitutions.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

55.     The meetings started with Defendants informing Ashley in the 6/29 session that she was suspended on June 25 and is now being investigated because "The post does not line up with North Penn values." This is yet another express admission—in addition to the public comments made by Defendants—that all actions taken by Defendants against Bennett were retaliation for her private political opinions.

56.     Defendants then outrageously told Bennett that "This is a confidential meeting, do not talk to anyone about the issue"—after having already publicly (and illegally) attacked her in the press.

57.     Following these initial admonitions, Ashley was repeatedly interrogated on 6/29 and 6/30 and asked to justify the thought processes and purposes behind each idea in her political Facebook posts. See Exhibit 6.

58.     Government agents have no right to interrogate an employee about their private political beliefs and mental thought processes, especially when unmoored from any real allegation of wrongdoing. This is a truly outrageous abuse of governmental power, and a stark warning about the erosion of constitutional protections in this country.

59.     After Defendants finished dissecting Bennett's thought crimes on the first two days, on July 1, 2020, Bennett told Defendants that she was going to "fight for my job."

60.     However, Defendants had other ideas, and threatened Bennett with termination and career ruin if she did not immediately resign:

> Kim:     You have come in fighting for your job. If you were my sister would be "Listen, *are you planning on working years down the road*, if that is the case, A, you want your job, but the big picture is where do you, *this is going to get ugly, have you thought about the consequences about future employment?* When you have the hearing, you can have a closed hearing, but that information will become public. You can also have an

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> attorney with you. I am not judging you as a person, *what is your plan, do you want to be employed? If the answer is yes, think about the consequences.* If you want to go to the board, you will have a LoudermIlk [sic] hearing. Any information is going to find out about that.

Bennett:   it's already out there, so how much more public could it be?

Kim:   *it's different to be terminated then quitting. If you are terminated, no one will look at your resume, it speaks volumes.*

See Exhibit 6 (emphasis added). It is incredible to see such blatantly coercive threats so candidly and casually delivered by a high-level administrator.

61.     Note that discipline can only be made public if Bennett was in fact found to have so seriously violated a policy that nonprivate discipline had to be imposed; when Kim said "that [hearing] information will become public" she was in effect telling Bennett that it had already been determined she would be disciplined and terminated.

62.     Remember, these threats against Bennett's job, career, future, and reputation are being made solely because she engaged in private and protected political expression. They were particularly credible threats given that Defendants had already demonstrated it had no compunction about criminally attacking her publicly and ruining her life.

63.     It is particularly insidious that Kim would attempt to make it seem as if she is kindheartedly providing advice to Bennett as a sister would, when she is actually trying to destroy Bennett's life over political differences.

64.     Kim continued making it unambiguously clear that Bennett's only option was to resign and that she would be terminated otherwise:

Bennett:   this is my only option? *There is no other option to get a second chance?*

Kim:   how can we set you up for success. *Honesty, it would be very difficult setting you up for success, I don't see us moving in that direction.* I

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

would not bring up Loudermilk [sic] if that was a consideration of keeping your employment with the district.

See Exhibit 6 (emphasis added). Again, it is being made unambiguously clear to Bennett that there is no other option other than resignation, because she is going to be terminated.

65.     Kim also told Bennett to consider "Who the board is" and how it would "ruin your future" if Bennett defended herself and did not resign.[1] This was plainly a reference to the liberal Democrat composition of the Board and their political opposition to her Facebook post.

66.     The interrogation sessions concluded with Ashley expressing desperate incredulity that she was losing her job and career, as Defendants had made explicitly clear was going to happen. The recorded response of defendant Mia Kim defies belief:

Bennett:     "This is unbelievable, I am losing my job because people took this post the wrong way, and now I lost my career......."

Kim:     "If other people heard what you just said they would walk away thinking that 'she really does not understand'............or get it."

See Exhibit 6.

67.      In fact, it is Kim and Defendants who do not "get it." They behaved in a grossly illegal fashion, attacking a fellow professional educator for expressing political beliefs different than theirs. The callous indifference, and malice, of Kim to the horrible position she had placed Bennett is unambiguous.

68.     A summary of Kim's threats, both express and veiled, is:

- "this is going to get ugly, have you thought about the consequences about future employment?" when pushing Bennett to resign

- It would be impossible to "come back" from this professionally and personally if she defended herself in front of the Board.

---

[1] The Act 93 representative taking the meeting minutes did not accurately record this comment, but it was made by Kim on July 1, 2020.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

- To consider "Who the board is" and how it would "ruin your future" if Bennett defended herself and did not resign.

- Telling her that attempting to go through a <u>Loudermill</u> hearing would not turn out well for her and that she would be terminated.

- That there would be no "other options" or "second chances" for Bennett.

- Responding to Bennett decrying the loss of her job and career, Kim stated that Bennett's refusal to agree with this result shows that she "does not get it."

69. Defendants, in sum and substance, admitted that any attempt by Bennett to fight or defend herself would be used against her, that they would destroy her career if she did not resign, and that any hearings were a futile sham. Throughout all this, Defendants never once identified a legal or policy violation warranting termination.

70. The crime is unknown, the process is the punishment, a denial is evidence of guilt, and the result predetermined. This conduct is more befitting a Star Chamber, the Soviet Union, or the plot of *1984* than the United States of America. Again, not a shred of cause exists for any of these outrageous actions against Bennett.

71. North Penn's delay in providing a <u>Loudermill</u> hearing (although there was no basis to hold one) while it publicly attacked Ashley, publicly destroyed her reputation, and engaged in a sham investigation designed to force and coerce her into resigning is utterly despicable behavior.

72. To be clear, there was never any probable cause, or any other basis whatsoever, to suspend, discipline, investigate, terminate, publicly comment, or otherwise take any action whatsoever against Ashley Bennett. The notion that she would be subjected to such Stalinist conduct from a governmental employer in the United States, resulting in abject career and personal ruination, is absurd.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

73.     Despite being suspended, investigated, and threatened with termination for weeks she was never once told what the charges were against her, making it abundantly clear that there were none.

74.     Bennett was told that she had to resign immediately or face termination—and in the meantime Defendants had poisoned the district and its employees against her making a return impossible.

75.     This conduct by Defendants goes far beyond "purely coercive" conduct by a governmental employer that occurs when the employer cannot substantiate the basis for removal. Here, there was not only not basis for the threatened removal, but the reason given was entirely illegal.

**Defendants Characterized Bennett as Someone So Racist and Opposed to Diversity that She had to Be Disciplined because of a Political Facebook Post, Despite Knowing that Before this Incident She Pushed for Diversity in Her Own Department and at North Penn**

76.     It is expressly prohibited to retaliate against a public employee for their political expression, regardless of the content of the expression.

77.     However, it should be noted that the Defendants knew that their portrayal of Bennett as some irredeemable racist opposed to diversity was ridiculous and false.

78.     In the months before this incident, from January to March 2020, *Bennett had repeatedly voiced concern about the whether the hiring process at North Penn lived up to North Penn's alleged commitment to diversity*. Bennett pointed this out to Defendants during her interrogation sessions, but it was ignored by Mia Kim and Sean Arney because Defendants had already determined Bennett would not get a "second chance."

79.     In January 2020 an African American gentleman ("PW") interviewed for a supervisor position in the special education department, and scored higher than any other

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

applicant. To Bennett's surprise, he was instead passed over for a white male with no special education experience who had not applied for the job, did not interview for the job, and had little interest in the job.

80.    Bennett brought it up to Assistant Superintendent Jenna Rufo and asked why PW had not been hired. Bennett was taken aback when she was told by Rufo that someone looked him up on social media and that "he looked like a flirt and we don't need that here." A review of PW's social media shows nothing remarkable, and the stated reason appears to be entirely pretextual.

81.    A few weeks later Bennett was conducting interviews with principal TJ Seidenberger and then-Director of Special Education Ruth Desiderio. During a break Bennett commented to Seidenberger and Desiderio that unqualified candidates with no special education supervision were being hired for their department instead of experienced candidates, specifically the African-American man, PW. Another Assistant Superintendent, Todd Bauer, overheard her and told her that her comment was not appreciated. Bennett responded, "I have a master's degree in special education, how do you think we feel when people without qualifications keep being hired for this department?" The response was that the District had its reasons.

82.    A few weeks later in February 2020, a regular department meeting took place at the Education Services Center. Approximately seven people were present, including Bennett, the director Ruth Desidario, supervisor Tiffany D'Amore, and Christine Mueller. While the group was talking before the start of the meeting, Bennett again raised that PW had been passed over for an unqualified white man who had not interviewed. The director glossed over the issue and vaguely stated that the District had its reasons.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

83.     Then in early March 2020, director Desidario went on leave and defendant Sean Arney was installed as interim director for special education. He had previously been the math curriculum supervisor. There was no interview or application by Arney, he was simply appointed. He had no special education experience.

84.     This prompted Bennett to write to a fellow administrator in the district:



Mar 5, 2:38 PM

85.     Bennett points out these facts to show that four separate times in the months preceding the events at issue she expressed concerns to fellow administrators and superiors that North Penn was not living up to its ideals about equity.

86.     These comments were completely genuine, as Bennett could have no way of knowing what was going to happen on June 25, 2020.

87.     Defendants knew and should have known that Bennett is a good person, and that the evil caricature that they sought to portray to the public to belittle her and destroy her life is absurdly false.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

88.    It may be inconceivable to Defendants, but adults on the other side of the political divide can still be fundamentally good people despite having disagreements on many issues.

89.    Because of Defendants' retaliatory actions Plaintiff's life has been destroyed, she lost her job, her career, and her reputation.

90.    In today's day and age, accusations of the sort that Defendants publicized against Bennett are a stake through the heart of a public educator's career. Defendants knew this, and acted deliberately to punish Bennett and coerce her resignation.

91.    As a result she has suffered severe economic, mental, and emotional damages.

92.    The individual Defendants cannot claim any qualified privilege because the rights at issue are clearly established.

**North Penn and Its Officials Have Ruined Ashley Bennett's Life, Forced Her to Resign, Made Further Employment at North Penn Impossible, and Destroyed her 27-Year Career Helping Special Needs Students**

93.    As a result of North Penn's actions, Bennett has now been vilified in the press, on the internet, in the public, in the community, among parents, among students, and at work. She was promised by the District that any attempt to defend herself would result not only in termination, but further retaliation and ruination. The process is the punishment.

94.    This "purely coercive" retaliatory conduct by the District, lacking any legal or factual basis, is beyond belief and involuntarily forced her to resign her position at the district, resulting in a constructive discharge/termination.

95.    A resignation is considered a constructive discharge if it was "involuntarily procured" "by coercion or duress," or by misrepresentations of material fact. See Judge v. Shikellamy School District, 905 F. 3d 122 (3d Cir. 2018); Schultz v. U.S. Navy, 810 F.2d 1133,

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1136 (Fed. Cir. 1987). Also relevant is whether a reasonable person "would have felt compelled to resign." Id.

96.     "An example of an involuntary resignation based on coercion is a resignation that is induced by a threat to take disciplinary action that the agency knows could not be substantiated." Staats v. US Postal Service, 99 F.3d 1120 (Fed. Cir. 1996).

97.     The Third Circuit holds that where there is no cause for the threatened termination "the choice between resignation and the initiation of termination proceedings was 'purely coercive.'" Judge, 905 F.3d at 123 (quoting Schultz, supra).

98.     As a result of the Defendants' utterly baseless campaign to force and coerce her to resign in lieu of immediate termination (and further public retaliation), Bennett was in fact forced to involuntarily resign.

99.     Bennett wrote a letter at July 9, 2020 (Exhibit 7), decrying her forced and coerced departure after she was given a draft agreement which demanded that resign and she give up all her rights for a few months pay:

> Dear North Penn,
>
> I will not sign the agreement you offered me. I have always been a good employee and have represented North Penn well for eight years. I shared a post about a public political issue on my personal Facebook page. It had nothing to do with my employer or job.
>
> It was explained to me by you during several meetings that my only option was to resign immediately and that there would be no second chance. I do not even really understand what I was suspended for, what I am being investigated for, and why I am facing termination. All I know is that I'm terrified and that my life has been ruined.
>
> I was told by Mia Kim, the Director of HR, in no uncertain terms that I had to resign because I would otherwise be terminated and no one would ever look at my resume again. She also said "If I were your sister, I would tell you to look for another job." I was also told by Kim that if I go before the

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

board to defend myself I would never be able to "come back" from this professionally and personally. I was also told by Kim that I need to consider "Who the board is" and how it would "ruin my future" if I tried to contest what was happening to me.

You have forced me out of a position I love and care about: helping special education students. You have forever destroyed my career, reputation and ability to gain future employment. This district has baselessly vilified me in the community, among parents, and among my co-workers. This has been the most devastating moment of my life.

I am truly shattered that my time at North Penn had to end this way.

Sincerely,
Ashley B. Bennett

See Exhibit 7.

100.　Bennett thought that this would end the matter for the time being until she could get her head around what had just happened to her. She was wrong.

**North Penn Refuses to Acknowledge Bennett's Departure Because She Did Not Sign the Release of Liability, and Tries to Force Her to Falsely Characterize Her Resignation as "Voluntary"**

101.　Defendant Kim then bizarrely wrote back on the evening of July 9, 2020, acting as if Bennett was still employed, and again threatening that resignation was "in your best interest":

Dear Ms. Bennett,

I am in receipt of your email from this morning. *I still consider it to be in your best interest to resign under the circumstances.* However, as I have informed you previously, you have the right to be heard before the Board of School Directors. Therefore*, I want to afford you the due process*. The process first requires a Loudermill proceeding *where you will be afforded the opportunity to hear the evidence against you* regarding your Face book posting and its impact on your current role and the operation of the District.

The Loudermill proceeding has been scheduled for Monday, July 13, 2020, at 8:30 am. It will be held virtually in a Google meeting (Meeting ID meet.google.com/wvo-ifue-mgk, Phone Numbers (US)+ 1 813-482-9804 PIN : 428 951 792#), and Dr. Arney will be in attendance. Please be advised that this proceeding does not include your attorney; however, you may bring an Act 93 member.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

At the proceeding, you will be given an opportunity to provide your explanation with regard to the evidence against you. Based upon your explanation, a decision will be made whether or not to discipline you, suspend you without pay and benefits, and/or terminate your employment with the district. If the termination is chosen, District Administration will prepare written charges against you that will be received and considered at a meeting of the Board.

Also, I am seeking clarification regarding your email from this morning. You wrote that you will not sign the agreement **but you indicated ending your employment with North Penn School District. Did you intend the email to be your resignation from the District?** If this is the case, Loudermill proceeding will not be necessary. Please let me know.

You will continue to be on administrative leave with pay until further notice. If you have any further questions, please contact me at 215-853-1040. Thank you for your attention and cooperation.

Sincerely,

J. Mia Kim, Ed.D.

<u>See</u> Exhibit 8 (emphases added).

102.    ***At or around this time, someone deleted the illegal press release from North Penn's website.*** This evidences consciousness of guilt and shows that North Penn knew what they were doing to Bennett was wrong.

103.    A <u>Loudermill</u> notice is supposed to identify the charges and policy/legal violations and evidence at issue—***before*** the hearing—so the respondent can have a meaningful opportunity to be heard. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (stating that before hearing employer must give "notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story"). ***Kim's letter fails to identify any violations of policy or law, or any evidence that was to be used against her***. Indeed, at no point has Bennett ever been told of the charge against her.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

104.    Instead, the letter incredibly states only that, at the proceeding, "you will be afforded the opportunity to hear the evidence against you regarding your Facebook posting." See Exhibit 8. This is backwards and the opposite of due process. A refusal to define the alleged crime, and a refusal to provide the substance of the evidence prior to the hearing, are the defining hallmarks of nearly every kangaroo court in history. Nothing about the District's actions, either substantively or procedurally, have been legitimate.

105.    The letter demonstrates that the District was going to conceive a pretextual basis to terminate Bennett at the hearing, where she would not have an attorney and there would be no transcription. This is not due process, and it is also not a Loudermill hearing (even if Bennett were still employed, which she was not). It is a Stalinist thought-crime inquisition dressed up in the skinsuit of Loudermill.

106.    At this point the Defendants were desperate to make it seem as if "due process" had been followed. Yet it is critical to note that they, at no point, ever stopped to ask if they were justified *in initiating or continuing the process in the first place*. See Daniels v. Williams, 474 US 327, 331 (1986). A school district cannot politically retaliate against an employee, and then claim they followed the correct process.

107.    Mrs. Bennett responded to Kim's letter on July 10, 2020, stating:

> You forced me to resign. In your letter, you threatened me again, even though you still did not tell me what I did wrong.
>
> If you will remember, on June 25 you repeatedly told me my suspension and investigation would be kept confidential. Yet, the very next day the school district posted a statement on the North Penn website and commented to the media attacking me. I do not trust anything you say.
>
> This has been the worst experience of my life. I am in a state of shock.  Do not contact me anymore.
>
> Ashley Bennett

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

See Exhibit 9.

108.    Despite Bennett's unequivocal letters stating that she was no longer an employee, and asking not to be contacted, Defendants continued to mislead her and attempt to prejudice her rights.

109.    Defendant Kim sent the following email on July 12, 2020:

Hi Ms. Bennett,

Although I have certainly expressed my opinion that *it would be a good idea for you to resign in light of the concerns that have been brought to our attention from the community, parents, and other District employees, I obviously cannot force you to do so*. At this point, you have been placed on administrative leave with full pay and benefits pending the Administration's investigation *and no disciplinary action has been taken*. As I stated in my letter, *the purpose of the hearing on Monday (7/13/2020) is to present you with the information that we have gathered as part of our investigation into your social media postings and allow you the opportunity to respond*. The Administration would then determine whether to impose disciplinary consequences, the most severe of which would be to recommend to the Board that you be discharged from your employment.

Although you have asked that I no longer contact you, I have every right to do so in my capacity as Director of Human Resources given the fact that you are still an employee of the District. *Your prior communications have not been clear as to whether you wish to continue your employment with the District*. Therefore, please respond to this email to clarify whether you wish to resign from the District effective 7/13/2020. If you respond to confirm that you wish to resign effective 7/13/2020, I will submit your resignation to the School Board for acceptance and we can make arrangements for you to return District property and obtain your personal items from the Educational Services Center. *If you do not respond to this email to indicate that you are resigning*, <u>you are hereby directed to attend the Loudermill proceeding tomorrow morning, July 13, 2020, at 8:30 a.m.</u> As I stated previously, you may bring an Act 93 representative to this meeting but you are not permitted to have an attorney participate.

Please let me know if you have any questions or require further clarification.

Sincerely,

J. Mia Kim, Ed.D.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

See Exhibit 9 (bold emphases added). Note that this letter *still does not manage to identify the charges or evidence against Bennett*, but only says there were vague "concerns."

110.   There is much wrong with this letter.

    a.   **First,** Bennett is yet again threatened by Kim's insinuation it would be a "good idea" to resign.

    b.   **Second,** Bennett was not being put through this hell because of "concerns" from the community, but instead because Defendants disagree with her political speech.

    c.   **Third,** contrary to the letter's assertions, Kim and the District can very obviously force an employee to resign by making their life hell, treating them with contempt, maliciously prosecuting them, illegally violating the confidentiality of the disciplinary process, and otherwise not affording her to due process.

    d.   **Fourth,** Bennett's communications made it unequivocally clear that her employment with the district was finished, which Kim knew.

    e.   **Fifth,** disciplinary action had certainly been taken despite Kim's absurd denials. Bennett was suspended without warning or notice, placed under investigation for unspecified thought crimes, and then threated with termination if she did not immediately resign.

111.   At this point, Mrs. Bennett was retaining counsel and had him respond to defendant Kim, since Kim had refused to stop contacting Bennett who was emotionally and mentally distraught.

112.   Counsel sent the following email on July 12, 2020, at 10:02 pm:

Dear Ms. Kim,

Mrs. Ashley Bennett is in the process of retaining my firm to represent her.

I'm not sure what part of my client's prior communications to you were unclear. You forced her to resign. Therefore, she is no longer an employee of North Penn.

Additionally, she asked you not to contact her anymore. Please respect this simple request as she is dealing with her life being destroyed.

Please be sure to that you and the District retain and preserve all documents relating to Mrs. Bennett, her employment, and her discipline.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

All future communications should be directed to my attention.

With every good wish, I am,

Francis Malofiy, Esquire

<u>See</u> Exhibit 10.

113.    Despite counsel making unequivocally clear that Bennett was no longer employed, and that all contact must go through counsel, Kim and the District deliberately ignored the attorney and continued to try to provide erroneous legal advice to Bennett *while omitting Bennett's counsel from the communications*:

Dear Ms. Bennett,

Last night I received the below communication from an individual stating that he is your attorney.  This is a different individual than your attorney with whom we had been in communication last week.  In his message, he states that you were "forced" to resign and that you are no longer an employee of the District.  *As I explained to you in my email yesterday afternoon, I have no ability to force you to resign.*  To this point, the District worked with your prior attorney last week to prepare an agreement that included your resignation but you rejected this agreement.  I have also explained to you that your status with the District is that you are on administrative leave with full pay and benefits.  In my email from yesterday afternoon, I stated that if you did not indicate that you had resigned from the District effective 7/13/2020, you were directed to attend the Loudermill proceeding with me at 8:30 a.m. this morning.  *Your immediate supervisor, Dr. Arney, and I were on the call at 8:30 a.m. this morning but you did not join us*.

Because you may be receiving conflicting information from an attorney with whom you are apparently consulting, I am willing to reschedule our meeting for <u>tomorrow, Tuesday, July 14, 2020, at 8:30 a.m.</u>  As I have stated, you may bring an Act 93 representative to this meeting but you may not be accompanied by an attorney.  Here is the link for the meeting:  Meeting ID <u>meet.google.com/hhk-nrzt-wmh</u>.  I will also send a Google Meeting invitation.

*The only way in which your employment with the District may end is through voluntary resignation or termination by the School Board*.  Since you have not provided a resignation notice *indicating that you are voluntarily resigning* and because the School Board has taken no action with regard to

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

your employment, you are still an employee of the District receiving full pay and benefits.  To be completely clear: it is your choice to make as to whether you wish to resign.  If you do not attend the meeting tomorrow morning, I will take this to mean that your choice is to resign from the District and your resignation will be placed on the agenda for acceptance by the School Board at its next meeting with an effective date of July 14, 2020.

Sincerely,

J. Mia Kim, Ed.D.

See Exhibit 11 (emphases added).

114.     This is an unconscionable attempt to prejudice Mrs. Bennett's rights. This email from Kim was plainly written to convince Bennett to take actions which could have seriously harmed her legal rights while refusing to copy Bennett's attorney on the letter.

115.     It is particularly absurd to pretend to hold Loudermill hearings after Bennett and her attorney have already informed Defendants that she was no longer employed. Bennett never received any notice of the charges or evidence that could support termination.

116.     Following Defendants' improper and outrageous contact with Bennett, counsel for Bennett wrote a formal letter on July 13, 2020, demanding that District cease and desist contacting Bennett, and explaining in detail that Defendants' conduct was blatantly illegal. It was sent to defendants Kim, Arney, the Superintendent, the entire Board, and the District's solicitor. The letter begins:

I represent Ashley Bennett, who supervised special education at North Penn School District (the "District") for the last eight years. She has dedicated 27 years of her life to helping students with special needs and has a stellar record.

Unfortunately, the actions by North Penn School District, the Board, and the Director of HR Mia Kim have irrevocably tarnished Ashley's career and reputation by illegally and outrageously retaliating against and punishing her for expressing private political viewpoints on Facebook they disagree with.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

She was suspended without notice, then subjected to repeated interrogations and threats that if she did not resign, and instead defended herself, it would result in her career and personal ruination. There was never any cause to take any action against her, and she has *never* been told what policy or law she violated. She was forced to resign as a result by the District's purely coercive behavior.

The District's conduct is utterly alien to a civilized nation of laws. Viewpoint discrimination and retaliation is illegal and unconstitutional. Yet, the District forthrightly and expressly admits to illegal discrimination in a press release and media comments, claiming that she is being disciplined and investigated for expressing views which "contradict" the District's "values." Note that making public attacks on Ashley was a third degree misdemeanor as state law required the District to maintain confidentiality....

<u>See</u> Exhibit 12.

117.    The letter then observed—as this complaint also alleges—that even if Bennett had

not resigned 4 days prior, the <u>Loudermill</u> notice was utterly defective:

A <u>Loudermill</u> notice is supposed to identify the policy/legal violations and evidence at issue— *before* the hearing—so the respondent can have a meaningful opportunity to be heard. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (stating that before hearing employer must give "notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story"). *Kim's letter fails to identify any violations of policy or law, or any evidence that was to be used against her*.

Instead, it incredibly states only that, at the proceeding, "you will be afforded the opportunity to hear the evidence against you regarding your Facebook posting." <u>See</u> Exhibit 7. This is backwards and the opposite of due process. A refusal to define the alleged crime, and a refusal to provide the substance of the evidence prior to the hearing, are the defining hallmarks of nearly every kangaroo court in history. Nothing about the District's actions, either substantively or procedurally, have been legitimate.

In further letters, despite Bennett reiterating that she is no longer employed and has been forced to resign, Kim unilaterally refused to accept this fact. The undersigned counsel then made it clear on July 12 that Ashley was no longer employed and that all future communications should be directed to counsel. Kim, however, improperly and outrageously

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

continued to contact my client in an attempt to seriously prejudice her rights.

Id. (emphasis in original).

118.    The letter also detailed that the District had caused millions in extensive economic harm to Bennett's 27-year career as a special needs educator, and incalculable mental and emotional harm.

119.    The letter and an accompanying email also stated unequivocally that Bennett was represented by counsel and that all contact was to go through counsel. The letter could not have been more unequivocal about where matters stood, and asked for a response in 14 days.

120.    Despite this, Defendants held another fake Loudermill hearing the morning of July 14 and yet again contacted Bennett later that day—and again deliberately omitted her counsel from the email—in an effort to confuse Bennett and prejudice her.

121.    The email read:

> Dear Ms. Bennett,
>
> As I indicated in the email yesterday, we had scheduled another Loudermill proceeding this morning. Dr. Arney and I were present, and, again, you did not attend. Based upon the communication that we've had as well as correspondence that the District received from your attorney, it is clear that you wish to resign from the North Penn School District. Therefore, your resignation, effective July 14, 2020, will be submitted to the Board for consideration at a board meeting.
>
> With regards to getting your personal belongings and returning District issued equipment and materials such a laptop, ID badge, key card, any materials, etc., we can schedule a time for Friday, July 24, 2020. Please let me know the specific time you prefer.
>
> Thank you for your attention.
>
> Sincerely,
>
> J. Mia Kim, Ed.D.

See Exhibit 13.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

122.    Kim then emailed Bennett again, ***and deliberately omitted her counsel***, on July 17, 2020, again prejudicing her rights and falsely asserting that Bennett had not resigned until July 14:

> Dear Ms. Bennett,
>
> As I indicated in the email on July 14, 2020, based upon your absence at another Loudermill proceeding and the communication that we've had as well as correspondence that the District received from your attorney, it was clear that you wished to resign from the North Penn School District. Therefore, your resignation, effective July 14, 2020, was submitted to the Board for consideration and accepted at the July 16, 2020 board meeting.

<u>See</u> Exhibit 13. This letter also claimed that Bennett had worked up until July 14 and would be paid for those days, when Bennett had actually only worked up to July 8, 2020.

123.    In other words, Defendants falsified official documents and misrepresented her resignation date as July 14, 2020, even after receiving a detailed and unambiguous letter on July 13 from an attorney explaining that Bennett was no longer employed as of July 9, 2020.

124.    Defendants refused to deal with Bennett's counsel which violated her rights and was done with the intent and purpose to prejudice her rights.

125.    Defendants knew that their conduct was wholly deficient and that they had not provided Bennett with even minimal due process prior her to forced resignation on July 9, 2020.

126.    Thus, instead of recognizing that she had retained counsel, the Defendants proceeded to hold fake <u>Loudermill</u> hearings on July 13 and 14 (despite never having even told her what the charges were) ***after she had already been forced to resign***. Defendants then falsely listed the resignation date at July 14, 2020, to make it seem like they had given her hearings and she refused to attend.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Defendants' Attack on Bennett's Free Speech Rights is An Attack on All Administrators, Teachers, Employees, Students, and Parents**

127.    Note that the harm here goes far beyond Mrs. Bennett. North Penn has chilled the free speech rights of every employee, student, and parent. Everyone is now on notice that if anyone expresses a thought or opinion out of sync with North Penn's leadership, the offender will be publicly vivisected and exiled.

128.    The District itself is not the only liable party. All those who participated, enabled, acquiesced, and supervised the attack on Ashley Bennett are personally/individually liable because they violated Bennett's clear, unambiguous, and long-established Constitutional rights.

129.    Bennett's right to free speech and political affiliation in non-school settings is as fundamental a right as can be found in United States jurisprudence, so much so that it is even enshrined in multiple Board Policies for the defendant school district.

130.    Bennett has also tried to mitigate her damages by applying and interviewing with multiple school districts. She was necessarily forced to disclose what had happened at her last job at North Penn.

131.    Despite being more than qualified for these positions, and interviewing well, Bennett did not receive any invitations to a second round of interviews for three of the positions. For another position she did not even receive a first round interview.

132.    She is continuing to apply to jobs, trying to salvage what is left of a 27-year career that Defendants destroyed.

133.    It is clear as day that the stigma surrounding her from North Penn's actions have severely hindered her job search, especially in the current political climate. She is now unemployable in her chosen profession because of Defendants' actions and omissions.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

134.   As a result of the outrageous conduct of the Defendants, Ashley Bennett has suffered the following harms:

    a.   Loss of wages

    b.   Loss of career

    c.   Loss of reputation

    d.   Loss of free speech rights

    e.   Loss of due process, and

    f.   Severe mental and emotional damages

*****

# PARTIES

135.   Plaintiff, Ashley Bennett, ("Bennett"), is an adult individual residing in Pottstown, PA. She was the Supervisor of Special Education for North Penn School District since August 2013, and has had a 27-year career. She is a certified administrator who has the equivalent of tenure and can only be fired for cause.

136.   Defendant North Penn School District, ("North Penn" or "District") is public school district in Lansdale, Pennsylvania, which employed Ashley Bennett as a certified administrator, specifically the Supervisor for Special Education, from August 2013 to July 9, 2020.

137.   Defendant North Penn School District School Board of Directors, ("Board") is the governing body of the North Penn School District in Lansdale, Pennsylvania.

138.   Defendant J. Mia Kim is the Director of Human Resources for North Penn School District, and is a resident of Pennsylvania. Defendant Kim directly participated, supervised, and

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

139.    Defendant Michael Sean Arney is the interim Director of Special Education for North Penn School District, and is a resident of Pennsylvania. Defendant Arney directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

140.    Defendant Curtis R. Dietrich is Superintendent for the North Penn School District, and is a resident of Pennsylvania. Defendant Dietrich directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

141.    Defendant Christine Liberaski Kroznuski (identifies herself as Liberaski) is the Director of School and Community Engagement (the district spokeswoman). Defendant Liberaski directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

142.    Defendant Martina Stoll is President of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Stoll directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

143.   Defendant Christian D. Fusco is vice president of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Fusco directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

144.   Defendant Elisha K. Gee is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Gee directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

145.   Defendant Jonathan M. Kassa is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Kassa directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

146.   Defendant Dr. Wanda Lewis-Campbell is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Lewis-Campbell directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

147.   Defendant Timothy MacBain is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant MacBain directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments,

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

148.    Defendant Juliane D. Ramić is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Ramić directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

149.    Defendant Alfred R. Roesch, III is a member of the North Penn School District Board of Directors, and is a resident the Pennsylvania. Defendant Roesch directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in his official and individual capacities.

150.    Defendant Catherine A. Wesley is a member of the North Penn School District Board of Directors, and is a resident of the Pennsylvania. Defendant Wesley directly participated, supervised, and acquiesced in Bennett's discipline, investigation, media comments, communications with Bennett, and the termination of Bennett's employment. Defendant is being sued in her official and individual capacities.

151.    When Plaintiff refers to "defendants" or North Penn or the District she is referring to all defendants jointly, unless otherwise specified.

152.    All individual defendants, including the defendant board members, were aware of Bennett's discipline on June 25, 2020, and were also aware of the public disclosure of Bennett's discipline and public comments by the District about Bennett. All individual defendants were also aware of the "investigation" being conducted into Bennett, and had the ability to access the

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

meeting notes. The individual defendants were further also aware of Bennett's involuntary resignation because they were emailed by Bennett, and were then also aware of the subsequent actions taken by District officials leading up to the Board Meeting on July 16, 2020. Despite the entirety of the targeting of Plaintiff being utterly lawless, and in violation of many state laws, the individuals defendants participated, supervised, approved, and acquiesced to the illegal attacks on Ashley Bennett.

153.   All individual defendants' conduct was of the sort that when considered separately, and in conjunction, was the type that imposes liability on North Penn School District.

154.   An individual defendants' "conduct implements official policy or practice or custom under several types of circumstances, imposing liability on the entities which employ them, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred." Hill v. Borough of Kutztown, 455 F. 3d 225, 245 (3d Cir. 2006); (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478-484, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir.2005); LaVerdure v. County of Montgomery, 324 F.3d 123, 125-126 (3d Cir.2003)).

155.   Here, the actions by Defendants were not that of a rogue employee, but were entirely sanctioned by the District, Board, and chief executive at all points, from the morning of June 25, 2020 to the Board's sham meeting on July 16, 2020. This included:

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

a.  Bennett being suspended and placed under investigation on June 25, 2020, without cause, by the Director of HR and interim Director of Special Education, at the direction of Dietrich, the District, the Board, and the Board Members;

b.  Defendant Dietrich (the superintendent and chief executive) and board members (illegally) disclosing to members of the public on June 25, 2020, that Bennett's continuing employment was being addressed through "legal and HR,"

c.  The drafting and posting of a formal press release by Defendants (including Christine Liberaski and Mia Kim) about Bennett on North Penn's official website (illegally) disclosing Bennett's discipline and attacking her, which remained on the website for two weeks;

d.  Defendants illegally providing comments to multiple news organizations, through an official North Penn spokesperson and officials (including defendants Liberaski and Kim) disclosing her discipline and attacking her;

e.  Defendants directing defendants Kim and Arney to conduct three coercive interrogation sessions where they questioned her on the propriety of her political opinions and threatened her to resign or be terminated and humiliated; and,

f.  the actions taken by Defendants after Bennett's July 9, 2020 involuntary resignation to attempt to prejudice her legal rights, misdate and mischaracterize the nature of the employment termination on official records, and

g.  the Board and executive committee's sham "approval" of Bennett's resignation on July 16, 2020.

156.    From June 25, 2020 to July 9, 2020—and beyond—the District, Board and the individual defendants denied plaintiff due process, never even identifying the charges against her or the evidence to support the charge.

157.    Not only were all these actions and omissions done at the direction of the District and Board's final policy makers, but all actions and omissions that are the subject of this lawsuit were delegated by the District and Board to the District's employees.

158.    Restated, all actions by the Defendants in this lawsuit were "official" actions which impose liability on the entities, and were not the actions of individual employees acting

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

without official imprimatur. Furthermore, even if a district employee did not have "official" authority at the time of an action or omission, the District and Board ratified that conduct by continuing and participating in the persecution of Ashley Bennett.

159.    The actions and omissions of the conduct were intentional, malicious, reckless, and/or negligent and demonstrated willful indifference and callous disregard for Mrs. Bennett's rights.

*****

# Jurisdiction and Venue

160.    Jurisdiction over the parties in the Courts of the Commonwealth of Pennsylvania is proper pursuant to the provisions of 42 Pa. C.S. § 5301 *et seq.* Specifically, jurisdiction as to the Defendants is proper pursuant to 42 Pa. C.S. § 5301 (a)(3)(iii) by reason of "carrying on of a continuous and systematic part of its general business within this Commonwealth." Defendants transacted business in this Commonwealth and caused harm and compensable injury to Plaintiff and the assignors by acts or omissions committed in the Commonwealth of Pennsylvania that are the subject of the present complaint.

161.    Venue is proper in the Montgomery County Court of Common Pleas under Pennsylvania Rules of Civil Procedure 2130 and 1006 inasmuch as Defendants reside here, and regularly conduct business in Montgomery County, and inasmuch as the cause of action arose and/or a majority of the harm, occurrences, and transactions.

162.    All federal claims are brought pursuant to and under 42 U.S.C. § 1983.

*****

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# COUNT I – FIRST AMENDMENT FREE SPEECH RETALIATION FOR PRIVATE POLITICAL EXPRESSION

*Ashley Bennett*

*v.*

*All Defendants*

163.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint pursuant to Pa. RCP 1019(g).

164.    "'[A] State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.' *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred. *See Gorum v. Sessoms,* 561 F.3d 179, 184 (3d Cir.2009)." Dougherty v. Sch. Dist. of Phila., 772 F.3d 979, 986 (3d Cir. 2014). The courts also hold that there are an additional two elements: (4) the employee also has to show that any ordinary employee in Plaintiff's circumstances would be deterred from engaging in similar speech by the Defendants' retaliatory conduct, and (5) that Defendants acted under color of law. Id.

165.    Dougherty applies the Supreme Court's Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) and Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) tests, which address when a public employee's speech is protected and the considerations taken into account when dismissing an employee for speech-related reasons.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

166.    Here, the speech was made outside school, the content was unrelated to Plaintiff's employment, and the school has publicly admitted to disciplining the employee based solely on her political viewpoints.

**First Element - Whether the Speech is Protected**

167.    The first element to be satisfied is whether the employee's speech is protected by the First Amendment.

168.    "As the Supreme Court has reiterated time and time again, 'free and unhindered debate on matters of public importance' is 'the core value of the Free Speech Clause of the First Amendment.' *Pickering*, 391 U.S. at 573, 88 S.Ct. 1731. Accordingly, 'public employees do not surrender all their First Amendment rights by reason of their employment.' *Garcetti,* 547 U.S. at 417, 126 S.Ct. 1951. At the same time, the Supreme Court also aptly recognizes the government's countervailing interest—as an employer—in maintaining control over their employees' words and actions for the proper performance of the workplace. *See id.* at 418-19, 126 S.Ct. 1951. Thus, '[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively.' *Id.* at 419, 126 S.Ct. 1951." Dougherty, 772 F.3d at 993-94.

169.    Under Garcetti there is a three-step inquiry to determine if speech is protected by the First Amendment: (1) the employee must speak as a citizen not an employee, (2) the speech must involve a matter of public concern, and (3) the government must lack an 'adequate justification' for treating the employee different than the general public based on its needs as an employer under Pickering. See Dougherty, 772 F.3d at 987. Under Pickering the courts "'balance... the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

services it performs through its employees.' 391 U.S. at 568, 88 S.Ct. 1731. The more tightly the First Amendment embraces the employee's speech, the more vigorous a showing of disruption must be made by the employer. *McGreevy,* 413 F.3d at 365." <u>Dougherty</u>, 772 F.3d at 991.

170.    There is no question under <u>Garcetti</u> and <u>Pickering</u> that Bennett's speech is protected.

171.    **First,** the Facebook reposts in question by Ashley Bennett were in her capacity as a private citizen and were unconnected to her employment. They were not made in the course of her official duties and had nothing to do with her job. The North Penn School District's own policies specifically ensure that employees such as Plaintiff have the right to speak freely on political issues in non-school settings and to affiliate politically as they wish. <u>See</u> Board Policies 320 and 321.

172.    **Second,** the speech in question was in fact on matters of public concern—hotly contested political issues—unrelated to her job. Bennett's political speech on non-school issues in a non-school setting is afforded the broadest protection, as if she was a private citizen.

173.    **Third,** the governmental Defendants have the heaviest burden—a burden they cannot meet—showing that Bennett's speech could cause disruption. The <u>Pickering</u> test arose to address where the speech in question has some relation to the employee's job which could cause disruption in the workplace.

174.    Here, the speech in question has no connection to Bennett's employment at all, and thus no work-related disruption is conceivable. The employer is not permitted to characterize political speech unrelated to school as controversial and then claim that it would be disruptive. Controversial political speech is exactly the type of speech meant to be protected by the First Amendment, and allowing Defendants to claim that it can terminate employees for

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

controversial speech would give carte blanche to the Heckler's Veto and render the First Amendment a dead letter.

175.    Thus, Bennett's speech is squarely protected by the First Amendment.

**Second and Third Elements - Defendants Retaliated against Plaintiff Because of Her Protected Speech**

176.    The second element is that Bennett must show that her protected speech was a substantial motivating factor in retaliatory actions taken against her by Defendants, and that there was not some other legitimate reason for her termination.  In other words, she needs to show causation. Mirabella v. Villard, 853 F. 3d 641, 651-52 (3d Cir. 2017).

177.    In a retaliation claim, the courts ask "whether the Government is punishing the plaintiffs for exercising their rights." Id. (quoting Miller v. Mitchell, 598 F.3d 139, 148 n.9 (3d Cir. 2010)).

178.    Where the retaliation includes "official speech" by the Defendants the Courts ask whether there was "a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow." Id.

179.    Here, there is no question that the governmental employer punished Bennett for exercising free speech rights on political issues they disagreed with, and that Defendants' speech included overt threats, coercion, and intimidation, as well as intimation of punishment and sanction. This is not a close case.

180.    Bennett was expressly told by Defendants that all the adverse actions by Defendants against her were because of her political Facebook posts, which are protected speech. For that matter, the Defendants also informed the entire world of this fact with a press release and multiple comments to news organizations.

2020-13927-0001 Complaint In, Page 47

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

181. Overall, Bennett was disciplined and then constructively discharged from her job as punishment for privately expressing political views Defendants did not like.

182. There are many specific examples of retaliatory actions leading up to her constructive discharge which are independently and jointly actionable:

   a. Defendants Kim and Arney suspending Bennett without notice or cause on the morning of June 25, 2020, because of the Facebook post.

   b. Defendants Kim and Arney calling Bennett a racist while suspending her on June 25, 2020, because of the Facebook post.

   c. Defendants Kim and Arney placing Bennett under investigation on June 25, 2020, without cause for the Facebook post.

   d. Defendant Kim falsely assuring Bennett repeatedly on June 25, 2020 that all aspects of this matter would be kept confidential and not disclosed.

   e. Defendant Superintendent Dietrich and multiple defendant board members illegally telling activist Corina Fiore on June 25, 2020, who was agitating for Bennett to be fired because of the Facebook post, that Bennett's continuing employment was being addressed through "legal and HR."

   f. Defendants providing illegal comments for a North Penn Now article published at 9:09 am on June 26, 2020, stating that Bennett had been suspended and placed under investigation because of the Facebook post for "directly contradicting" the District's values, despite repeated assurances from defendant Kim that the matter would be kept confidential. See Keith Heffintrayer, "North Penn Employee Placed On Administrative Leave Following Comments Opposing Black Lives Matter," NORTH PENN NOW (June 26, 2020, at 9:09 am), https://northpennnow.com/north-penn-employee-placed-on-administrative-leave-following-comments-oppos-p2930-117.htm

   g. Defendants illegally posting a similar press release on North Penn's website on the morning of June 26, 2020, disclosing her suspension and investigation, and stating that she was being disciplined because her Facebook post "contradicted" the District's values.

   h. Defendants illegally disclosing Bennett's discipline to The Reporter for a June 29, 2020 article, which heavily quoted the press release, and contained additional comments from Defendants. See Dan Sokil, "North Penn School District administrator placed on leave after Facebook post," THE REPORTER (June 29, 2020), https://www.thereporteronline.com/news/north-penn-school-district-

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

administrator-placed-on-leave-after-facebook-post/article_4f1ba7d2-ba15-11ea-812c-17d14bdc3925.html.

i. Defendants overall course of conduct in deliberately and illegally publicizing their discipline of Bennett for the purpose of damaging her reputation, stigmatizing her in the community, legitimizing her political opponents' attacks on her, causing her humiliation, ruining her career, and creating an environment where it would be impossible for Bennett to return to work at North Penn.

j. After disclosing and publicizing this discipline, and after falsely telling Bennett it would be kept confidential, Defendants then continued to insist that Bennett was bound by confidentiality and could not publicly defend herself.

k. Conducting three interrogation sessions of Bennett about her private Facebook postings on 6/29/2020, 6/30/2020, and 7/1/2020, where her private political viewpoints were attacked and dissected by governmental agents, defendants Mia Kim and Sean Arney, as part of an effort to coerce her to resign.

l. Defendants Kim and Arney bringing up a past private political Facebook post by Bennett and claiming this also showed she was a racist.

m. Defendant Kim both threatening Bennett with termination during the "investigation" if Bennett did not immediately resign, and threatening that any attempt to defend herself would be used to ruin her both professionally and personally, including the following comments:

  i. "If I were your sister, I would tell you to look for another job."

  ii. If you contest your termination and do not resign "this is going to get ugly, have you thought about the consequences about future employment?"

  iii. It would be impossible to "come back" from this professionally and personally if she defended herself in front of the Board.

  iv. To consider "Who the board is" and how it would "ruin your future" if Bennett defended herself and did not resign.

  v. Telling her that attempting to go through a Loudermill hearing would not turn out well for her and that she would be terminated.

n. Defendants falsely telling Bennett that she could be disciplined and terminated for a private Facebook post, when in fact this was not true.

o. Defendants Kim and Arney telling Bennett that she would not be given a "second chance" and that she had to resign or that she would be terminated.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

p. Defendants Kim and Arney coercing Bennett to resign by telling her that if she resigned she may get another job, but if they terminated her "no one will look at your resume."

q. Defendants engaging in a lengthy investigation without cause, with the goal of forcing and coercing Bennett to resign, and delaying holding a <u>Loudermill</u> hearing while seeking to accomplish this goal (although there was no basis for either the investigation or the hearing).

r. Defendants never identifying what charge, policy violation, or other legal violation she was being disciplined, investigated, and threatened with termination for.

s. Defendants never mentioning or providing Bennett with Board Policy *Freedom of Speech in Nonschool Settings* and Board Policy 321 *Political Activities*.

t. Defendants demanding that Bennett resign and sign an extortionary release of liability (including for constitutional violations) in lieu of termination which conditioned the removal of the District's illegal press statement about Bennett on the signing of the release.

u. Defendants' constructive discharge of Bennett on July 9, 2020, where she was forced and coerced to resign under threat of immediate termination and further reprisal.

v. Defendants' refusal to recognize Bennett's resignation, and scheduling of fake <u>Loudermill</u> hearings after her employment ended, to attempt to make it appear they had afforded her due process.

w. Defendants' repeated attempts to prejudice Bennett's rights by legally advising her, even though she now had counsel at this point, that she had to tell the district she "voluntarily resigned."

x. Defendants' refusal to acknowledge or communicate with Bennett's attorney, and instead repeated attempts to contact Bennett alone to try to give her highly prejudicial legal advice.

y. Defendants' falsification of Bennett's resignation date on official public records, listed as July 14 instead of July 9, to make it falsely appear to the public and courts that the District accepted a voluntary resignation from Bennett after she had been provided with <u>Loudermill</u> hearings.

z. The District and Board Defendants' acceptance of a false and misdated July 14, 2020 resignation of Bennett (which never happened) to make it falsely appear to the public and courts that the District accepted a voluntary resignation from Bennett.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

183.   All the retaliatory actions were intended as punishment, and were taken by the Defendants because they desired to punish Bennett for expressing viewpoints they disagreed with.

184.   Note that a baseless suspension with pay for a retaliatory reason is itself actionable on its own and by itself.  See Smith v. Borough of Dunmore, 633 F. 3d 176, 180 (3d Cir. 2011).

185.   Smith illustrates the egregious nature of Defendants' actions. Smith held that a suspension without notice or a hearing is an extreme measure only appropriate in cases where public safety is directly implicated—a reason which is not even remotely applicable in this case. Id.

186.   Defendants' vicious retaliatory conduct for Bennett's Facebook post also violated multiple state criminal laws and Board Policies, including laws requiring that the District keep disciplinary matters confidential and prohibiting tampering with public records.

187.   Note that the illegal press release posted by Defendants was deleted on or around July 7 to July 9, 2020. This evidences consciousness of guilt, both about the improper retaliation against Bennett and the criminal liability for disclosing the discipline against Bennett, establishing that the retaliation was in fact because of her protected speech.

188.   The third element of a First Amendment retaliation claim states that when Bennett has shown political retaliation played a part in her termination, then the burden is on the Defendants to show that there was some other legitimate reason for their actions.

189.   The evidence and Defendants' own admissions overwhelmingly prove that Defendants' actions were solely retaliation for Bennett's private Facebook post, and that they cannot meet any such burden.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Fourth and Fifth Element - That an Ordinary Employee would Be Deterred from Engaging in Protected Speech and that Defendants Acted Under Color of Law**

190.     The fourth element is that an ordinary employee would be deterred by the retaliatory actions of the employer, and the fifth is that the Defendants acted under color of law.

191.     Here, there is no question, given the extraordinary public assault on Plaintiff that took place, that an ordinary employee in Bennett's position will be deterred from privately posting about Facebook on politics. In a matter of a few hours, her life was destroyed. The District then threatened to terminate her and destroy her career if she fought back. The message was loud and clear, not only to Bennett but to all residents, teachers, and administrators of North Penn.

192.     Defendants at all points acted under color of law and held themselves out as having the authority and right to take the retaliatory actions against Bennett.

**Bennett's Involuntary Resignation was a Constructive Discharge**

193.     Plaintiff alleges that she was constructively discharged on July 9, 2020. She was forced and coerced to resign, after enduring weeks of vicious retaliation for private political expression she posted on Facebook that the Defendants politically opposed.

194.     A resignation is considered a constructive discharge if it was "involuntarily procured" "by coercion or duress," or by misrepresentations of material fact. See Judge v. Shikellamy School District, 905 F. 3d 122 (3d Cir. 2018); Schultz v. U.S. Navy, 810 F.2d 1133, 1136 (Fed. Cir. 1987). Also relevant is whether a reasonable person "would have felt compelled to resign." Id.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

195.    "An example of an involuntary resignation based on coercion is a resignation that is induced by a threat to take disciplinary action that the agency knows could not be substantiated." Staats v. US Postal Service, 99 F.3d 1120 (Fed. Cir. 1996).

196.    The Third Circuit holds that where there is no cause for the threatened termination "the choice between resignation and the initiation of termination proceedings was 'purely coercive.'" Judge, 905 F.3d at 123 (quoting Schultz, supra).

197.    Here, Defendants' actions against Bennett go far beyond even the "purely coercive" conduct referenced in Judge and Schultz. Not only could the reason for discharge not be substantiated, but no disciplinary charge warranting dismissal (or any other punishment) was ever even identified. This was a malicious prosecution in every sense.

198.    The reason given for the threatened termination was purely illegal unconstitutional retaliation for protected private speech.

199.    She was suspended without warning and interrogated about her beliefs for several days, without cause, as part of a plan to force her out of North Penn for private political expression the District disagreed with.

200.    She was told that she was not welcome at North Penn and that she would not be given a "second chance." Bennett was specifically told by Defendants that any attempt to defend herself against termination would be used against her and would ruin her career and personal life.

201.    This followed the District criminally attacking her in public and disclosing the discipline against her. This illegal public disclosure was designed to coerce Bennett's resignation. The disclosure legitimized the social media mob attacking her based on political differences,

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

endorsed the baseless attempt to have her fired, and vilified her in the eyes of the community, parents, students, and her co-workers.[2]

202.    This is the "due process" that Ashley Bennett was afforded by Defendants: a public charade designed to destroy her life because her governmental employer disagreed with her out of school political expression.

203.    As noted throughout this Complaint, the retaliation against Bennett was a malicious prosecution without any cause and was blatantly illegal "regardless of the fairness of the procedures used." See Daniels v. Williams, 474 US 327, 331 (1986).

204.    A reasonable person facing this concerted and illegal effort to coerce a resignation would feel compelled to resign. Returning to Bennett's position as a pariah is unthinkable after being humiliated, attacked, and stigmatized by Defendants—which was all done to make sure that she did in fact feel compelled to resign.

205.    Furthermore, Defendants made material misrepresentations to obtain her resignation. They told her that they could terminate her and her ruin life if she did not resign. In fact, they had no legal basis to do so.

206.    As a result of the Defendants' utterly baseless campaign to force and coerce her to resign in lieu of immediate termination (and further public retaliation), Bennett was in fact forced to involuntarily resign.

207.    The choice Bennett was given—resign or be terminated and have her career ruined—was purely coercive. There was not a shred of cause or ability for the District to terminate Bennett. Despite this, Bennett was told on many occasions that she had to resign

---

[2] Hargray v. City of Hallandale, 830 F. Supp. 1467, fn 12 (SD Fla. 1993) (citing Schulz, supra) ("(a resignation is not voluntary where an agency imposes the terms of an employee's resignation, the employee's circumstances permit

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

immediately or face immediate termination. This was done to publicly mark Bennett with a Scarlet Letter, make her a pariah, and force her to resign. A reasonable person would have felt overwhelmingly forced and coerced to resign in Bennett's place.

**The Individual Defendants are Not Entitled to Qualified Immunity**

208.    When governmental officials are sued in their individual capacities under § 1983, they can only claim qualified immunity if the Constitutional rights at issue were not clearly established.

209.    Here, the right at issue is Plaintiff's right to freedom of speech in non-school settings on issues not related to the school district.

210.    Courts generally look to the Supreme Court and Courts of Appeal as to whether a right is clearly established; however, other authority may be cited as well.

211.    Here, the right of public employees to speak freely about political issues in non-school settings on matters of public concern is near absolute, and even codified in Board Policy 320 *Freedom of Speech in Nonschool Settings* ("The Board acknowledges the right of administrative, professional and support employees as citizens in a democratic society to speak out on issues of public concern."). The only restrictions on non-school speech are to require educators to: (1) refrain from comments that would interfere with student discipline, (2) refrain from public comments about the district known to be false, and (3) to refrain from threats against District employees. None of these restrictions in the policy remotely apply to this case.

212.    Indeed, the right to free speech in the First Amendment which protects Ashley Bennett's Facebook posts is basic Civics 101.

---

no alternative but to accept, and those circumstances were the result of improper acts of the agency").

2020-13927-0001 Complaint In, Page 55

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

213.    The case law is likewise clear that public employees have a right to speak out on issues of public concern, as explained by the Third Circuit in Dougherty v. Sch. Dist. of Phila., 772 F.3d 979, 993-94 (3d Cir. 2014):

a.    "Since at least 1967, "it has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick, 461 U.S. at 142, 103 S.Ct. 1684 ; see also Rankin, 483 U.S. at 383, 107 S.Ct. 2891 (finding the same principle "clearly established"). In the case at bar, Dougherty's particular type of speech—made as a concerned citizen, purporting to expose the malfeasance of a government official with whom he has no close working relationship—is exactly the type of speech deserving protection under the Pickering and Garcetti rules of decision and our subsequent case law. See, e.g., Pickering, 391 U.S. at 566, 88 S.Ct. 1731 (protecting speech by teacher to local newspaper criticizing the school board and the superintendent's allocation of school funds); O'Donnell, 875 F.2d at 1060, 1061–63 (protecting speech by chief of police to local television station that accused township supervisors of various corrupt practices, legal improprieties, and abuses of their positions); Watters, 55 F.3d at 897–98 (protecting speech by program manager to local newspaper criticizing departmental program the employee oversaw where dispute existed over cause of disruption); Baldassare, 250 F.3d at 199–200 (protecting investigation into alleged wrongdoing of law enforcement officers where there was no "alter ego" relationship). Thus, Appellants had fair notice that their

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

retaliation against Dougherty's constitutionally protected speech would not be shielded by qualified immunity."

214.    This case is far more clear-cut than even those cases cited by <u>Dougherty</u>. The cases cited by <u>Dougherty</u> all involved speech that at least related in some way to the governmental employer's operations.

215.    Here, the speech in dispute was private political expression on Bennett's private Facebook account completely unrelated to her employment, and in fact was a repost of someone else's comments about Black Lives Matter, COVID, and other political issues. It also contained a mention of President Donald Trump.

216.    All individual Defendants knew and should have known that Bennett's speech was protected, as evidenced by even their own Board Policies. They therefore have no qualified immunity.

217.    Mrs. Ashley Bennett has applied to several other positions and interviewed, but has been rejected despite being highly qualified. She has been unable to mitigate her damages.

218.    As a result of the First Amendment retaliation against Bennett, she has suffered grievous harm, including to her career, economically, mentally, emotionally, and reputationally.

219.    Due to the outrageous actions and omissions of Defendants, their evil motives, their wanton and intentional conduct, and their reckless indifference to her rights, she demands punitive damages from all Defendants.

****

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT II – FIRST AMENDMENT RETALIATION FOR POLITICAL AFFILIATION

*Ashley Bennett*

*v.*

*All Defendants*

220. Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint pursuant to Pa. RCP 1019(g).

221. To make out a claim of discrimination based on political association, a public employee must allege (1) that the employee works for a public employer in a position that does not require a political affiliation, (2) that the employee maintained a political affiliation, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision. Goodman v. Pennsylvania Turnpike Com'n, 293 F.3d 655, 663-664 (3d Cir. 2002). Plaintiff must also show that an ordinary employee in her circumstances would be deterred from holding and expressing her political affiliations, and that Defendants acted under color of law.

222. Here, Bennett's position as Supervisor of Special Education for the defendant District does not require a political affiliation.

223. Bennett's private Facebook contained and expressed statements of political affiliation, including a favorable mention of President Donald J. Trump's 2020 reelection campaign.

224. As described throughout this complaint, Defendants took adverse action against Bennett based on the content of the post, and also because of the express and implied political affiliations the post conveyed.

225. Proof of this comes from several sources:

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

a.  **Defendants' 6/26/2020 Press Release** - The illegal release first makes it clear that it is taking official action against Bennett because her Facebook post expressed opinions on a political movement, Black Lives Matter, which Defendants thought opposed the movement. Further, the press release specifically stated that Defendants had "overwhelming support" for Black Lives Matter, and that the school district "stands 100%" behind those values. These statements demonstrate that the Defendants are acting against Bennett (and others like her) based on their perception that she is opposed to and does not affiliate with Defendants' favored political movement.

b.  **Defendants' Media Comments** - The media comments made by North Penn about Bennett expressed the same sentiments as the press release.

c.  **Defendants' Various Website Postings** - Defendants have made various postings supporting Black Lives Matter on 5/30 and 6/1, and posted official statements from administrators Jenna Rufo and D'Ana Waters on "cultural proficiency." As Defendants' actions and statements against Bennett show, Defendants are punishing Bennett because they perceive her as opposing Black Lives Matter and affiliating politically with those who they also perceive as opposing such sentiments.

d.  **Proposed and Approved Board Policies** - As Bennett was being disciplined, the Board considered and approved a resolution on "the development of an anti-racist school climate" and also a new "Equity Statement." As with the Website Postings, Defendants actions against Bennett show that Defendants are punishing an employee perceived to affiliate with those who oppose the

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

sentiments expressed in these policies. The policy language is also overbroad, vague, and unconstitutional, especially if it is being twisted to discipline employees.

e. **Defendant Mia Kim's Comments about the Board** - Kim told Bennett that she had to consider "who the Board is" and what the board will do to her if she contests her termination, instead of resigning. This comment was unmistakably meant to convey that all the Board Members are liberal Democrats who would undoubtedly punish Bennett for her allegedly non liberal opinions if she were to not resign.

f. **Defendants' Statements During the "Investigation"** - The statements by Defendants in the so-called "investigation" unambiguously perceived Bennett as being opposed to political movements like Black Lives Matter. Bennett was interrogated at length about Black Lives Matter, Donald Trump, and repeatedly pushed by Defendants to admit that her Facebook post was "wrong."

226.    In general, it has to be taken into account that the North Penn School District personnel and culture are overwhelmingly liberal and democratic. The Defendant board members are uniformly Democrats.

227.    The tenor of the public debate is now that any person perceived as having unacceptable opinions can and should be canceled for being offensive, as Mia Kim made unequivocally clear to Bennett in her interrogation sessions.

228.    As a direct and proximate result of Bennett's perceived political associations and perceived opposition to Defendants' favored political associations, she was disciplined,

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

suspended, investigated, threatened, coerced into involuntarily resigning, and was constructively discharged by Defendants.

229.    Note that as with the free speech retaliation claim, the rights at issue are longstanding and indisputable. The right to engage in Political Activities and associate and identify as one likes in nonschool settings is expressly recognized and codified in Board Policy. See Board Policies 320 and 321 ("The Board recognizes and encourages the right of administrative, professional and support employees, as citizens, to engage in political activity."). As a result, no defendant being sued on an individual basis can invoke qualified immunity.

230.    As noted above, Plaintiff has attempted to mitigate her damages by applying for jobs but has been rejected.

231.    As a result of the First Amendment retaliation against Bennett, she has suffered grievous harm, including to her career, economically, mentally, emotionally, and reputationally.

232.    Due to the outrageous actions and omissions of Defendants, their evil motives, their wanton and intentional conduct, and their reckless indifference to her rights, she demands punitive damages from all Defendants.

*****

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# COUNT III - PROCEDURAL DUE PROCESS VIOLATIONS

*Ashley Bennett*

*v.*

*All Defendants*

233.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint pursuant to Pa. RCP 1019(g).

234.    A plaintiff must allege that (1) she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to her did not provide "due process of law." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.2000). An essential principle of due process is that a "deprivation of life, liberty, or property `be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57, 94 L.Ed. 865 (1950)). Due process fundamentally requires that the individual be given an opportunity for a hearing before she is deprived of her property interest. Id. Where a discharged public employee is given notice of the charges, an adequate explanation of the evidence, and an adequate opportunity to present his side of the story, his due process rights are not violated. McDaniels v. Flick, 59 F.3d 446 (3d Cir.1995), *cert. denied*, ___ U.S. ___, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996).

235.    Bennett alleges due process violations of three distinct types:

   a.   A property based due process claim, because she was suspended, investigated, publicly attacked, and constructively discharged without notice depriving her of her right to continue in her employment

   b.   A stigma plus liberty due process claim

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

c.   A reputation plus liberty due process claim

236.   Note that certain government actions are barred regardless of the fairness of the procedures used to implement them, which serves to prevent governmental power from being "used for purposes of oppression," See Daniels v. Williams, 474 US 327, 331 (1986).

237.   Plaintiff wants to be absolutely clear that Defendants had no basis upon which to take any adverse action against her, and that even if she had been given the fairest of process it could not legitimatize what Defendants have done.

238.   However, the conduct of Defendants during this so called process was so deficient that it must be subject to court review as a matter of public record.

**a.   Due Process Claim for Property Interest in Continued Employment**

239.   Ashley Bennett has a clear and indisputable property interest in her continuing employment.

240.   "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir.2005) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Whether a person has a legitimate entitlement to — and hence a property interest in — his government job is a question answered by state law. Id.

241.   Here, under Pennsylvania law, Ashley Bennett was a longtime certified administrator who could only have adverse action taken against for cause. In other words, she has the equivalent of tenure. She therefore has a property interest in continuing employment and not being disciplined without cause.

242.   The following actions were taken by the district without notice or an opportunity

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

to be heard, in violation of the due process protections under the Fourteenth Amendment.

a. Bennett's indefinite suspension with pay on June 25 because of her Facebook post

    i. Bennett was suspended by Defendants without notice or the opportunity to be heard. <u>Smith v. Borough of Dunmore</u>, 633 F. 3d (3d Cir. 2011) (stating that where employee can only be dismissed for cause, the plaintiff has a property interest in not being suspended without cause). Only a strong government interest can justify the pre-hearing deprivation of a property right, usually related to public safety concerns, <u>id.</u>, which are not implicated by this case.

b. Bennett being placed under investigation without cause

    i. Bennett was suspended without cause and placed under investigation. This investigation had no legitimate purpose or predicate, and was conducted to interrogate Bennett about her thoughts, and coerce and threaten her to resign. The "investigation" violated due process.

c. Defendants publicly attacked Bennett and disclosed her discipline, without cause and in violation of state law

    i. Bennett had a right to be free of Defendants publicly condemning her and disclosing her discipline, without cause, especially when there had been no notice or hearing. The District specifically assured her, multiple times on June 25, that everything would be kept confidential, which state law requires. Confidentiality is required so that employees are not prejudiced and shamed without due process.

    ii. The promises were fraudulent. The District posted a press release on its website condemning her and stating that she is opposed to diversity. The district told multiple news organizations the same comments. The district's press release also disclosed her suspension and investigation, which directly violates state law. This breach of confidentiality was a third degree misdemeanor. The disclosure also falsely implied to the public that Bennett had something so egregiously racist that it required her immediate suspension, an investigation, and likely termination.

    iii. The posting of the press release was a deliberate attempt to punish Bennett for expressing First Amendment protected speech. It was also a deliberate attempt to coerce and force Bennett to resign, by marking her as a pariah. The press release effectively prevented Bennett from receiving any due process and being able to effectively defend herself. Moreover, the District insisted Bennett thereafter keep everything confidential, applying one standard to itself and another for Bennett, and further resulting in deficient process.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

    iv.  The deletion of the press release around the time Bennett was forced to resign is proof of consciousness of guilt.

  d.  The delay in providing Bennett notice and a hearing

    i.  At no point was Bennett told what the charge was against her, or what policy she had violated, or what evidence supported such charges. Instead, Bennett was told that she had to resign, or face termination and additional public ruination starting with a Loudermill hearing. This delay and the reasons for the delay violated her due process rights. The delay is exacerbated by the fact that the disciplinary process had no legal basis whatsoever, and that the investigation was baseless and a delay tactic to attempt to force her to resign.

  e.  Bennett was constructively discharged without notice or a hearing

    i.  Bennett was publicly and privately attacked by Defendants from June 25 to July 9, made into a pariah, and told in no uncertain terms that she would not get a second chance. She was told that her only choice was resign or further publicly vivisected and attacked. Because there was no cause to terminate or discipline Bennett, this conduct was "purely coercive." Bennett therefore involuntarily resigned on July 9, 2020, and was constructively discharged. From June 25 to July 9 she was never given notice of the charges against her, and also never told what evidence could support those unidentified charges.

    ii.  The intent, goal, and purpose of Defendants conduct prior to July 9, 2020, was to force and coerce her into resigning without affording her due process.

**Defendants Engaged in Sham Due Process After Bennett was Constructively Discharged to Disguise How Bad Their Conduct Had Been**

243.    As noted, prior to Defendants' constructive discharge of Bennett she was given no notice of the charges against her and the evidence against her was not described. She was instead placed under investigation, publicly attacked, and coerced to resign. This blatantly violated Plaintiff's due process rights and was purely coercive; the District' actions before July 9, 2020, did not even pretend due process existed.

244.    Nothing about what Defendants did was in the regular course of business as required by the Districts policies, procedures, and practices.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

245.    If Defendants attempt to claim that they provided due process or attempted to provide due process to Bennett, such allegations are false and were part of a sham.

246.    Defendants refused to acknowledge Bennett's involuntary resignation on July 9, 2020. Following Bennett informing defendant Kim that her employment was over, Kim wrote Bennett a letter on July 9, 2020, pretending as if Bennett was still employed, and scheduling a purported Loudermill hearing for July 13, 2020. The letter was also apparently intended as a (defective) Loudermill notice.

247.    Defendants did this for two reasons: (1) At around the same time the press release was deleted from the internet, showing that someone at North Penn realized that their targeting of Bennett was a serious problem. This letter from Kim was part of an attempt to cover up what Defendants had done; (2) Bennett had not signed the release of liability that Defendants thought would resolve a bad situation for them.

248.    Even if Bennett's employment had not already been terminated, the Loudermill notice was extraordinarily deficient. A notice has to identify the charges or violations she is accused of, and generally describe the evidence.

249.    Yet, the so-called notice identifies no charges against her and only states she will get to hear the evidence against her at the hearing. This is backwards and demonstrates that the process was a sham and futile. See Alvin v. Suzuki, 227 F. 3d 107, 118 (3d Cir. 2000). The District failed to identify any charge against Bennett from June 25 to July 9, 2020, and the purported post-termination Loudermill notice also failed to do so.

250.    Defendants plainly wanted to devise new charges during the course of the alleged Loudermill proceeding. Bennett has no obligation to participate in a kangaroo court designed to illegally prejudice her rights.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

251.    Defendants can call this a Loudermill hearing all they want, but that does not make it so. This was a sham, designed to cover up and disguise what Defendants had done to Bennett.

252.    Even after Bennett, and later her attorney, repeatedly told the District that Bennett had been forced to resign, the district proceeded to hold two fake Loudermill hearings on July 13 and July 14, 2020, to make it seem as if they had afforded Bennett due process.

253.    Defendants further ignored direct instructions from Bennett's counsel to stop contacting her, and objections from Bennett's counsel which pointed out that the fake Loudermill hearings were a sham. Counsel pointed out that (1) Bennett had involuntarily resigned 4 days prior, and (2) that the Loudermill notice did not even identify the charges and evidence against Bennett.

254.    Despite this, Defendants persisted in contacting Plaintiff directly (and omitted her counsel). They provided false legal advice to her telling her that she could only "voluntarily resign" or be terminated. They stated that otherwise she had to attend a Loudermill hearing because she had not "voluntarily resigned."

255.    "Voluntarily resign" is, of course, a legal term which Defendants wanted Bennett to recite, so they could claim she had not been forced to resign and constructively discharged.

256.    This was an attempt by Defendants to advise and scare her into unwittingly give up her rights by characterizing her coerced resignation as "voluntary." This is reprehensible conduct which is intolerable in a civilized society.

257.    This sham process continued as Defendants sent Bennett yet another letter on July 14 (again omitting her counsel), claiming that Bennett had resigned effective July 14, 2020 (instead of the actual date July 9, 2020).

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

258.    The transparent reason Defendants want to use the July 14 date is to make it seem as if they held <u>Loudermill</u> hearings ***before*** Bennett was terminated, when nothing could be further from the truth.

259.    The Defendants then promulgated false Board documents identifying Bennett's resignation date as July 14, 2020, and had the defendant Board Members and executive committee approve her alleged July 14, 2020 resignation at a July 16, 2020 meeting. This was all done so the defendants could dishonestly claim that they tried to provide due process.

260.    Setting aside the utter absurdity and malice replete in Defendants' amateurish cover up, Defendants fail to recognize that even if they provided Bennett a full and fair process (they did not) that does not mean Defendants had the right to prosecute and punish her in the first place.

261.    Defendants' conduct shows they were uninterested in justifying initiating discipline against Bennett, only in trying to be able to claim that they complied with <u>Loudermill</u> in the belief this would immunize them.

262.    A <u>Loudermill</u> hearing does not have some sort of talismanic effect, where the invocation of its name grants Defendants safe harbor for their misconduct.

263.    Everything about Defendants' actions—starting with the fact that there was no basis to take any action against Plaintiff and ending with the tampering of public records—evidence a malicious intent and lack of due process.

**b.  Plaintiff has a Stigma-Plus Due Process Claim against Defendants**

264.    A "stigma plus" claim occurs when the government imposes "a stigma or other disability that foreclose[s] [the plaintiff's] freedom to take advantage of other employment opportunities." <u>O'Donnell</u>, 148 F.3d at 1140 (quoting <u>Roth</u>, 408 U.S. at 573). The theory is, in

Case # 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

essence, that some government action might impose such a harsh taint that it interferes with an individual's "right to follow a chosen trade or profession." Cafeteria Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895-96 (1961).

265.    This implicates Plaintiff's liberty interest, as opposed to her property interests.

266.    The government must impose so great a constraint on an individual's future employment opportunities that it "involve[s] a tangible change in status" — that is, it must amount to "an adjudication of status under law." Kartseva v. Department of State, 37 F.3d 1524, 1527 (D.C. Cir. 1994); O'Donnell, 148 F.3d at 1141 ("[A] plaintiff who . . . seeks to make out a claim of interference with the right to follow a chosen trade or profession that is based exclusively on reputational harm must show that the harm occurred in conjunction with, or flowed from, some tangible change in status."). The action must have a "broad effect of largely precluding [her] from pursuing her chosen career." Kartseva, 37 F.3d at 1528; see GE Co. v. Jackson, 610 F.3d 110, 121 (D.C. Cir. 2010).

267.    The stigma does not have to result from official speech, but can also result from the overall nature of the conduct by Defendants.

268.    Here, Plaintiff was suspended without notice or cause in violation of due process and placed under investigation for expression of political views which Defendants publicly stated "directly contradicted" the District's values. This was illegal First Amendment retaliation.

269.    In violation of state law requiring confidentiality and contrary to repeated assurances to Bennett that everything would be kept confidential, the District placed a press release disclosing the discipline on North Penn's website, harshly condemning Bennett's views, and stating Bennett was opposed to diversity. This was done to attack and punish Bennett. Defendants intended readers of the public comments to (falsely) believe that Bennett had done

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

something so egregiously racist that it warranted suspension, investigation, and likely termination from her job.

270.    The District also made similar comments to multiple news outlets. Although the press release was quietly deleted several weeks, it was quoted in the news articles and remains on the internet today. These articles appear prominently when search engines are searched for keywords such as "North Penn" or "Ashley Bennett North Penn."

271.    The District Superintendent and several board members also disclosed that Bennett's employment was being addressed through "legal & HR" to a woman agitating to have Bennett fired, who further publicized this matter on Facebook.

272.    As a result of the concerted and deliberate effort by Defendants to publicly and illegally condemn Bennett, and characterize her beliefs as beyond the pale in a civilized society worthy of formal discipline and termination, Defendants have severely harmed and stigmatized Bennett and made it largely impossible for her to pursue her chosen career.

273.    She has suffered severe damage as a result, including loss of employment and future employment.

c.   **Plaintiff has a Reputation-Plus Due Process Claim Against Defendants**

274.    As opposed to a stigma plus claim, a reputation plus claim requires that Plaintiff show that she was defamed and be accompanied by a discharge or demotion. This claim is only actionable when the employer has disseminated the reasons for the termination and the dissemination is defamatory.

275.    Here, Plaintiff was suspended, investigated, and then constructively terminated without cause or notice. Suspension with pay without notice and constructive termination are sufficient to constitute the "plus."

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

276.    Furthermore, the Defendants widely disseminated the reason for the suspension and discipline.

277.    The last remaining element requires that the dissemination be defamatory.

278.    The press release and media comments by the Defendants were in fact defamatory and placed Bennett is a false light. Defendants told the world that Ashley Bennett and her Facebook repost were directly contrary to the District's values, including diversity.

279.    The Defendants painted Bennett as an archetypal racist in their public statement, a provably false assertion.

280.    The Defendants further disclosed that Bennett had been suspended and was being investigated, insinuating and implying that Bennett had engaged in racist conduct so egregious as to constitute "cause" warranting disciplinary action. All of this is demonstrably false and placed Bennett, a private individual, in a false light.

281.    The Facebook post does not support these accusations.

**d.  Defendants Should Have Known that Its Allegations Against Bennett were False**

282.    What is more, Defendants knew or should have known its defamatory attacks on Bennett were false. In the months before this incident, from January to March 2020, ***Bennett had repeatedly voiced concern about the whether the hiring process at North Penn lived up to North Penn's alleged commitment to diversity***.

283.    In January 2020 an African-American gentleman interviewed for a supervisor position in special education, and scored higher than anyone else. To Bennett's surprise, he was instead passed over for a white male with no special education experience who had not applied for the job, did not interview for the job, and had little interest in the job.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

284.    Bennett brought it up to Assistant Superintendent Jenna Rufo, and asked why the black applicant had not been hired. She was implausibly told that someone looked him up on social media and that "he looked like a flirt and we don't need that here." A review of the man's social media shows nothing remarkable.

285.    A few weeks later Bennett was conducting interviews with principal TJ Seidenberger and then Director of Special Education Ruth Desiderio. During a break Bennett commented to Seidenberger and Desiderio that unqualified candidates with no special education supervision were being hired instead of experienced candidates, specifically the African-American man. Another Assistant Superintendent, Todd Bauer, overheard her and told her that her comment was not appreciated. Bennett responded, "I have a master's degree in special education law, how do you think we feel when people without qualifications keep being hired for this department?" The response was that the District had its reasons.

286.    A few weeks later in February 2020, a regular department meeting took place at the Education Services Center. Approximately seven people were present, including Bennett, the director Ruth Desidario, supervisor Tiffany D'Amore, and Christine Mueller. While the group was talking before the start of the meeting, Bennett again raised that the black man applicant had been passed over for an unqualified white man who had not interviewed. The director glossed the issue and stated that the District had its reasons.

287.    Then in early March 2020, the director went on leave, and defendant Sean Arney was installed as interim director for special education. He had previously been the mass curriculum supervisor. There was no interview or application by Arney, he was simply appointed. He had no special education experience.

288.    This prompted Bennett to write to a fellow administrator in the district:

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



Mar 5, 2:38 PM

289.    Bennett points out these facts to show that four separate times in the months preceding the events at issue she expressed concerns to her coworkers and high level administrators that North Penn was not living up to its ideals about equity.

290.    These comments were completely genuine, as Bennett could have no way of knowing what was going to happen on June 25, 2020.

291.    Defendants knew and should have known that Bennett is a good person, and the evil caricature that they sought to portray to the public when attacking her is ridiculous.

292.    It may be inconceivable to Defendants, but adults on the other side of the political divide can still be fundamentally good people despite having disagreements on many issues.

293.    Because of Defendants' actions, Plaintiff's life has been destroyed, she lost her job, her career, and her reputation.

294.    In today's day and age, accusations of the sort that Defendants publicized against Bennett are a stake through the heart of a public educator's career. Defendants knew this, and acted deliberately to punish Bennett and coerce her resignation.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

295.    As a result she has suffered severe economic, mental, and emotional damages.

296.    The individual Defendants cannot claim qualified privilege because the rights at issue are clearly established.

297.    Due to the outrageous actions and omissions of Defendants, their evil motives, their wanton and intentional conduct, and their reckless indifference to her rights, she demands punitive damages from all Defendants.

*****

FRANCIS ALEXANDER, LLC
*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
Alfred (AJ) Fluehr, Esquire
Attorney ID No.: 316503
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ October 23, 2020*

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# RELIEF REQUESTED

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendants, jointly and severally, on all counts and claims compensatory damages in an amount in excess of this court's jurisdictional limitations, thereby guaranteeing Plaintiff a jury trial, exclusive of interests and costs, and an award of punitive damages, as well as prejudgment interest, post judgment interest, delay damages, costs, and such other equitable relief as the Court deems necessary; and requests that this Court determine and declare that Plaintiff be awarded for all counts:

a.   Compensatory damages, inclusive of any and all harm attributable to Defendants' actions or inaction, including loss of earnings, loss of career, reputational/stigma damage,

b.   Mental and emotional pain and suffering;

c.   Punitive damages to punish the Defendants for their outrageous conduct, self-interest, and duplicitous behavior, reckless and callous indifference to Bennett's rights, and evil motives;

d.   Exemplary damages to set an example for others;

e.   Attorneys' fees, costs, and court costs under § 1988;

f.   interest;

g.   prejudgment interest;

h.   Delay damages;

i.   Other equitable relief that may be necessary to enforce Plaintiff's rights; and,

j.   Such other and further relief and/or equitable relief that this Court deems just and/or necessary.

\*\*\*\*\*

FRANCIS ALEXANDER, LLC
*/s/ Francis Malofiy*
_____

PAGE 73 OF 78

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Francis Malofiy, Esquire
Attorney ID No.:  208494
Alfred (AJ) Fluehr, Esquire
Attorney ID No.: 316503
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ October 23, 2020*

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# VERIFICATION

I, ASHLEY BENNETT, hereby verify that that the facts set forth herein are true and correct to the best of my knowledge, information, and belief. I further understand that the statements herein are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904 relating to unsworn falsification to authorities.

/s/ _Ashley Bennett_
ASHLEY BENNETT

/s/ 10/23/2020
DATE

PAGE 75 OF 75

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Spoliation Notice -- Preservation of Evidence

Plaintiffs hereby demand and requests that Defendants take necessary actions to ensure the preservation of all documents, records, communications, whether electronic or otherwise, items and things in their possession or control, or any entity over which any party to this action has control, or from whom any party to this action has access to, any documents, items, or things which may in any manner be relevant to or relate to the subject matter of the causes of action and/or the allegations of this complaint. This includes all personal electronic devices and messaging applications.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Exhibit List

Exhibit 1 - Illegal Press Release

Exhibit 2 - Initial Facebook Post

Exhibit 3 - Board Policy on Freedom of Speech

Exhibit 4 - Board Policy on Political Association

Exhibit 5 - Board Policy on Misconduct/Confidentiality

Exhibit 6 - Interrogation Session Minutes

Exhibit 7 - July 9, 2020 Bennett Letter

Exhibit 8 - July 9, 2020 Kim Response Letter

Exhibit 9 - Bennett-Kim Email Chain

Exhibit 10 - Malofiy July 12, 2020 Email to Kim

Exhibit 11 - Kim's July 13, 2020 Letter

Exhibit 12 - Malofiy July 13, 2020 Letter

Exhibit 13 - Kim July 14 and 17, 2020 Emails

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 1

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# North Penn School District

COVID-19    SCHOOL BOARD    OUR DISTRICT    CENTRAL OFFICE    FOR FAMILIES    EMPLOYMENT    NP DESKTOP

# 6/26/20 Statement

▼ 6/26/20 Statement

North Penn School District » Our District » District Communications and News » Announcements » 6/26/20 Statement

## 6/26/20 Statement from NPSD Concerning Social Media Post

Posted on 06/26/2020

On the morning of Thursday, June 25, 2020 comments were brought to NPSD administration's attention found on an employee's personal Facebook page. The comments do not align with the North Penn School District's core values. The views expressed conflict with our work to develop a community that values diversity. We strive to acknowledge, respect, understand, and celebrate the dynamics of racial and cultural differences. Through the development of a culturally proficient staff, the establishment of structures that promote equitable opportunities, and partnerships with families and students, our School District will create an environment of respect where all members of the school community are empowered to learn, grow, and appreciate one another.

The employee has been placed on administrative leave while an investigation is conducted.

A school district should be a reflection of its community, and the overwhelming support at numerous events for Black Lives Matter across the diverse and vibrant North Penn community aligns with our district's goals to make genuine, sustainable change. The school district stands 100% behind the values and character demonstrated during this past weekend's community-wide, peaceful and unifying Solidarity March organized by North Penn students and graduates.

We encourage the community to review NPSD's statements previously posted on our website.
View previously released statements about racial equality
View information on NPSD's cultural proficiency efforts

CONTACT US

North Penn School District
401 E. Hancock Street
Lansdale, PA 19446
Phone: 215-368-0400

USEFUL LINKS

NPSD Community Relations
North Penn Educational Foundation
NP ADvantage Advertising Program
North ⋯ Television

SOCIAL MEDIA

  

NPSD is committed to ensuring that all material on its website is accessible to students, faculty, staff and the general public. If you experience difficulty with the accessibility of any web pages or documents, please request materials in an alternate format.

2020-13927-0001 Complaint In, Page 81

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 2

2020-93927-0001 Complaint In, Page 82

**Ashley Belter Bennett**
Yesterday at 9:39 PM · 🌐

**1**

I'm confused right now.
I see signs all over saying #BlackLivesMatter.
I'm just trying to figure out WHICH black lives matter.
It can't be the unborn black babies - they are destroyed without a second thought.
It's not black cops - they don't seem to matter at all.
It's not my black #Conservative friends. They are told to shut the f*ck up if they know what's best for them by their black counterparts.
It's not black business owners. Their property, their business, and their employees don't mean anything.
So which black lives matter again ?!?
I can't keep up. I can't. I'm exhausted trying to figure out what we're all supposed to do, believe, and be offended by, and outraged by next.
Two months ago, First Responders were all the rage. In fact, they were heroes. They got free coffee, meals, and cheers as they drove by. Today, they hate them and want them defunded because they can't be trusted.
Two months ago, truck drivers were the heroes, as well, for keeping America moving and the grocery stores stocked. Today they block the

**2**

_____ _____ _____ Today they block the roads with protesters, drag them out of the cabs if they try to do their jobs, and beat them half to death.
Nurses and Doctors are still cool for now. But they may be unemployed. They too are heroes, unless of course they truly believe that all lives matter. Then they're filled with hate and they are part of problem like so many others.
Just 45 days ago protests weren't "essential" and were considered criminal, selfish, and a murderous activity because of the #Coronavirus. Today they are gloriously critical and celebrated. All of the obvious criminal and murderous activities are simply ignored.
If you protest about lock-downs for freedom, you are selfish and you will spread a virus.
If you protest, loot, and riot for social justice, you are a warrior and immune from the virus.
Trust the experts.
No, not those experts.
Don't wear masks, wear masks, but only good ones.
Wait, don't wear masks, wear anything as a mask. Never mind on the masks. Not sure, but

**3**

Wait, don't wear masks, wear anything as a mask. Never mind on the masks. Not sure, but if you don't, you hate people because you could be an asymptomatic spreader. Wait. That's not a thing anymore?
For 3 months, NOTHING was more important than social distance. In fact, we gave up all of our liberties for it. We canceled schools, medical and dental procedures, canceled activities, closed businesses, eliminated every spring rite of passage from prom to graduation, denied people funerals, even at Arlington, and we wrecked the economy for it.
Then came social justice, and social distancing was suddenly no more. #Democrat governors and mayors marched arm-in-arm with protesters. A thousand people at three memorials for someone they never even met. It's a matter of "respect". But you couldn't have a funeral for a family member.
Black Lives Matter. Of course they do. But then multiple black police officers and individuals were killed during the "peaceful protests". I don't see any outrage. Black individually owned businesses were burned to the ground. Silence.

**4**

_____ _____ _____ Black individually owned businesses were burned to the ground. Silence. Deadliest weekend in Chicago, virtually all black on black violence. The #MainstreamMedia is silent. NOTHING!!
I'm confused now.
Look at the data, NO, not that data.
Do the math. No, you can't do the math like that.
Only the experts can understand the data and the math.
And Black Lives Matter protesters REFUSE to look at or discuss the #FBI Crime Statistics - because the data doesn't support their claims of systemic racism against blacks.
Just listen to the black community leaders. No, not them, only the radicals are right.
And back to #COVID19 infections, recoveries, and deaths.
What do you mean other cities/states/

**5**

governors are interpreting the data differently? Pools are safe in Indiana, but not Michigan? Playgrounds are safe in your town, but not mine? Amusement parks are safe in Florida, but not in Ohio or Michigan. Restaurants are all open in Virginia, but not Pennsylvania.
If you are silent you are part of the problem.
If you speak, you are part of the problem.
If you have to ask, you don't understand.
If you don't ask, you don't care.
It's all so predictable, tedious, and exhausting. Nothing adds up. It's one gigantic Common Core math life problem, with ever changing denominators that I'm sure the media and #Democrats are eagerly ready to solve for us... until the next "crisis".
Remember, it's an election year and #Liberals are desperate, don't put anything past them.
They hate #PresidentTrump more than they love #America and they don't care how much damage they do to our country.
So for now I pray.
I pray God will heal our land and Bless the United States of America.

👍❤️ 16                              5 Comments

# EXHIBIT 3

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



| Book | BOARD POLICIES |
|---|---|
| Section | 300 Employees |
| Title | Freedom of Speech in Nonschool Settings |
| Code | 320 |
| Status | Active |
| Adopted | September 19, 2019 |

## Authority

The Board acknowledges the right of administrative, professional and support employees as citizens in a democratic society to speak out on issues of public concern. When those issues are related to the school district and its programs, however, the employee's freedom of expression must be balanced against the interests of this district.

The Board adopts this policy to clarify situations in which an employee's expression could conflict with the district's interests.[1]

In situations in which a district employee is not engaged in the performance of assigned duties, s/he shall:

1. Refrain from comments that would interfere with the maintenance of student discipline.

2. Refrain from making public statements about the district known to be false or made without regard for truth or accuracy.

3. Refrain from making threats against co-workers, supervisors or district officials.

| Legal | 1. 24 P.S. 510 |
|---|---|

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 4

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



| | |
|---|---|
| Book | BOARD POLICIES |
| Section | 300 Employees |
| Title | Political Activities |
| Code | 321 |
| Status | Active |
| Adopted | September 19, 2019 |

## Authority

The Board recognizes and encourages the right of administrative, professional and support employees, as citizens, to engage in political activity. However, district time, resources, property or equipment, paid for by taxpayers, may not be used for political purposes by district employees when performing assigned duties.

Employees shall not engage in political activities during assigned work hours on property under the jurisdiction of the Board.[1]

The following situations are exempt from the provisions of this policy:

1. Discussion and study of politics and political issues when applicable to the curriculum and appropriate to classroom studies.

2. Conduct of student elections and connected campaigning.

3. Conduct of employee representative elections.

Legal                    1. 24 P.S. 510

2020-13927-0001 Complaint In, Page 87

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 5

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



| | |
|---|---|
| Book | BOARD POLICIES |
| Section | 300 Employees |
| Title | Educator Misconduct |
| Code | 317.1 |
| Status | Active |
| Adopted | September 19, 2019 |

## Purpose

The Board adopts this policy to promote the integrity of the education profession and to create a climate within district schools that fosters ethical conduct and practice.

## Authority

The Board requires certificated district employees to comply with the Code of Professional Practice and Conduct and the requirements of the Educator Discipline Act.[1][2]

## Definitions

**Educator** - shall mean a person who holds a certificate.[3]

**Certificate** - shall mean any Commonwealth of Pennsylvania certificate, commission, letter of eligibility or permit issued under the School Code.[3]

**Sexual Abuse or Exploitation** - shall mean any of the following:[4]

1. The employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another individual to engage in sexually explicit conduct, which includes, but is not limited to, the following:

   a. Looking at the sexual or other intimate parts of a child or another individual for the purpose of arousing or gratifying sexual desire in any individual.

   b. Participating in sexually explicit conversation either in person, by telephone, by computer or by a computer-aided device for the purpose of sexual stimulation or gratification of any individual.

   c. Actual or simulated sexual activity or nudity for the purpose of sexual stimulation or gratification of any individual.

   d. Actual or simulated sexual activity for the purpose of producing visual depiction, including photographing, videotaping, computer depicting or filming.

2. Any of the following offenses committed against a child: rape; statutory sexual assault; involuntary deviate sexual intercourse; sexual assault; institutional sexual assault; aggravated

2020-13927-0001 Complaint In, Page 89

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

indecent assault; indecent assault; indecent exposure; incest; prostitution; sexual abuse; unlawful contact with a minor; or sexual exploitation.

**Sexual Misconduct** - any act, including, but not limited to, any verbal, nonverbal, written or electronic communication or physical activity, directed toward or with a child or student that is designed to establish a romantic or sexual relationship with the child or student, such acts include but are not limited to:[3]

1. Sexual or romantic invitation.

2. Dating or soliciting dates.

3. Engaging in sexualized or romantic dialog.

4. Making sexually suggestive comments.

5. Self-disclosure or physical disclosure of a sexual or erotic nature.

6. Any sexual, indecent, romantic or erotic contact with a child or student.

## Delegation of Responsibility

### Duty to Report

The Superintendent or designee shall report to the Pennsylvania Department of Education on the required form, within fifteen (15) days of receipt of notice from an educator or discovery of the incident, any educator:[5]

1. Who has been provided with notice of intent to dismiss or remove for cause, notice of nonrenewal for cause, notice of removal from eligibility lists for cause, or notice of intent not to reemploy for cause.

2. Who has been arrested or indicted for, or convicted of any crime that is graded a misdemeanor or felony.

3. Against whom there are any allegations of sexual misconduct or sexual abuse or exploitation involving a child or student.

4. Where there is reasonable cause to suspect that s/he has caused physical injury to a child or student as the result of negligence or malice.

5. Who has resigned or retired or otherwise separated from employment after a school entity has received information of alleged misconduct under the Educator Discipline Act.

6. Who is the subject of a report filed by the school entity under 23 Pa. C.S. Ch. 63 (relating to child protective services).[6]

7. Who the school entity knows to have been named as a perpetrator of an indicated or founded report under 23 Pa. C.S. Ch. 63.

An educator who knows of any action, inaction or conduct which constitutes sexual abuse or exploitation or sexual misconduct under the Educator Discipline Act shall report such misconduct to the Pennsylvania Department of Education on the required form, and shall report such misconduct to the Superintendent and his/her immediate supervisor, within fifteen (15) days of discovery of such misconduct.[5]

All reports submitted to the Pennsylvania Department of Education shall include an inventory of all information, including: documentary and physical evidence in possession or control of the school relating to the misconduct resulting in the report.[5]

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

An educator who is arrested or convicted of a crime shall report the arrest or conviction to the Superintendent or designee, within seventy-two (72) hours of the occurrence, in the manner prescribed in Board policy.[5][7][8]

Failure to comply with the reporting requirements may result in professional disciplinary action.[9]

## **Guidelines**

### Investigation

School officials shall cooperate with the Pennsylvania Department of Education during its review, investigation, or prosecution, and shall promptly provide the Pennsylvania Department of Education with any relevant information and documentary and physical evidence upon request.[10]

Upon receipt of notification in writing from the Pennsylvania Department of Education, the Superintendent or designee shall investigate the allegations of misconduct as directed by the Department and may pursue its own disciplinary procedure as established by law or by collective bargaining agreement.[10]

Within ninety (90) days of receipt of notification from the Pennsylvania Department of Education directing the school district to conduct an investigation (extensions may be requested), the Superintendent or designee shall report to the Department the outcome of its investigation and whether it will pursue local employment action. The Superintendent or designee may make a recommendation to the Department concerning discipline. If the district makes a recommendation concerning discipline, it shall notify the educator of such recommendation.[10]

### Confidentiality Agreements

The district shall not enter into confidentiality or other agreements that interfere with the mandatory reporting requirement.[10]

### Confidentiality

Except as otherwise provided in the Educator Discipline Act, all information related to any complaint, any complainant, or any proceeding related to discipline shall remain confidential unless or until public discipline is imposed.[11]

### Immunity

Any person who, in good faith, files a complaint or report, or who provides information or cooperates with the Pennsylvania Department of Education or Professional Standards and Practices Commission in an investigation or proceeding shall be immune from civil liability. The district also is immune from civil liability for the disclosure of information about the professional conduct of a former or current employee to a prospective employer of that employee.[12]

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Legal

1. 22 PA Code 235.1 et seq

2. 24 P.S. 2070.1a

3. 24 P.S. 2070.1b

4. 23 Pa. C.S.A. 6303

5. 24 P.S. 2070.9a

6. Pol. 806

7. 24 P.S. 111

8. Pol. 317

9. 24 P.S. 2070.9c

10. 24 P.S. 2070.11

11. 24 P.S. 2070.17b

12. 24 P.S. 2070.17a

23 Pa. C.S.A. 6301 et seq

24 P.S. 2070.1a et seq

2020-13927-0001 Complaint In, Page 92

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 6

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## Minutes of Meetings on 6/29, 6/30, and 7/1/2020

### Taken by Act 93 Rep. Bill Carlin

June 29, 2020

Mia Klm ( HR )  talked in the beginning of the meeting that she was going to ask some questions. She went over what happened last week. The post does not line up with North Penn values. NP will work with employees to the greatest extent possible. This is a confidential meeting, do not talk to anyone about the issue. Reminder about board policy about retaliation against who you think made the complaint. She can discuss it with me, but I have no voice as far representing her.

Mia asked AB if she had any questions, AB said she did not have any, yet........

Mia began the questioning.

First question- what do you do for the district, how long have you been working in this position.

Where have you worked before?

And prior to that?

What can you tell me about the demographics of the students you serve? Oak Park has changed, 65 % economically disadvantaged North Wales has been changing and growing, getting students from Philadelphia.

How about race and diversity? Oak Park, highly diverse, North Wales, primarily white..

Mia clarified- how many students do you work with dempograpically- Oak Park is more diverse, mostly white AA, Native american, Indian Students, would check on Asian numbers.
Mia asked to clarify Indian populations- Bengali

Tell me about cultural proficiency- CP work is to bring everyone together to demand the same opportunities all races, all nationalities - same message of equality and recognition- whether building to building, ec dis students are looked at. As a staff we are trying to be more sensitive about perceptions, how do we come together to figure this out- how to close the gaps in cultural proficiency in our staff, coming together, solving problems.

Are you a member of the cultural competency cadre? No,not now.

Tell me about the post on Facebook- When I read it, it's not mine, it was something someone shared on my page....... We are in a scary time now in this world......all black lives matter, that if we change the way we separate ourselves, ( sic )  and that we pray for this country and get

2020-13927-0001 Complaint In, Page 94

through this together is what we got out of it. I was supporting black lives matter, that all black lives matter. When you contacted me, I initially did  not know what post you were talking about. Over the last 3 days, I can now see how what was written could be perceived as something that was racist. I spoke with others that were multi-racial. Ashley made her own comment saying that all lives matter in response to a post that was telling everyone to stop whining. I do now understand how the message could be perceived- one of the principals on Wednesday evening reached out to me and said the post you made offended me- can we talk about it? Ashley said absolutely, told her she would call her on Thursday. Everything happened on Thursday, so I texted her and told her with the way things were happening, I couldn't contact her now.
I was misguided in the post I was saying, I need to take ownership of that, and learn from it personally and professionally, to make sure it never happens again, I missed the mark on this one, I missed the point of the post and I need to learn and grow why I thought it was offensive- what can I do to make it better? I am hoping that 27 years is not thrown down the drain and how to turn this into something that everybody learns from.

Mia- Are you saying that you posted it, who shared it with you?

AB- A friend had shared the post, and then she shared it, she did not author it. The part that caught me was the prayer and mention of god, that is why I shared it. He shared it with his friends, and then I shared it.

Mia-Who is this person? Can you give me a name?

AB - Dustin D"Augistino- he wrote it, and then shared it.

Mia- You did not author it?

AB-It was Dustin D"Augostinio/

Mia- When did you share the post?

AB  It might have been last week.

Mia- Did you use a district issued device to post it?

AB- No. It was my cellphone.

Mia- I have several questions about the post.  Whether you authored it or not, these will be my questions re: the post.

Mia- I'm just trying to figure out the comment " WHICH BLM"? It can't be the unborn babies…...what are your thoughts?

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

AB- Initially I thought it was an anti-abortion comment. If you are against abortion, all babies are destroyed when they are aborted.

Mia -Black Babies destroyed Without a second thought- what does that mean? It's a clear distinction- It is an insinuaiton that black people are having abortions without a second thought.

AB- If it was an anti abortion comment, someone who is having an abortion is destroying thir baby.

Mia- It's a clear distinction. Maybe some people could see it that way the black babies being destroyed is offensive.

Mia- The post it's not black business owners………….

AB Perceived that with the unrest black business owners were losing thier businesses……..and thier livelihoods- families were not able to get to their homes because of the riots- those people's lives matter too………….

Mia- Clarify- which black lives matter movement, or is it the protesters…..

AB I did not see it as a slam against the black lives matter movement, these lives need to matter at all times…...they should always matter, they weren't my words, but that is what I got from it. We kind of need to stop this craziness……

Mia- do you believe that BLM precludes that all lives matter?

AB- I don't think so, my perception is they are saying their lives matter all the time, but it's not just them,

Mia- If you protest, loot, you are immune from the virus…….

AB I don't equate protesting with looting and rioting, that comment was really a slam at the media what happened to social distancing and coronavirus coverage. Media focused on BLM, not just when it was convenient.

Mia- did you hear coronavirus news during the protests? AB- maybe, but when I read it it seemed like the media forgot about it.

Mia- if there was a war, would they focus on corona or the war?

AB- I don't know- that is a good question. If we were in a war, the news would report it, that is a good point.

Mia- are you saying that protesters are looters?

AB- No I am saying that there is a difference, that protesters are not the looters of businesses and cars, that's not the message they want to share. I would not equate the two of them.

Mia- Chicago- all black on black crime. What did you mean by that?

AB- reported by the news. Their lives matter as well. We shouldn't forget about them.

Mia- which media?

AB- it was a feed on my phone, not sure where it came from.

MIa- what was the purpose of highlighting black on black violence- what are saying? Are you saying that they are the only ones committing crimes?

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

AB- I was trying to say how could we end this? The more I look at it the more I understand that I was wrong. I missed it.

Mia- BLM REFUSED to look at FBI statistics…...
AB- I don't have those statistics- I don't know what it meant, I did not consider it, one way or another. I understand I shared it. Should have paid more attention to it. Crime is up everywhere, what can we do to stop it.

MIa: Only the radicals are right!
AB- I don't know. Maybe the media tends to highlight radicals on the extreme right or left, we need to reach out to everyone, not just the radicals. But my perception was off, I took it as we need to stop with the radical left and right and work with those in the trenches to stop all of this.

Mia- Liberals are desperate- Trump comments…….
AB- what it says- whether you are for or against trump, people let thier hatred for the man blind them- don't let them take the focus away from him.
When you say liberals who do you mean?
AB- Liberals are democrats, conservatives and republicans.
MIa- are you saying that BLM are liberals?
AB- no, BLM is not a political affiliation.
MIa- Literally, like a certain party?
AB- no, there are

Mia- Kung Flu question.
AB - It was a banter back and forth, that is how it started. I said no, I don"t think it's racist.
Mia- you said "that's accurate", how is that accurate?
He was saying the virus started in china, they hid it from us, that was what I was trying to say, and we didn't know about it.
Mia- I have the screenshot, you said it was not racist to say that the Kung-Flu- did you know that people are offended by that statement?
No, I didn't. I did not find it offensive at the time.

Have you talked about the BLM post with district employees?
I have not, people reached out to me to see how I am doing, that's it.

Mia- are there any other district employees who made comments about the post? What about Maria Stratton?
AB- yes, she said she liked the post. I spoke with her to make sure she was ok? She called me, she said she was upset, and that was it. She called.
Mia- What did she say?
AB- that she was upset, and apologized to her for dragging her into this. Got texts from employees who knew what was going on. A lot of the posts on facebook was untrue. It does not take away my responsibility.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Mia- back in May, you responded about Ahmand Aubrey….. You posted an emoji- what was it?
AB- if you look at the emoji it is a confused face, more of a comment on the media, they did not look alike, that was a slam against the media. Not about him. Why is the media trying to make it

MIa- to say that they don't look alike is the concern………..the original post with emoji - why weren't they using the mug shot instead of the high school picture……
When there is a barrage of images that are negative of african americans, it contributes to bias.
AB- that was not my intention. They weren't even the same guy. I didn't think it looked anything like him.
Mia- the media did not use the high school picture as a so called mug shot for Ahmed Aubrey- why aren't they using the mugshot- what is the purpose of that?
AB- to defame his character- which is why I found it ridiculous.
Mia- Who was not being truthful with the picture?
AB- the media, media is everywhere,
Mia- so if I create something, that is considered media?
AB- I guess it would depend on how wide it would be?
MIa- I think you are using social media and media together- is it the media or an individual social media user?
AB- a social media person I guess.
Mia- that is all my questions. Do you want to add something?

AB- I never thought I was doing something offensive. I have room to grow. There are things that I perceive that are wrong. I am shocked that this happened. I want people to think about things, and create solutions, it was never my intent to hurt anyone, it's not anything that I would not intentionally do. Some of the questions are thought provoking for me, they make me think how could I have not seen that, maybe I have a lot to learn. Have I been privileged my whole life, I was not of the mindset that I was offending anyone. What was wrong with my thinking.  It has been a hard lesson to keep on learning about how people perceive things, and apologize for my lack of empathy to see things from a different lens.

Mia- there are serious concerns, we are doing a full investigation. What does that mean? Looking at other people's facebooks posts, she has been inundated with other posts, so Mia might need to reach back out to her.  Emails and phone calls are coming in through from concerned constituents.


6/30/2020

Mia asked a follow up question about whether she shared or whether she copied and pasted the post onto her facebook account.

AB- did not recall whether she pasted it or just shared it.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Mia- copy and pasting takes a little bit more effort.


AB- I don't remember. I think it is important to stand by the fact that it is not s racist post, that was the message I was sharing. Things are being twisted, they are seeing it through their own perception, I stand by the fact that I support my students and am not a racist. Funny thing, about the comment about kung flu, I floundered, I was unsure about that, confused. The original post could have been racist, there were other comments on there, it could have been commenting on the comments. I flubbed my way through. I believe the post asked were Trump supporters racist. I stand by the fact that I did not see any of the responses as racist. I am not a racist. Things are being taken out of context to meet another agenda. People are ruining my reputation. Comment was made that she refused to speak with him ( the reporter ) that is an untruth. This is something now that has gone beyond something about people calling me racist. I will fight to prove that I am not. Whether I copy and pasted or shared does not really matter, the message they got out of it is about someone's perception- I am being crucified for thier perception. I want an investigation about my professional responsibilities at NP- forged strong relationships with families.

Mia- Just to clarify, I never called you a racist, we are not judging you.

AB- I agree. I will be speaking to an attorney about the NAACP about their comments.


MIa- yesterday was just about getting


AB- I sense a different tone from you today. Yesterday you were apologetic, today I sense a tone of anger.


AB- I am apologetic- it is ruining my life- I wouldn't want anyone. It is exhaustion, anxiety, it is not focused at anyone, it is the whole situation. Some people's perceptions are going to ruin her life. I am passionate, enthusiastic about what is fair, I can be outspoken about things like that, so….. Emotionally I am all over the place, it is a lot of things, not sleeping, not eating, getting medication from a doctor, it's anger at myself.


Mia- You mentioned not knowing me, that actually as a 3rd party is not a negative thing for you. I can separate and put on a professional skill. You said that people are ruining your reputation, that is not directed at the administration


AB- no, it isn't.


AB- what she has gotten from the CP trainings is how can we have those tough conversations, and I wind up terminated, then it's all a waste. If we are teaching each other to have tough conversations, then someone who never had a disciple issue, had the best interests in her kids and I get terminated before having the conversation, then that is a problem.


Mia-There are red flags, and there are some non-negotiables- when something crosses the line, the tone, the choice of words, that was not the message that was received from the public.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Those words do not match our actions, that is a problem. We have families saying I don't want
my child working with Ashley Bennett, you are not able to perform your job, and has created a
huge disruption of the school district.

AB- It's done the same for me.

MIa- candidly, I did not make that post- you reposted it, it wasn't Bill or anyone else, it was you.
So

7/1/2020

Ashley wanted to know if there was any more information about the families that complained
about her. Not thier names, just the numbers. Been doing a lot of soul searching. First, I am
going to fight for my job. When that happens, I don't think it is fair to take this one isolated
situation when there has been far more egregious things happening in the district, the
punishment does not fit the crime. I am remorsemful.You said the statement does not align with
the core values of the district. If something isn't done, I will be talking about these things with the
school board. Ashley gave an example about a current situation with north penn school district
and special education hiring decision, an african american candidate that had high scores in the
interview process, but they wound up hiring a white man for the job. "She was told we basically
do what we want around here". Gerry said it. When asking Jenna Rufo, Jenna said ' he was too
much of a flirt".

2nd situation is more dangerous- last school year an ID student of color was picked up and
dragged out of the class in front of peers and other teachers. It was handled in HR and she was
told that she was getting a letter in her file. Ashley went to the cabinet and protested that it was
not the correct consequence, she then subsequently was given a 1 day suspension and EAP.
The teacher's name is Michelle Rumsey. This year, Ms. Rumsey put her hands on another
student. Ms. Rumsey was not trained in SPA, and put another student in a bearhug.

There is also a federal lawsuit against the school district that was reported to Dr. Rufo, it was
never investigated, the lawsuit is still pending. The Assistant Superintendent is mentioned
directly in the lawsuit, Jenna Rufo because she failed to report the incident. These are all
examples of people who got second chances. People in the community have reached out to her
and said that they wanted to give cultural competency training to the district with her. I feel like I
am being railroaded for doing something wrong that I didn't realize. No one is looking out for me
and what my rights are. If I have to go to the board with my information, I will, I have always
been a hard worker. There is a way to work this. Give me out of district students, give me
OT/PT, and let me join the cultural competency cadre so I can learn. I hope we can do this
before I have to bring other people into situations that I don't want to.
Mia did a recap of the above statement and asked for clarifications that I added to the notes.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

AB_ I do not say something lightly to leave my buildings but it would be an option if someone would be willing to give me a 2nd chance.

Mia- thanks for your feedback, I know you are fighting for your job. Here's what I can tell you. Yesterday I sensed anger, the same level of energy, and I feel the same energy today. From an outsider perspective, my initial takeaway is that I have to go down, everyone is going down, that comes off as a threat. That's where you are coming from. In my opinion administration does not respond well to threats.
AB- it's not a threat, it's just about getting it right.

Mia- couple things- what are options for healthcare- and what point could you bring your attorney in? You have come in fighting for your job. If you were my sister would be "Listen, are you planning on working years down the road, if that is the case, A, you want your job, but the big picture is where do you, this is going to get ugly, have you thought about the consequences about future employment? When you have the hearing, you can have a closed hearing, but that information will become public. You can also have an attorney with you. I am not judging you as a person, what is your plan, do you want to be employed? If the answer is yes, think about the consequences. If you want to go to the board, you will have a LoudermIlk hearing. Any information is going to find out about that.

AB- it's already out there, so how much more public could it be?

MIa- it's different to be terminated then quitting. If you are terminated, no one will look at your resume, it speaks volumes.

AB- if I resign I won't get unemployment.

Mia- I am unsure about that. But I did look at your leave bank. So you have some leave available to you, 3 personal days and 17 sick days, and 13.5 vacation days. We could have an agreement where you can use your leave bank, so that is 33.8 days total. You would get 1.8 vacation days for July, which you could use in August. District will not contest any unemployment compensation moving forward. Mia offered this but AB has until 3:00 Friday to accept this plan. If not, Mia will schedule a Loudermilk hearing on Monday, July 6th. After that, a meeting will be scheduled with the school board. Health Insurance will be carried until active status. There is also a cobra option.

AB- this is my only option? There is no other option to get a second chance?

Mia- how can we set you up for success. Honesty, it would be very difficult setting you up for success, I don't see us moving in that direction. I would not bring up Loudermilk if that was a consideration of keeping your employment with the district.
Mia reiterated the options with the leave bank, which would take her through the end of August, she would get paid, and the district will not contest unemployment application. That's a huge

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

help, not typically in a settlement agreement. You can still be employed because you weren't fired or terminated. Mia talked about what other colleagues did who left her employe, went into private schools, honed thier craft, and then came back to the public school model.

AB- That implies that I did not do my job, I have always done my job.

Mia- you are in a good position to find another job with special ed, there are a lot of jobs out there,

AB- this is unbelievable, I am losing my job because people took this post the wrong way, and now I lost my career…….

MIa- if other people heard what you just said they would walk away thinking that "she really does not understand"………….or get it.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 7

2020-13927-0001 Complaint In, Page 103

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Ashley B. Bennett

11 Montella Circle
Pottstown, PA 19464
ashbennett010@gmail.com

---

July 9, 2020

Dear North Penn,

I will not sign the agreement you offered me. I have always been a good employee and have represented North Penn well for eight years. I shared a post about a public political issue on my personal Facebook page. It had nothing to do with my employer or job.

It was explained to me by you during several meetings that my only option was to resign immediately and that there would be no second chance. I do not even really understand what I was suspended for, what I am being investigated for, and why I am facing termination. All I know is that I'm terrified and that my life has been ruined.

I was told by Mia Kim, the Director of HR, in no uncertain terms that I had to resign because I would otherwise be terminated and no one would ever look at my resume again. She also said "If I were your sister, I would tell you to look for another job." I was also told by Kim that if I go before the board to defend myself I would never be able to "come back" from this professionally and personally. I was also told by Kim that I need to consider "Who the board is" and how it would "ruin my future" if I tried to contest what was happening to me.

You have forced me out of a position I love and care about: helping special education students. You have forever destroyed my career, reputation and ability to gain future employment. This district has baselessly vilified me in the community, among parents, and among my co-workers. This has been the most devastating moment of my life.

I am truly shattered that my time at North Penn had to end this way.


Sincerely,

Ashley B. Bennett

2020-13927-0001 Complaint In, Page 104

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 8

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and ...



**NORTH PENN**
**School District**

Ms. Ashley Bennett
11 Montella Cir.
Pottstown, PA 19464

July 9, 2020

**VIA CONFIDENTIAL ELECTRONIC MAIL AND CERTIFIED US MAIL**

Dear Ms. Bennett,

I am in receipt of your email from this morning.  I still consider it to be in your best interest to resign under the circumstances.  However, as I have informed you previously, you have the right to be heard before the Board of School Directors.  Therefore, I want to afford you the due process.  The process first requires a Loudermill proceeding where you will be afforded the opportunity to hear the evidence against you regarding your Facebook posting and its impact on your current role and the operation of the District.

The Loudermill proceeding has been scheduled for Monday, July 13, 2020, at 8:30 am.  It will be held virtually in a Google meeting (Meeting ID meet.google.com/wvo-ifue-mgk, Phone Numbers (US)+1 813-482-9804 PIN: 428 951 792#), and Dr. Arney will be in attendance.  Please be advised that this proceeding does not include your attorney; however, you may bring an Act 93 member.

At the proceeding, you will be given an opportunity to provide your explanation with regard to the evidence against you.  Based upon your explanation, a decision will be made whether or not to discipline you, suspend you without pay and benefits, and/or terminate your employment with the district.  If the termination is chosen, District Administration will prepare written charges against you that will be received and considered at a meeting of the Board.

Also, I am seeking clarification regarding your email from this morning.  You wrote that you will not sign the agreement but you indicated ending your employment with North Penn School District.  Did you intend the email to be your resignation from the District?  If this is the case, Loudermill proceeding will not be necessary.  Please let me know.

401 East Hancock Street, Lansdale, PA 19446 ■ (215)368-0400

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and d

**NORTH PENN**
**School District**

You will continue to be on administrative leave with pay until further notice.  If you have any further questions, please contact me at 215-853-1040.  Thank you for your attention and cooperation.

Sincerely,

J. Mia Kim, Ed.D.
Director of Human Resources

Cc: Dr. Sean Arney, Interim Director of Special Education

401 East Hancock Street, Lansdale, PA 19446  ■  (215)368-0400

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 9

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Begin forwarded message:

On Sunday, July 12, 2020, 12:11 PM, J.Mia Kim <kimj13@npenn.org> wrote:

Hi Ms. Bennett,

Although I have certainly expressed my opinion that it would be a good idea for you to resign in light of the concerns that have been brought to our attention from the community, parents, and other District employees, I obviously cannot force you to do so.  At this point, you have been placed on administrative leave with full pay and benefits pending the Administration's investigation and no disciplinary action has been taken.  As I stated in my letter, the purpose of the hearing on Monday (7/13/2020) is to present you with the information that we have gathered as part of our investigation into your social media postings and allow you the opportunity to respond.  The Administration would then determine whether to impose disciplinary consequences, the most severe of which would be to recommend to the Board that you be discharged from your employment.

Although you have asked that I no longer contact you, I have every right to do so in my capacity as Director of Human Resources given the fact

2020-13927-0001 Complaint In, Page 109

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

that you are still an employee of the District.  Your prior communications have not been clear as to whether you wish to continue your employment with the District.  Therefore, please respond to this email to clarify whether you wish to resign from the District effective 7/13/2020.  If you respond to confirm that you wish to resign effective 7/13/2020, I will submit your resignation to the School Board for acceptance and we can make arrangements for you to return District property and obtain your personal items from the Educational Services Center.  If you do not respond to this email to indicate that you are resigning, <u>you are hereby directed to attend the Loudermill proceeding tomorrow morning, July 13, 2020, at 8:30 a.m</u>.  As I stated previously, you may bring an Act 93 representative to this meeting but you are not permitted to have an attorney participate.

Please let me know if you have any questions or require further clarification.

Sincerely,

J. Mia Kim, Ed.D.
Director of Human Resources
North Penn School District
401 E. Hancock Street
Lansdale, PA 19446
215-853-1040  Phone

*CONFIDENTIALITY NOTICE:*
*The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure.  If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments.  If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

On Fri, Jul 10, 2020 at 6:44 PM Ashley Bennett <ashbennett30@yahoo.com> wrote:

> You forced me to resign. In your letter, you threatened me again, even though you still did not tell me what I did wrong.
>
> If you will remember, on June 25 you repeatedly told me my suspension and investigation would be kept confidential. Yet, the very next day the school district posted a statement on the North Penn website and commented to the media attacking me. I do not trust anything you say.
>
> This has been the worst experience of my life. I am in a state of shock.  Do not contact me anymore.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Ashley Bennett

On Thursday, July 9, 2020, 05:56:35 PM EDT, J.Mia Kim
<kimj13@npenn.org> wrote:

Hi Ms.  Bennett,

Attached, please find the Loudermill proceeding notice for Monday, July 13, 2020, at 8:30 am.  While the Google invitation information for the Loudermill proceeding is listed in the attached notice, I will send a Google meeting invitation.

Thank you for your attention to this matter.

Sincerely,
J. Mia Kim, Ed.D.
Director of Human Resources
North Penn School District
401 E. Hancock Street
Lansdale, PA 19446
215-853-1040  Phone

*CONFIDENTIALITY NOTICE:*
*The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure.  If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments.  If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 10

2020-13927-0001 Complaint In, Page 112

Case # 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**AJ Fluehr**

| | |
|---|---|
| **From:** | Francis Alexander Malofiy |
| **Sent:** | Wednesday, July 22, 2020 1:21 PM |
| **To:** | AJ Fluehr |
| **Cc:** | Francis Alexander Malofiy |
| **Subject:** | Fwd: ASHLEY BENNETT |

Begin forwarded message:

**From:** Francis Alexander Malofiy <francis@francisalexander.com>
**Subject: ASHLEY BENNETT**
**Date:** July 12, 2020 at 10:02:29 PM EDT
**To:** "kimj13@npenn.org" <kimj13@npenn.org>
**Cc:** Francis Alexander Malofiy <francis@francisalexander.com>

Dear Ms. Kim,

Mrs. Ashley Bennett is in the process of retaining my firm to represent her.

I'm not sure what part of my client's prior communications to you were unclear. You forced her to resign. Therefore, she is no longer an employee of North Penn.

Additionally, she asked you not to contact her anymore. Please respect this simple request as she is dealing with her life being destroyed.

Please be sure to that you and the District retain and preserve all documents relating to Mrs. Bennett, her employment, and her discipline.

All future communications should be directed to my attention.


*****
With every good wish, I am,

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

1

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 11

2020-13927-0001 Complaint In, Page 114

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## AJ Fluehr

| | |
|---|---|
| **From:** | Francis Alexander Malofiy |
| **Sent:** | Monday, July 13, 2020 1:17 PM |
| **To:** | AJ Fluehr |
| **Cc:** | Francis Alexander Malofiy |
| **Subject:** | Fwd: CONFIDENTIAL - follow-up to this morning's Loudermill |

Sent from my iPhone

Begin forwarded message:

> **From:** Ashley Bennett <ashbennett30@yahoo.com>
> **Date:** July 13, 2020 at 12:48:20 PM EDT
> **To:** Francis Alexander Malofiy <francis@francisalexander.com>
> **Subject: Fw:  CONFIDENTIAL - follow-up to this morning's Loudermill**

 Just got this

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Monday, July 13, 2020, 12:42 PM, J.Mia Kim <kimj13@npenn.org> wrote:

> Dear Ms. Bennett,
>
>
> Last night I received the below communication from an individual stating that he is your attorney.  This is a different individual than your attorney with whom we had been in communication last week.  In his message, he states that you were "forced" to resign and that you are no longer an employee of the District.  As I explained to you in my email yesterday afternoon, I have no ability to force you to resign.  To this point, the District worked with your prior attorney last week to prepare an agreement that included your resignation but you rejected this agreement.  I have also explained to you that your status with the District is that you are on administrative leave with full pay and benefits.  In my email from yesterday afternoon, I stated that if you did not indicate that you had resigned from the District effective 7/13/2020, you were directed to attend the Loudermill proceeding with me at 8:30 a.m. this morning.  Your immediate supervisor, Dr. Arney, and I were on the call at 8:30 a.m. this morning but you did not join us.
>
>
> Because you may be receiving conflicting information from an attorney with whom you are apparently consulting, I am willing to reschedule our meeting for tomorrow, Tuesday, July 14, 2020, at 8:30 a.m.  As I have stated, you may bring an Act 93

1

representative to this meeting but you may not be accompanied by an attorney.  Here is the link for the meeting:  Meeting ID <u>meet.google.com/hhk-nrzt-wmh</u>.  I will also send a Google Meeting invitation.

The only way in which your employment with the District may end is through voluntary resignation or termination by the School Board.  Since you have not provided a resignation notice indicating that you are voluntarily resigning and because the School Board has taken no action with regard to your employment, you are still an employee of the District receiving full pay and benefits.  To be completely clear: it is your choice to make as to whether you wish to resign.  If you do not attend the meeting tomorrow morning, I will take this to mean that your choice is to resign from the District and your resignation will be placed on the agenda for acceptance by the School Board at its next meeting with an effective date of July 14, 2020.

Sincerely,
J. Mia Kim, Ed.D.
Director of Human Resources
North Penn School District
401 E. Hancock Street
Lansdale, PA 19446
215-853-1040  Phone

*CONFIDENTIALITY NOTICE:*
*The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure.  If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments.  If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

2020-13927-0001 Complaint In, Page 116

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 12

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



**FRANCIS ALEXANDER**
— LIMITED —

July 13, 2020

North Penn School District
401 E. Hancock Street
Lansdale PA 19446
T: (215) 368-0400
*Via Email and First Class USPS*

Re:   **Bennett v. North Penn School District et al.**
      *Unconstitutional First Amendment Retaliation and Abuses against Ashley Bennett*

To the North Penn School District and its Officials,

I represent Ashley Bennett, who supervised special education at North Penn School District (the "District") for the last eight years. She has dedicated 27 years of her life to helping students with special needs and has a stellar record.

Unfortunately, the actions by North Penn School District, the Board, and the Director of HR Mia Kim have irrevocably tarnished Ashley's career and reputation by illegally and outrageously retaliating against and punishing her for expressing private political viewpoints on Facebook they disagree with.

She was suspended without notice, then subjected to repeated interrogations and threats that if she did not resign, and instead defended herself, it would result in her career and personal ruination. There was never any cause to take any action against her, and she has *never* been told what policy or law she violated. She was forced to resign as a result by the District's purely coercive behavior.

The District's conduct is utterly alien to a civilized nation of laws. Viewpoint discrimination and retaliation is illegal and unconstitutional. Yet, the District forthrightly and expressly admits to illegal discrimination in a press release and media comments, claiming that she is being disciplined and investigated for expressing views which "contradict" the District's "values." Note that making public attacks on Ashley was a third degree misdemeanor as state law required the District to maintain confidentiality.

The actions of the District's petty tyrants shock the conscience of any reasonable observer. The crime is unknown, the process is the punishment, a denial is evidence of guilt, and the result predetermined. This conduct is more befitting a Star Chamber, the Soviet Union, or the plot of 1984 than the United States of America. Again, not a shred of cause exists for any of these outrageous actions against my client.

**The Facebook Post and North Penn's Initial Retaliation against Ashley Bennett**

In late June 2020 Ashley reposted a comment on her personal Facebook profile she had seen circulating. The post concerned current political issues, including issues related to race. The

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

PAGE 2

post was not connected to her job duties, was entirely unconnected to her employment, and was on a matter of public concern. See Exhibit 2 - Facebook Post.

Some members of the community took issue with the content of her repost. It is, of course, the right of citizens to disagree with each other.

However, as is often the case these days, a social media mob formed and came for her job at North Penn. The response from the District should have simply been that employees have a First Amendment right to say what they want outside school on matters of public concern. See Garcetti v. Ceballos, 547 US 410, 419 (2006) (stating that public employees who express opinions on matters of public concern unrelated to their employment have the broadest First Amendment protection). This is, after all, also the District's explicit policy. See Exhibit 3 - Board Policy 320 *Freedom of Speech in Nonschool Settings* ("The Board acknowledges the right of administrative, professional and support employees as citizens in a democratic society to speak out on issues of public concern."); Exhibit 4 - Board Policy 321 *Political Activities* ("The Board recognizes and encourages the right of administrative, professional and support employees, as citizens, to engage in political activity."). The District certainly should not have offered aid, succor, and legitimacy to such a mob.

To its shame, North Penn (a *public* school district) and its officials immediately joined in and targeted one of their own. The District and Director of HR Mia Kim suspended Ashley without warning or notice on June 25 for the Facebook post, called her a racist, and started a vague investigation (apparently of Ashley Bennett's thought crimes). There was never a shred of cause to do any of this. Ashley was blindsided.

The District falsely and repeatedly assured her that everything would be kept confidential. This is expressly required by law and Board Policy, and violators commit a third degree misdemeanor. See 23 P.S. 2070.17b; Exhibit 5 - Board Policy 317. The District's assurances were, however, a lie.

At the same time as the District assured Ashley about confidentiality, it was secretly and illegally providing comment to news organizations and drafting a press release posted on North Penn's website on June 26, 2020. The statements by the District vilified Ashley and claimed that she was being suspended and investigated for expressing viewpoints that contradict the District's values, including diversity:

> The comments *do not align* with the North Penn School District's core values. *The views expressed conflict with our work to develop a community that values diversity*. We strive to acknowledge, respect, understand, and celebrate the dynamics of racial and cultural differences. …

> The employee has been placed on administrative leave while an investigation is conducted.

See Exhibit 1 - 6/26/2020 North Penn Statement (emphases added). The press release even expressly endorsed and expressed solidarity with certain political movements, making it abundantly clear that any employee who expresses an allegedly differing opinion will be disciplined and ostracized without regard for the law.

Of note, the superintendent and several board members also told members of the public agitating to have Ashley fired that the District was addressing her continued employment through

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

PAGE 3

"legal and HR," making it clear the retaliation against Ashley was a considered and official action by the District, not the rogue action of one or two employees.

Upon waking up on the morning of June 26, 2020, and seeing the public comments, Ashley again found herself blindsided for the second time in 24 hours. During all of this, the District hypocritically continued to insist that Ashley keep the matter confidential, muzzling her from defending herself from the illegal public broadside she had just been subjected to. See also Doe v. Governor of Pa., No. 18-3299 (3d Cir. Nov. 4, 2019) (stating that "discussing anything about the investigation—even its existence—would make" the discloser "subject to criminal penalties." See 24 P.S. § 2070.17b(b)"). She was mentally and emotionally devastated.

The District's conduct is utterly alien to a civilized nation of laws. It is a fundamental precept of our system of constitutional government that viewpoint discrimination is illegal. See Garcetti, supra. Yet, the District forthrightly and expressly admits to unconstitutional viewpoint discrimination in the illegal press release posted on its own website. Its actions also repeatedly violated its own policies and state law, and constitute a third degree misdemeanor. Perhaps this is why the press release was quietly deleted several weeks later (as definitive a showing of consciousness of guilt as I have ever seen). The actions of the District's petty tyrants shock the conscience of any reasonable observer.

By publicly attacking Ashley, contrary to its express promises of confidentiality and the law, the District effectively made it impossible for Ashley to defend herself at work or in public as she was still trying to cope with the shock of what had happened to her. It is hard to imagine a more direct and egregious violation of a public employee's Federal and State rights, and the District's very own policies.

**The District Threatens Bennett to Resign, or Be Subjected to Further Public Retaliation and Termination, Despite Having No Cause Whatsoever to Discipline or Investigate Her**

North Penn's clearly illegal conduct then continued unabated over the next several days, despite there never having been a shred of cause to lift a finger against Ashley. At no point was she told what she had done wrong, or what rule or policy she had violated, other than that her Facebook post was allegedly racist and offensive—a nostrum she vigorously disagrees with. Of course, the content of the private posts is irrelevant under the Constitution; she does not have to explain her beliefs to the government. No notice of the actual charges or evidence against her was ever given.

Instead of being given notice and a Loudermill hearing as required by due process, North Penn instead took it upon itself to engage in repeated interrogation sessions not about any actual violation of any policy or law, but instead her beliefs. These sessions had no legitimate investigative purpose or legal justification, and were conducted with the intent and purpose to force and coerce her to resign.

"If an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive." Schultz v. United States Navy, 810 F. 2d 1133, 1136 (Fed. Cir. 1987). Here, the threatened removal was not predicated on any legal foundation, could not be substantiated, and was in fact blatantly in violation of the US and Pennsylvania constitutions.

Ashley was repeatedly interrogated and asked to justify the thought processes and purposes behind each idea in her political Facebook posts. Government agents have no right to interrogate an employee on their private political beliefs and mental thought processes, especially when

2020-13927-0001 Complaint In, Page 120

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**PAGE 4**

unmoored from any real allegation of wrongdoing. These interrogation sessions made it plain that the problem was the content of the ideas that Ashley expressed. This is a truly outrageous abuse of governmental power, and a stark warning about the erosion of constitutional protections in this country.

North Penn repeatedly made it clear that Ashley's only real "choice" was to immediately resign. In an effort to coerce Ashley's resignation, she was told by the HR Director Kim that there would be no "second chance" for her, and that she must resign because otherwise she would be terminated and no future employer would ever look at her resume again.

Mia Kim repeatedly emphasized that any attempt to contest the dismissal was pointless, would result in further grounds for termination, and would also result in further harsh retaliation. Kim's statements were full of not-so-veiled threats, including telling Ashley:

- "If I were your sister, I would tell you to look for another job."

- It would be impossible to "come back" from this professionally and personally if she defended herself in front of the Board.

- To consider "Who the board is" and how it would "ruin your future" if Bennett defended herself and did not resign.

- Telling her that attempting to go through a <u>Loudermill</u> hearing would not turn out well for her and that she would be terminated.

The District even tried to extort Ashley into resigning by claiming that it would remove the outrageous and illegal press release from North Penn's website *if* she signed a resignation and released the District of liability for its actions (including constitutional violations).

It is scandalous that North Penn threatened to use any attempt by Ashley to defend herself as proof of guilt and a further opportunity to punish and retaliate against her. The crime is unknown, the process is the punishment, a denial is evidence of guilt, and the result predetermined. This conduct is more befitting a Star Chamber, the Soviet Union, or the plot of 1984 than the United States of America. Again, not a shred of cause exists for any of these outrageous actions against my client.

North Penn's delay in providing a <u>Loudermill</u> hearing (although there was no basis to hold one) while it publicly attacked Ashley, destroyed her reputation, and engaged in a sham investigation designed to force and coerce her into resigning is utterly despicable behavior.

When Ashley expressed desperate incredulity during these interrogation sessions that she could lose her job over a misinterpreted private Facebook post, the recorded response of Mia Kim defies belief:

| | |
|---|---|
| Bennett: | "This is unbelievable, I am losing my job because people took this post the wrong way, and now I lost my career......." |
| Kim: | "If other people heard what you just said they would walk away thinking that 'she really does not understand'............or get it." |

In fact, it is Kim and the District which do not "get it." They behaved in a grossly illegal fashion, attacking a fellow professional educator for expressing political beliefs different than theirs.

Case # 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

PAGE 5

To be clear, there was never a shred of probable cause, or any other reasonable basis whatsoever, to discipline, investigate, terminate, publicly comment, or otherwise take any action whatsoever against Ashley Bennett. The notion that she would be subjected to such Stalinist conduct from a governmental employer in the United States, resulting in abject career and personal ruination, is absurd.

**North Penn and Its Officials Have Ruined Ashley Bennett's Life, Made Further Employment At North Penn Impossible, and Destroyed her 27-Year Career Helping Special Needs Students**

As a result of North Penn's actions, Bennett has now been vilified in the press, on the internet, in the public, in the community, among parents, among students, and at work. She was promised by the District that any attempt to defend herself would result not only in termination, but further public retaliation. This "purely coercive" conduct by the District, lacking any legal or factual basis, is beyond belief and involuntarily forced her out of her position at the district, resulting in a constructive discharge. See Schultz, *supra*.

After Bennett wrote a letter on July 9, 2020 (Exhibit 6), decrying her forced and coerced resignation, Kim bizarrely wrote back refusing to acknowledge that Bennett was no longer employed and claiming that a much belated Loudermill hearing would take place the next week to "afford you the due process." See Exhibit 7 - 7/9/2020 Mia Kim Letter. This was plainly written after someone in the District realized that Bennett had not been afforded *any* due process (the sending of this letter coincided with the surreptitious deletion of the illegal press release). The District cannot *ex post facto*, with a letter, unring the bell and undo the deliberate evisceration of Bennett's due process and First Amendment rights. Demonstrating that Kim and the District are unfamiliar with "the due process," Kim's letter yet again threatened that any attempt to defend herself would turn out poorly.

Even if the vague and ambiguous letter were sent prior to Ashley's involuntary resignation, it would not even remotely satisfy Loudermill and shows that the District had no basis to proceed and was actually setting Ashley up for more abuse.

A Loudermill notice is supposed to identify the policy/legal violations and evidence at issue— *before* the hearing—so the respondent can have a meaningful opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (stating that before hearing employer must give "notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story"). *Kim's letter fails to identify any violations of policy or law, or any evidence that was to be used against her*.

Instead, it incredibly states only that, at the proceeding, "you will be afforded the opportunity to hear the evidence against you regarding your Facebook posting." See Exhibit 7. This is backwards and the opposite of due process. A refusal to define the alleged crime, and a refusal to provide the substance of the evidence prior to the hearing, are the defining hallmarks of nearly every kangaroo court in history. Nothing about the District's actions, either substantively or procedurally, have been legitimate.

In further letters, despite Bennett reiterating that she is no longer employed and has been forced to resign, Kim unilaterally refused to accept this fact. The undersigned counsel then made it clear on July 12 that Ashley was no longer employed and that all future communications should be directed to counsel. Kim, however, improperly and outrageously continued to contact my client in an attempt to seriously prejudice her rights.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

PAGE 6

In any event, there is no way that Bennett or any reasonable person in her position could continue as an employee in the environment created by North Penn. She has a target on her back and has been expressly told that she will never be welcome at North Penn again. This goes double given that North Penn fraudulently misled her about keeping the matter confidential, but then illegally attacked her in the press and on the school's website effectively preempting and precluding any defense on her part and ruining her reputation. Trust is everything in a relationship, and North Penn repeatedly violated Ashley's trust (and the law) over and over again.

Note that the harm here goes far beyond Mrs. Bennett. North Penn has chilled the free speech rights of every employee, student, and parent. Everyone is now on notice that if anyone expresses a thought or opinion out of sync with North Penn's leadership, the offender will be publicly vivisected and exiled.

I have never seen a case as clear cut, or more egregious, than this. I must stress that the District itself is not the only liable party. All those who participated, enabled, acquiesced, and supervised the attack on Ashley Bennett will be personally liable because they violated Bennett's clear, unambiguous, and long-established Constitutional rights. They should retain personal counsel.

**Ashley Bennett has Been Seriously and Permanently Harmed and Deserves to be Made Whole**

Ashley intends to seek the full extent of damages allowed by law, both compensatory and punitive in nature. Furthermore, the public comments by North Penn during Bennett's involuntary discharge will make it very hard, if not impossible, for her to obtain a similar job and mitigate her damages.

Given that the 49-year old Mrs. Bennett earned $136,800, plus benefits, and would have been entitled to a pension—and has another 25 years of projected employment—the economic damages alone are severe. Any number must include reasonable raises, promotions, pension, and retirement funds—and of course her mental and emotional damages as she deals with the destruction of her professional and personal life. A realistic compensatory number is far greater than $5 million.

Given the clear and outrageous nature of the conduct at issue and rights violated, compensatory punitive damages will also be recoverable against the individual defendants which *will* include the superintendent Dr. Curt Dietrich, the board members, the Director of HR Mia Kim, and the interim Director of Special Education Sean Arney.

What happened here is utterly without justification. A realistic settlement demand is in the $5 million range, a full public apology, and annual civics lessons taught by a local attorney (of Ashley's choosing) for all North Penn staff, board, and students to ensure that this never happens again (at the District's expense). An independent, third-party investigation of civil rights abuses by the District, and also of Mia Kim's actions at her prior public education employers, will also be required. It is doubtful that this is the first time Kim has violated the Constitutional rights of employees and students.

That public school officials could so readily engage in conduct that obviously conflicts with the US and Pennsylvania Constitutions shocks the conscience.

You are hereby notified to preserve any and all data, information, documents, and communications regarding Bennett, Kim, the Board, the District, or the events this letter concerns.

2020-13927-0001 Complaint In, Page 123

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

PAGE 7

    If you do not respond to this letter in 14 days, Ashley Bennett will file suit. There is to be no further contact with her.

With every good wish, I am,



Francis Malofiy, Esquire
Alfred (AJ) Fluehr, Esquire

    Cc:   *Dr. Curtis Dietrich, Superintendent*
            *Dr. J. Mia Kim, Director of Human Resources*
            *Sean Arney, Interim Director of Special Education*
            *Martina Stoll, Board President*
            *Christian D. Fusco, Board Vice President*
            *Elisha K. Gee, Board Member*
            *Jonathan M. Kassa, Board Member*
            *Dr. Wanda Lewis-Campbell, Board Member*
            *Timothy MacBain, Board Member*
            *Juliane Ramić, Board Member*
            *Al Roesch, Board Member*
            *Cathy Wesley, Board Member*
            *Kyle Somers, Esquire - North Penn Solicitor/General Counsel*

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Exhibit List

Exhibit 1 - Illegal Press Release

Exhibit 2 - Initial Facebook Post

Exhibit 3 - Board Policy on Freedom of Speech

Exhibit 4 - Board Policy on Political Association

Exhibit 5 - Board Policy on Misconduct/Confidentiality

Exhibit 6 - July 9, 2020 Bennett Letter

Exhibit 7 - July 9, 2020 Kim Response Letter

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 1

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

North Penn School District

COVID-19    SCHOOL BOARD    OUR DISTRICT    CENTRAL OFFICE    FOR FAMILIES    EMPLOYMENT    NP DESKTOP

# 6/26/20 Statement

▼ 6/26/20 Statement

North Penn School District » Our District » District Communications and News » Announcements » 6/26/20 Statement

## 6/26/20 Statement from NPSD Concerning Social Media Post
Posted on 06/26/2020

On the morning of Thursday, June 25, 2020 comments were brought to NPSD administration's attention found on an employee's personal Facebook page. The comments do not align with the North Penn School District's core values. The views expressed conflict with our work to develop a community that values diversity. We strive to acknowledge, respect, understand, and celebrate the dynamics of racial and cultural differences. Through the development of a culturally proficient staff, the establishment of structures that promote equitable opportunities, and partnerships with families and students, our School District will create an environment of respect where all members of the school community are empowered to learn, grow, and appreciate one another.

The employee has been placed on administrative leave while an investigation is conducted.

A school district should be a reflection of its community, and the overwhelming support at numerous events for Black Lives Matter across the diverse and vibrant North Penn community aligns with our district's goals to make genuine, sustainable change. The school district stands 100% behind the values and character demonstrated during this past weekend's community-wide, peaceful and unifying Solidarity March organized by North Penn students and graduates.

We encourage the community to review NPSD's statements previously posted on our website.
View previously released statements about racial equality
View information on NPSD's cultural proficiency efforts

## CONTACT US

North Penn School District
401 E. Hancock Street
Lansdale, PA 19446
Phone 215-362-0501

## USEFUL LINKS

NPSD Corporate Partners
Lenfest Amazing Rewards Program
NP Advantage Rewards Program
VHB Employment

## SOCIAL MEDIA

  

NPSD is committed to ensuring that our material and our website is accessible to students, faculty, staff and the general public. If you experience difficulty with the accessibility of our webpages or documents, please request materials in an alternate format at

2020-13927-0001 Complaint In, Page 127

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 2

2020-13927-0001 Complaint In, Page 128

**Ashley Belter Bennett**
Yesterday at 9:39 PM · ⊙

**1**

I'm confused right now.

I see signs all over saying #BlackLivesMatter.

I'm just trying to figure out WHICH black lives matter.

It can't be the unborn black babies - they are destroyed without a second thought.

It's not black cops - they don't seem to matter at all.

It's not my black #Conservative friends. They are told to shut the f*ck up if they know what's best for them by their black counterparts.

It's not black business owners. Their property, their business, and their employees don't mean anything.

So which black lives matter again ?!?

I can't keep up. I can't. I'm exhausted trying to figure out what we're all supposed to do, believe, and be offended by, and outraged by next.

Two months ago, First Responders were all the rage. In fact, they were heroes. They got free coffee, meals, and cheers as they drove by. Today, they hate them and want them defunded because they can't be trusted.

Two months ago, truck drivers were the heroes, as well, for keeping America moving and the grocery stores stocked. Today they block the

**2**

Today they block the roads with protesters, drag them out of the cabs if they try to do their jobs, and beat them half to death.

Nurses and Doctors are still cool for now. But they may be unemployed. They too are heroes, unless of course they truly believe that all lives matter. Then they're filled with hate and they are part of problem like so many others.

Just 45 days ago protests weren't "essential" and were considered criminal, selfish, and a murderous activity because of the #Coronavirus. Today they are gloriously critical and celebrated. All of the obvious criminal and murderous activities are simply ignored.

If you protest about lock-downs for freedom, you are selfish and you will spread a virus.

If you protest, loot, and riot for social justice, you are a warrior and immune from the virus. Trust the experts.

No, not those experts.

Don't wear masks, wear masks, but only good ones.

Wait, don't wear masks, wear anything as a mask. Never mind on the masks. Not sure, but

**3**

Wait, don't wear masks, wear anything as a mask. Never mind on the masks. Not sure, but if you don't, you hate people because you could be an asymptomatic spreader. Wait. That's not a thing anymore?

For 3 months, NOTHING was more important than social distance. In fact, we gave up all of our liberties for it. We canceled schools, medical and dental procedures, canceled activities, closed businesses, eliminated every spring rite of passage from prom to graduation, denied people funerals, even at Arlington, and we wrecked the economy for it.

Then came social justice, and social distancing was suddenly no more. #Democrat governors and mayors marched arm-in-arm with protesters. A thousand people at three memorials for someone they never even met. It's a matter of "respect". But you couldn't have a funeral for a family member.

Black Lives Matter. Of course they do. But then multiple black police officers and individuals were killed during the "peaceful protests". I don't see any outrage. Black individually owned businesses were burned to the ground. Silence.

**4**

Black individually owned businesses were burned to the ground. Silence. Deadliest weekend in Chicago, virtually all black on black violence. The #MainstreamMedia is silent. NOTHING!!

I'm confused now.

Look at the data, NO, not that data.

Do the math. No, you can't do the math like that.

Only the experts can understand the data and the math.

And Black Lives Matter protesters REFUSE to look at or discuss the #FBI Crime Statistics - because the data doesn't support their claims of systemic racism against blacks.

Just listen to the black community leaders. No, not them, only the radicals are right.

Add back to #COVID19 infections, recoveries, and deaths.

What do you mean other cities/states/

**5**

governors are interpreting the data differently? Pools are safe in Indiana, but not Michigan? Playgrounds are safe in your town, but not mine? Amusement parks are safe in Florida, but not in Ohio or Michigan. Restaurants are all open in Virginia, but not Pennsylvania.

If you are silent you are part of the problem.

If you speak, you are part of the problem.

If you have to ask, you don't understand.

If you don't ask, you don't care.

It's all so predictable, tedious, and exhausting. Nothing adds up. It's one gigantic Common Core math life problem, with ever changing denominators that I'm sure the media and #Democrats are eagerly ready to solve for us... until the next "crisis".

Remember, it's an election year and #Liberals are desperate, don't put anything past them. They hate #PresidentTrump more than they love #America and they don't care how much damage they do to our country.

So for now I pray.

I pray God will heal our land and Bless the United States of America.

👍❤️ 16                    5 Comments

Case# 2:20-cv-05841 Judicial Electronic Filing on 10/23/2020 2:34 PM, Fee = $0.00 - Unified Judicial Courts that require filing confidentially

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 3

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



| | |
|---|---|
| Book | BOARD POLICIES |
| Section | 300 Employees |
| Title | Freedom of Speech in Nonschool Settings |
| Code | 320 |
| Status | Active |
| Adopted | September 19, 2019 |

## Authority

The Board acknowledges the right of administrative, professional and support employees as citizens in a democratic society to speak out on issues of public concern. When those issues are related to the school district and its programs, however, the employee's freedom of expression must be balanced against the interests of this district.

The Board adopts this policy to clarify situations in which an employee's expression could conflict with the district's interests.[1]

In situations in which a district employee is not engaged in the performance of assigned duties, s/he shall:

1. Refrain from comments that would interfere with the maintenance of student discipline.

2. Refrain from making public statements about the district known to be false or made without regard for truth or accuracy.

3. Refrain from making threats against co-workers, supervisors or district officials.

| | |
|---|---|
| Legal | 1. 24 P.S. 510 |

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 4

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



| Book | BOARD POLICIES |
| --- | --- |
| Section | 300 Employees |
| Title | Political Activities |
| Code | 321 |
| Status | Active |
| Adopted | September 19, 2019 |

## Authority

The Board recognizes and encourages the right of administrative, professional and support employees, as citizens, to engage in political activity. However, district time, resources, property or equipment, paid for by taxpayers, may not be used for political purposes by district employees when performing assigned duties.

Employees shall not engage in political activities during assigned work hours on property under the jurisdiction of the Board.[1]

The following situations are exempt from the provisions of this policy:

1. Discussion and study of politics and political issues when applicable to the curriculum and appropriate to classroom studies.

2. Conduct of student elections and connected campaigning.

3. Conduct of employee representative elections.

| Legal | 1. 24 P.S. 510 |
| --- | --- |

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 5

2020-13927-0001 Complaint In, Page 134

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



| Book | BOARD POLICIES |
|---|---|
| Section | 300 Employees |
| Title | Educator Misconduct |
| Code | 317.1 |
| Status | Active |
| Adopted | September 19, 2019 |

## Purpose

The Board adopts this policy to promote the integrity of the education profession and to create a climate within district schools that fosters ethical conduct and practice.

## Authority

The Board requires certificated district employees to comply with the Code of Professional Practice and Conduct and the requirements of the Educator Discipline Act.[1][2]

## Definitions

**Educator** - shall mean a person who holds a certificate.[3]

**Certificate** - shall mean any Commonwealth of Pennsylvania certificate, commission, letter of eligibility or permit issued under the School Code.[3]

**Sexual Abuse or Exploitation** - shall mean any of the following:[4]

1. The employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another individual to engage in sexually explicit conduct, which includes, but is not limited to, the following:

   a. Looking at the sexual or other intimate parts of a child or another individual for the purpose of arousing or gratifying sexual desire in any individual.

   b. Participating in sexually explicit conversation either in person, by telephone, by computer or by a computer-aided device for the purpose of sexual stimulation or gratification of any individual.

   c. Actual or simulated sexual activity or nudity for the purpose of sexual stimulation or gratification of any individual.

   d. Actual or simulated sexual activity for the purpose of producing visual depiction, including photographing, videotaping, computer depicting or filming.

2. Any of the following offenses committed against a child: rape; statutory sexual assault; involuntary deviate sexual intercourse; sexual assault; institutional sexual assault; aggravated

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

indecent assault; indecent assault; indecent exposure; incest; prostitution; sexual abuse; unlawful contact with a minor; or sexual exploitation.

**Sexual Misconduct** - any act, including, but not limited to, any verbal, nonverbal, written or electronic communication or physical activity, directed toward or with a child or student that is designed to establish a romantic or sexual relationship with the child or student, such acts include but are not limited to:[3]

1. Sexual or romantic invitation.

2. Dating or soliciting dates.

3. Engaging in sexualized or romantic dialog.

4. Making sexually suggestive comments.

5. Self-disclosure or physical disclosure of a sexual or erotic nature.

6. Any sexual, indecent, romantic or erotic contact with a child or student.

## Delegation of Responsibility

### Duty to Report

The Superintendent or designee shall report to the Pennsylvania Department of Education on the required form, within fifteen (15) days of receipt of notice from an educator or discovery of the incident, any educator:[5]

1. Who has been provided with notice of intent to dismiss or remove for cause, notice of nonrenewal for cause, notice of removal from eligibility lists for cause, or notice of intent not to reemploy for cause.

2. Who has been arrested or indicted for, or convicted of any crime that is graded a misdemeanor or felony.

3. Against whom there are any allegations of sexual misconduct or sexual abuse or exploitation involving a child or student.

4. Where there is reasonable cause to suspect that s/he has caused physical injury to a child or student as the result of negligence or malice.

5. Who has resigned or retired or otherwise separated from employment after a school entity has received information of alleged misconduct under the Educator Discipline Act.

6. Who is the subject of a report filed by the school entity under 23 Pa. C.S. Ch. 63 (relating to child protective services).[6]

7. Who the school entity knows to have been named as a perpetrator of an indicated or founded report under 23 Pa. C.S. Ch. 63.

An educator who knows of any action, inaction or conduct which constitutes sexual abuse or exploitation or sexual misconduct under the Educator Discipline Act shall report such misconduct to the Pennsylvania Department of Education on the required form, and shall report such misconduct to the Superintendent and his/her immediate supervisor, within fifteen (15) days of discovery of such misconduct.[5]

All reports submitted to the Pennsylvania Department of Education shall include an inventory of all information, including: documentary and physical evidence in possession or control of the school relating to the misconduct resulting in the report.[5]

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

An educator who is arrested or convicted of a crime shall report the arrest or conviction to the Superintendent or designee, within seventy-two (72) hours of the occurrence, in the manner prescribed in Board policy.[5][7][8]

Failure to comply with the reporting requirements may result in professional disciplinary action.[9]

## **Guidelines**

### Investigation

School officials shall cooperate with the Pennsylvania Department of Education during its review, investigation, or prosecution, and shall promptly provide the Pennsylvania Department of Education with any relevant information and documentary and physical evidence upon request.[10]

Upon receipt of notification in writing from the Pennsylvania Department of Education, the Superintendent or designee shall investigate the allegations of misconduct as directed by the Department and may pursue its own disciplinary procedure as established by law or by collective bargaining agreement.[10]

Within ninety (90) days of receipt of notification from the Pennsylvania Department of Education directing the school district to conduct an investigation (extensions may be requested), the Superintendent or designee shall report to the Department the outcome of its investigation and whether it will pursue local employment action. The Superintendent or designee may make a recommendation to the Department concerning discipline. If the district makes a recommendation concerning discipline, it shall notify the educator of such recommendation.[10]

### Confidentiality Agreements

The district shall not enter into confidentiality or other agreements that interfere with the mandatory reporting requirement.[10]

### Confidentiality

Except as otherwise provided in the Educator Discipline Act, all information related to any complaint, any complainant, or any proceeding related to discipline shall remain confidential unless or until public discipline is imposed.[11]

### Immunity

Any person who, in good faith, files a complaint or report, or who provides information or cooperates with the Pennsylvania Department of Education or Professional Standards and Practices Commission in an investigation or proceeding shall be immune from civil liability. The district also is immune from civil liability for the disclosure of information about the professional conduct of a former or current employee to a prospective employer of that employee.[12]

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Legal

1. 22 PA Code 235.1 et seq

2. 24 P.S. 2070.1a

3. 24 P.S. 2070.1b

4. 23 Pa. C.S.A. 6303

5. 24 P.S. 2070.9a

6. Pol. 806

7. 24 P.S. 111

8. Pol. 317

9. 24 P.S. 2070.9c

10. 24 P.S. 2070.11

11. 24 P.S. 2070.17b

12. 24 P.S. 2070.17a

23 Pa. C.S.A. 6301 et seq

24 P.S. 2070.1a et seq

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 6

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Ashley B. Bennett

11 Montella Circle
Pottstown, PA 19464
ashbennett010@gmail.com

---

July 9, 2020

Dear North Penn,

I will not sign the agreement you offered me. I have always been a good employee and have represented North Penn well for eight years. I shared a post about a public political issue on my personal Facebook page. It had nothing to do with my employer or job.

It was explained to me by you during several meetings that my only option was to resign immediately and that there would be no second chance. I do not even really understand what I was suspended for, what I am being investigated for, and why I am facing termination. All I know is that I'm terrified and that my life has been ruined.

I was told by Mia Kim, the Director of HR, in no uncertain terms that I had to resign because I would otherwise be terminated and no one would ever look at my resume again. She also said "If I were your sister, I would tell you to look for another job." I was also told by Kim that if I go before the board to defend myself I would never be able to "come back" from this professionally and personally. I was also told by Kim that I need to consider "Who the board is" and how it would "ruin my future" if I tried to contest what was happening to me.

You have forced me out of a position I love and care about: helping special education students. You have forever destroyed my career, reputation and ability to gain future employment. This district has baselessly vilified me in the community, among parents, and among my co-workers. This has been the most devastating moment of my life.

I am truly shattered that my time at North Penn had to end this way.


Sincerely,

Ashley B. Bennett

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 7

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and d



**NORTH PENN**
**School District**

Ms. Ashley Bennett
11 Montella Cir.
Pottstown, PA 19464

July 9, 2020

**VIA CONFIDENTIAL ELECTRONIC MAIL AND CERTIFIED US MAIL**

Dear Ms. Bennett,

I am in receipt of your email from this morning.  I still consider it to be in your best interest to resign under the circumstances.  However, as I have informed you previously, you have the right to be heard before the Board of School Directors.  Therefore, I want to afford you the due process.  The process first requires a Loudermill proceeding where you will be afforded the opportunity to hear the evidence against you regarding your Facebook posting and its impact on your current role and the operation of the District.

The Loudermill proceeding has been scheduled for Monday, July 13, 2020, at 8:30 am.  It will be held virtually in a Google meeting (Meeting ID meet.google.com/wvo-ifue-mgk, Phone Numbers (US)+1 813-482-9804 PIN: 428 951 792#), and Dr. Arney will be in attendance.  Please be advised that this proceeding does not include your attorney; however, you may bring an Act 93 member.

At the proceeding, you will be given an opportunity to provide your explanation with regard to the evidence against you.  Based upon your explanation, a decision will be made whether or not to discipline you, suspend you without pay and benefits, and/or terminate your employment with the district.  If the termination is chosen, District Administration will prepare written charges against you that will be received and considered at a meeting of the Board.

Also, I am seeking clarification regarding your email from this morning.  You wrote that you will not sign the agreement but you indicated ending your employment with North Penn School District.  Did you intend the email to be your resignation from the District?  If this is the case, Loudermill proceeding will not be necessary.  Please let me know.

401 East Hancock Street, Lansdale, PA 19446 ▪ (215)368-0400



Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

You will continue to be on administrative leave with pay until further notice.  If you have any further questions, please contact me at 215-853-1040.  Thank you for your attention and cooperation.


Sincerely,


J. Mia Kim, Ed.D.
Director of Human Resources

Cc: Dr. Sean Arney, Interim Director of Special Education

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 13

2020-13927-0001 Complaint In, Page 144

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## AJ Fluehr

| | |
|---|---|
| **From:** | Ashley Bennett <ashbennett30@yahoo.com> |
| **Sent:** | Tuesday, July 14, 2020 2:36 PM |
| **To:** | Francis Alexander Malofiy; AJ Fluehr |
| **Subject:** | Fw: CONFIDENTIAL - follow-up to this morning's Loudermill |

Omg she contacted me again.

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Tuesday, July 14, 2020, 2:30 PM, J.Mia Kim <kimj13@npenn.org> wrote:

Dear Ms. Bennett,

As I indicated in the email yesterday, we had scheduled another Loudermill proceeding this morning.  Dr. Arney and I were present, and, again, you did not attend.  Based upon the communication that we've had as well as correspondence that the District received from your attorney, it is clear that you wish to resign from the North Penn School District.  Therefore, your resignation, effective July 14, 2020, will be submitted to the Board for consideration at a board meeting.

With regards to getting your personal belongings and returning District issued equipment and materials such a laptop, ID badge, key card, any materials, etc., we can schedule a time for Friday, July 24, 2020.  Please let me know the specific time you prefer.

Thank you for your attention.

Sincerely,
J. Mia Kim, Ed.D.
Director of Human Resources
North Penn School District
401 E. Hancock Street
Lansdale, PA 19446
215-853-1040  Phone

CONFIDENTIALITY NOTICE:
The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure.  If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments.  If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## AJ Fluehr

| | |
|---|---|
| **From:** | Ashley Bennett <ashbennett30@yahoo.com> |
| **Sent:** | Friday, July 17, 2020 6:15 PM |
| **To:** | Francis Alexander Malofiy; AJ Fluehr |
| **Subject:** | Fw: Pay information |

She contacted me directly again...

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Friday, July 17, 2020, 5:56 PM, J.Mia Kim <kimj13@npenn.org> wrote:

Dear Ms. Bennett,

As I indicated in the email on July 14, 2020, based upon your absence at another Loudermill proceeding and the communication that we've had as well as correspondence that the District received from your attorney, it was clear that you wished to resign from the North Penn School District. Therefore, your resignation, effective July 14, 2020, was submitted to the Board for consideration and accepted at the July 16, 2020 board meeting.

Below is the worksheet of your pay for the 2020-2021 fiscal year. With July 14, 2020, as the effective date of your resignation, you were overpaid by $20.17 as of the July 3, 2020 pay.  Therefore, no pay was issued today.  However, you have unused vacation days, which will be calculated and paid into a 403(b) account.  Since you have a Roth 403(b) account established, we will use this account.

### PAYROLL'S CONTRACT PAYOFF WORKSHEET

| | |
|---|---|
| **NAME:** | **ASHLEY BENNETT** |
| **POSITION:** | **SPECIAL ED SUPERVISOR** |
| **LOCATION:** | **ESC** |
| | |
| **CONTRACTED SALARY 20/21 YR:** | **$136,624.00** |
| **PAY RATE :** | **$523.46** |
| **HOURS PER DAY:** | **7.50** |
| **NUMBER OF DAYS WORKED 7/1/20 -7/14/20 :** | **10** |
| **TOTAL GROSS PAY OWED FOR 10 DAYS :** | **$5,234.60** |
| | |
| **TOTAL GROSS PAY OWED FOR 10 DAYS :** | **$5,234.60** |
| **PAID AS OF THE 7/3/20 PAY PERIOD:** | **$5,254.77** |
| **TOTAL GROSS PAY OVERPAID :** | **($20.17)** |

As communicated on July 14, 2020, we can schedule a time on Friday, July 24, 2020, to get your personal belongings and return District issued equipment and materials such a laptop, ID badge, key card, any materials, etc.  Please let me know the specific time you prefer.

Thank you for your attention.

1

Case# 2020-13927-1 Docketed at Montgomery County Prothonotary on 10/23/2020 2:34 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Sincerely,
J. Mia Kim, Ed.D.
Director of Human Resources
North Penn School District
401 E. Hancock Street
Lansdale, PA 19446
215-853-1040  Phone

*CONFIDENTIALITY NOTICE:*
*The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure.  If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments.  If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*