# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY B. BENNETT, | : | Civil Action No. 20-05841-AB |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| NORTH PENN SCHOOL DISTRICT | : | Jury Trial Demanded |
| BOARD OF SCHOOL DIRECTORS, et al., | : | |
|     Defendants, | : | |

| | | |
|---|---|---|
| AMY L. SACKS | : | Civil Action No. 20-6155-JS |
| | : | |
|     v. | : | |
| | : | Jury Trial Demanded |
| PERKIOMEN VALLEY SCHOOL | : | |
| DISTRICT, et al. | : | |

## DEFENDANTS' NORTH PENN SCHOOL DISTRICT, ET AL., MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS BENNETT'S AND SACKS' MOTION TO CONSOLIDATE PURSUANT TO F.R.C.P. 42(2) AND L.R.40.1

I.    Introduction

    Francis A. Malofiy, Plaintiffs' state court lawyer, filed two separate lawsuits in separate Courts of Common Pleas for two different counties as counsel for two separate Plaintiffs. On separate days, separate defense counsel removed each case to this Court. The cases have different, unrelated, Plaintiffs; different, unrelated Defendants; took place in separate townships; involve entirely separate factual events; involve not one of the same individuals or entities. Each is subject to an intensively fact-specific analysis, under the applicable Supreme Court-level law.

    A new lawyer from Malofiy's firm along with new co-counsel, who are now representing Plaintiffs in both actions, have moved that – although the firm filed these as separate state court cases a few months ago – they be consolidated here. As set forth below, Plaintiffs' Motion for Consolidation lacks all merit. Defendants in the case of <u>Bennett v. North Penn School District, et al.</u> therefore respectfully request that the Motion be denied.

II. <u>Legal Standards</u>

    A. <u>Federal Rule of Civil Procedure 42</u>

Federal Rule of Civil Procedure 42(2) provides, in relevant part that, when actions involving a common question of law or fact are pending before a federal court, the court may consolidate the actions. The moving party bears the burden of proof in a motion for consolidation. <u>McClenaghan v. Turi</u>, Civ. A. 09-5497, 2011 WL 4346339 at \*\*1-2 (E.D. Pa. Sep. 16 2011), <u>citing</u> <u>Farahmand v. Rumsfeld</u>, Civ. A. 02-1236, 2002 WL 31630709 at \*1 (E.D. Pa. Nov. 20, 2002).

The court has broad discretion when determining whether consolidation is appropriate. <u>Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.</u>, 339 F.2d 673, 675 (3d Cir. 1964), *cert. denied* 382 U.S. 812 (1956); <u>Burton v. Ozburn Hessey Logistic</u>, 615 F. Appx. 84, 87 (3d Cir. 2015); <u>McClenaghan</u>, <u>supra</u>; <u>Richardson v. U.S. Airways Group, Inc.</u>, Civ. A. 00-5052, 2001 WL 849701 at \*1 (E.D. Pa. Jul. 16, 2001).

The threshold requirement for determining whether consolidation is permissible is whether there exists a common question of law or fact. <u>McClenaghan</u>, <u>supra</u>, <u>citing</u> <u>Farahmand</u>, <u>supra</u>. Consolidation must be denied where this is absent. <u>McClenaghan</u>, <u>supra</u>. Nevertheless, the presence of common questions of law or fact does not compel consolidation. <u>Farahmand</u>, <u>supra</u>, <u>citing</u> <u>Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.</u>, 149 F.R.D. 65 (D. N.J. May 14, 1993); <u>Ingris v. Borough of Caldwell</u>, Civ. A. 214-0855-ESJAD, 2014 WL 12910951 at \*2 (D. N.J. Jul. 21, 2014).

Rather, a court may consolidate cases if, in its discretion, "consolidation would facilitate the administration of justice." <u>Farahmand</u>, <u>supra</u>, <u>quoting</u> <u>Waste Distillation Tech., Inc. v. Pan American Resources, Inc.</u>, 775 F. Supp. 759, 761 (D. Del. 1991). The decision as to whether consolidation is appropriate embraces concerns of judicial economy, as well as judicial discretion. <u>In re Lucent Techs. Inc. Sec. Litig.</u>, 221 F. Supp. 2d 472, 480-481 (D. N.J. 2001).

Where considerations of judicial economy favor consolidation, any savings of time and effort must be balanced against the inconvenience, delay, or expense that might result from simultaneous disposition of the separate actions. Ingris, supra. Wherever there is a realistic concern that consolidation could cause delay, confusion and prejudice, issues of judicial economy become moot, and the motion to consolidate should be denied. Richardson, 2001 WL 849701 at *2.

B. Local Rule 40.1

In their Motion for Consolidation, Plaintiffs Bennett and Sacks have cited not only Fed. R. Civ. P. 42(2), but also Local Rule 40.1 of the Local Rules of Civil Procedure for the Eastern District of Pennsylvania. Local Rule ("LR") 40.1 is not a rule implementing Fed. R. Civ. P. 42. It is, instead, a rule regarding the administration of cases in this Court.

Although Local Rule 40.1 permits a judge to join related cases, it defines related cases as follows: "Civil cases are deemed related when a case filed relates to property included in another suit, or involves the same issue of fact or grows out of the same transaction as another suit, or involves the validity or infringement of a patent involved in another suit." LR 40.1(b)(3). Related issues of law are not mentioned.

As this Court has explained, the question under LR 40.1 is not whether the cases have a logical relationship at some generalized level: it is whether they involve the same issues of fact or arise out of the same transaction. Moore v. Rite Aid Hdqtrs Corp., Civ. A. 13-1515, 2013 WL 4833854 at **2-3 (E.D. Pa. Sep. 11, 2013), quoting Meijer, Inc. v. Biovail Corp., Civ. A. 08-2431, 2008 WL 2944648 at *3 (E.D. Pa. Jul. 31, 2008).

C. Factual Background

The facts surrounding Ashley Bennett's lawsuit are set out at length elsewhere, so they will be treated concisely here. On June 24, 2020, one month after George Floyd died, Bennett reposted on her Facebook page a long, rambling post attacking Black Lives Matter in racially problematic terms. Compl. at ¶ 20.[1] At the time Bennett posted this, she was employed as a special education supervisor by the North Penn School District (or "North Penn"). Her post was widely viewed as

---

[1]
> I'm confused right now. I see signs all over saying #BlackLivesMatter. I'm just trying to figure out WHICH black lives matter. It can't be the unborn black babies – they are destroyed without a second thought. It's not black cops – they don't seem to matter at all. It's not my black #Conservative friends. They are told to shut the f*ck up if they know what's best for them by their black counterparts. It's not black business owners. Their property, their business and their employees don't mean anything. So which black lives matter again?!? I can't keep up. I can't. I'm exhausted trying to figure out what we're all supposed to do, believe, and be offended by, and outraged by next. … Just 45 days ago protests weren't "essential" and were considered criminal, selfish, and a murderous activity because of the #Coronavirus. Today they are gloriously critical and celebrated. All of the obvious criminal and murderous activities are simply ignored. If you protest about lock-downs for freedom, you are selfish and you will spread a virus. If you protest, loot, and riot for social justice, you are a warrior and immune from the virus. … Then came social justice, and social distancing was suddenly no more. #Democrat governors and mayors marched arm-in-arm with protesters. A thousand people at three memorials for someone they never even met. It's a matter of "respect." But you couldn't have a funeral for a family member. Black Lives Matter. Of course they do. But then multiple black police officers and individuals were killed during the "peaceful protests". I don't see any outrage. Black individually owned businesses were burned to the ground. Silence. Deadliest weekend in Chicago, virtually all black on black violence. The #MainstreamMedia is silent. NOTHING!! I'm confused now. Look at the data. NO, not that data. Do the math. No, you can't do the math like that. Only the experts can understand the data and the math. And Black Lives Matter protesters REFUSE to look at or discuss the #FBI Crime Statistics – because the data doesn't support their claims of systemic racism against blacks. Just listen to the black community leaders. No, not them, only the radicals are right. … Remember. It's an election year and #liberals are desperate, don't put anything past them. They hate #PresidentTrump more than they love #America and they don't care how much damage they do to our country. So for now I pray.I pray God will heal our land and Bless the United States of America.

offensive by persons within the North Penn community, with many expressing profound distress and concern directly to North Penn School District officials.

The magnitude of the disturbance to North Penn caused by Bennett's post is not yet in evidence. Bennett has, however, conceded that numerous community members complained about her, and called for her employment to be terminated. Compl. ¶ 23. She has also conceded that community upset was so strong that articles appeared in the independent media about her actions. Compl. ¶ 34.

Consequently, on June 25, 2020, North Penn placed Bennett on paid administrative leave, pending an investigation. Compl. ¶ 26. North Penn also posted a statement on its website, in which it did not name Bennett, but advised that the Facebook comments brought to its attention did not align with its core values. Compl. ¶ 26. North Penn's statement also affirmed its own commitment to "acknowledge, respect, understand, and celebrate the dynamics of racial and cultural difference." Compl. ¶ 32.

On three occasions in the following week, Bennett met with North Penn's Director of Human Resources, for informal discussions regarding how Bennett would proceed. Compl ¶ 52. The Human Resources Director advised Bennett to resign, but also made Bennett fully aware that she had the right to appear at a due process hearing where she would hear the charges against her, and could respond to them, as required by Cleveland Board of Education v. Loudermill, 401 U.S. 532 (1985). Compl. ¶¶ 59-60.

Despite this, Bennett wrote to the Human Resources Director: "You forced me to resign." Compl. ¶ 107. In response, the Human Resources Director assured Bennett that she was still a North Penn employee and that the decision whether to resign was in her own hands. Compl. ¶

109. North Penn scheduled a <u>Loudermill</u> hearing for Bennett, and then a second <u>Loudermill</u> hearing, when Bennett failed to appear at the first one. Compl. ¶¶ 113, 121.

Even knowing of her scheduled <u>Loudermill</u> hearings, Bennet continued to repeat – sometimes through counsel – that she had been "forced to resign." Compl. ¶¶ 107, 121. After the second <u>Loudermill</u> hearing, which Bennett also chose not to attend, North Penn informed Bennett that it would construe her behavior as a wish to resign. Compl. ¶ 121. Because Bennett did not contest this, her resignation was accepted at a meeting of the Board of Directors, and Bennett was paid through July 14, 2020, the date of the second <u>Loudermill</u> hearing that she did not attend. Compl. ¶¶ 121-122.

The present case was filed in the Court of Common Pleas for Montgomery County on or about October 23, 2020. As noted above, North Penn removed it to this Court, as permitted by 28 U.S.C. § 1441. In her Complaint, Bennett alleges the violation of her First Amendment rights to free speech and free association, and of her right to due process. Although she was subject only to a temporary, paid leave, she claims that she was constructively discharged.

It now appears that, several weeks after filing Bennett's Complaint, Bennett's counsel filed a Complaint in the Court of Common Pleas of Philadelphia County for Amy Sacks, against the Perkiomen Valley School District. Sacks Complaint, attached as Exhibit B to Plaintiffs' Motion to Consolidate. Ms. Sacks, an elementary school principal in the Perkiomen Valley School District, had also made Facebook posts that upset her community. Sacks' case, unlike Bennett's, involves a number of different posts, none of which mentioned the Black Lives Matter movement or the African American community. See Plaintiffs' Mot. to Consolidate Ex. B, Sacks Compl. (collecting posts and attached as Exhibit 1 to Sacks Complaint).

Thus, the two cases concern employees of school districts who caused disruption in their respective school districts by posting disturbing comments on Facebook, although with completely distinct content. The Plaintiffs have the same lawyer, as well, and he has asserted similar claims in both cases. The actual factual underpinnings of each claim, however, have no mutual elements, and do not concern any common event. Because the Plaintiffs are different, the Defendants are different, the Facebook posts are different, and the actual occurrences are different in each case, the legal analysis will be different as well.

III.   Argument

A.   There is No Common Issue of Law

Both of these cases will involve the application of First Amendment law, which balances the right of a public employee to express opinions on matters of public concern against a public employer's interest in promoting the efficiency and effectiveness of the services it performs. Garcetti v. Ceballos, 574 U.S. 410 (2002); Connick v. Meyers, 461 U.S. 138 (1983); Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty. Illinois, 301 U.S. 563 (1968). They will also require recourse to the law pertaining to constructive discharge. Judge v. Shikellamy Sch. Dist., 905 F.3d 122 (3d Cir. 2018).

This is Plaintiffs' strongest argument for consolidation. Really, it is their only argument, since there is no conceivable link of fact between Sacks and Bennett. Nevertheless, Plaintiffs are not the first to argue for consolidation based on common legal claims. This argument has been soundly rejected by numerous courts in this Circuit, and in other Circuits.

Turning first to the Third Circuit, it is well established that the fact that two cases assert the same theories of recovery does not constitute a "common question of law" warranting consolidation. U.S. ex rel. Boise v. Cephalon, Civ. A. 08-0287, 2014 WL 6676629 at *2 (E.D. Pa. Nov. 25, 2014); Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65, 81 (D.N.J.

7

1993); Liqui-Box Corp. v. Reid Valve Co., Civ. A. 85-2355, 1989 WL 43180 at *1 (W.D. Pa. Oct. 11, 1989).

This has also been recognized outside the Third Circuit. The United States District Court for the District of Maryland has written:

> [I]dentical legal theories do not constitute a common question of law. Gardner v. Cardinal Constr., Inc., No. C13-2001, 2013 U.S. Dist. LEXIS 101396 at *5-6 (N.D. Iowa July 18, 2013); Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65, 81 (D.N.J. 1993) ("the mere fact that two cases assert similar theories of recovery does not constitute a 'common question of law' so as to warrant consolidation"); Walter E. Heller, & Co. v. Tuscarora Cotton Mill, 1974 U.S. Dist. LEXIS 13035, at *1-2 (M.D.N.C. Mar. 29, 1974) (noting dearth of cases "wherein consolidation has been ordered solely on the basis of identical legal theories"). Thus, for example, resolving whether fraud occurred in one case will not resolve whether fraud occurred in another case.

CX Reinsurance Co. v. Leader Realty Co., Civ. A. CCB-15-3056, 2016 WL 6696050 at *2 (D. Md. Nov. 15, 2016). See also Flintkote v. Allis-Chalmers Corp., 73 F.R.D. 463, 465 (S.D.N.Y. 1977).

In the same way that "resolving whether fraud occurred in one case will not resolve whether fraud occurred in another case," resolving how the Garcetti-Pickering balancing test applies to Sacks will not resolve how it applies to Bennett. Indeed, Plaintiffs' argument has been rejected in cases alleging violation of the right to free speech under the First Amendment of the United States Constitution. In Bakalar v. Dunleavy, Civ. A. 19-00025 JWS, 2019 WL 1781404 (D. Alaska Apr. 22, 2019), the United States District Court for the District of Alaska recently refused to consolidate two cases even though all the plaintiffs argued that they were discharged by the state's governor in violation of their rights to free speech and political association under the First Amendment.

8

Similarly, the United States District Court for the Eastern District of California declined to consolidate First Amendment cases brought by a single plaintiff against different defendants. Dixon v Larosa, Civ. A. 10-1441 GEB KJN, 2011 WL 109143 (E.D. Cal. Jan. 12, 2011). Also relevant is Cagle v. Ryan, Civ. A. CV1603912-PHX- JAT-JFM, 2018 WL 2688775 (D. Ariz. Jun. 5, 2018). There, too, consolidation was denied, although the plaintiffs in both cases asserted violations of the Eighth Amendment. 2018 WL 2688775 at *2.

Plaintiffs rely heavily on Moore v. Rite Aid, supra, where two class actions were joined under LR 40.1, although the plaintiffs and defendants were different. In Moore, the two joined cases addressed an identical legal issue: whether LexisNexis's ESTEEM employment evaluations violated provisions of the Fair Credit Reporting Act. 2018 WL 4833854 at *3. One case was a class action with plaintiffs suing LexisNexis, and the other was a class action suing a large employer that used ESTEEM. Id. at *1. The Moore court, however, explained that a "logical relationship at some generalized level" would not have resulted in joinder. Id. at *2, citing Meijer, Inc. v. Biovail Corp., Civ. A. 08-2431, 2008 WL 2944648 at *3 (E.D. Pa. July 31, 2008).

The Sacks case and the Bennett case can have no more than a generalized level of similarity. This is because even a superficial look at the relevant law reveals that the answer to the question, "can a school district employee be subjected to discipline for her social media posts expressing a personal opinion on an issue of public concern?" is "maybe:" the answer depends on a specific and fact-intensive balancing test. Connick, 461 U.S. at 150. Because the outcome in each case will depend on its own balancing test, the Sacks case and the Bennett case assert the same legal theories, but do not present the same legal issue.

B. There is No Common Issue of Fact

Where consolidation is permitted, it is generally in cases involving "the same plaintiff, the same defendants, and/or identical or similar claims arising out of the same incident or common set of facts." J.C. v. Ford, Civ. A. 13-4066, 2017 WL 4155086 at **1-2 (E.D. Pa. Sep. 19, 2017). Courts counsel against the consolidation of two or more cases when the respective plaintiffs have "individualized backgrounds and experiences." Richardson, 2001 WL 849701 at *2, citing Bernardi v. City of Scranton, 101 F.R.D. 411, 414 (M.D. Pa. 1983) (consolidation denied where individualized evidence would be necessary as to the firing of each of the five plaintiffs, who were "discharged at three different times during 1982").

Cases in which a common set of facts has been found are those arising from the same set of facts. CX Reinsurance Co., supra, citing Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1463-4 (4th Cir. 1996);; Jacobs v. Castillo, 612 F. Supp. 2d 369, 372-3 (S.D.N.Y. 2009); Jones v. Qwest Commc'ns Int'l, Inc., Civ. A.06-3523MJDAJB, 2007 WL 4179385 at *3 (D. Minn. Nov. 20, 2007); Internet Law Library, Inc. v. Southridge Cap. Magm't. LLC, 208 F.R.D. 59, 60-62 (S.D.N.Y. 2002); Allfirst Bank v. Progress Rail Servs. Corp., 178 F. Supp. 2d 513 515-16 (D. Md. 2001).

The cases at issue here do not arise from the same set of facts in any respect. The social media posts differ in material ways. Bennett's case involves one Facebook post attacking Black Lives Matter, and asks with feigned befuddlement *why* someone would attend a memorial for "someone they have never even met" (i.e., George Floyd), when "unborn black babies" are "destroyed without a second thought." See footnote 2, infra. Outside of its references to Black Lives Matter, Bennett's post mentions the word "black" twelve times. Id. Sacks' case involves multiple posts, none of which mentions Black Lives Matter, or the African American community.

Further, the Plaintiffs have nothing but individualized backgrounds and experiences. There is no allegation that Bennett and Sacks knew each other, or had even heard of each other, before this Motion was filed. Certainly, there is no suggestion that the North Penn School District and the Perkiomen Valley School District interacted, or conferred with each other on their social media policies, or as to how to handle their respective personnel issues. Instead, Plaintiffs were employed by different School Districts and posted entirely different social media comments, which led to entirely separate community reaction, and individual interactions between each Plaintiff and her employer. As set forth in Richardson, supra, consolidation is inappropriate in these circumstances.

  C.  Judicial Economy

As explained above, a common question of fact or law is a threshold requirement for consolidation under Fed. R. Civ. P. 42. McClenaghan, 2011 WL at \*\*1-2; Farahmand, 2002 WL at \*1. Consolidation must be denied when they are absent. Id. They are absent here. Similarly, the lack of a common question of fact renders joinder under LR 40.1 unavailable, since there is no question of a "same transaction" or patent. LR 40.1(b)(3). As such, there is no real need to discuss judicial economy, or to balance it against the certainty of juror confusion and prejudice to the parties.

Nevertheless, it can be noted that judicial economy does not favor consolidation. Plaintiffs have not even argued that it does. In the short Memorandum of Law attached to their Motion, Plaintiffs focus on convincing the Court that consolidation is possible despite the lack of a common element to the cases. They do not argue that consolidation would be desirable, and indeed, it would not be.

In Bennett, Plaintiff named thirteen individual Defendants, as well as the North Penn School District, and its Board of Directors. Exhibit A to Plaintiffs' Motion. In Sacks, twelve individual Defendants are named, along with the Perkiomen Valley School District, its Board of

11

Directors, and the law firm of Fox Rothschild, LLP. Exhibit B to Plaintiffs' Motion. There is therefore a possibility of two separate sets of twelve fact witnesses or more, each set requiring separate discovery because the facts of each case are completely distinct. Accordingly, discovery motions will pertain to one set of discovery or the other, not to both. Any damages witness would have to address each plaintiff separately.

As in Bakalar, "consolidation would not achieve any economy with respect to hearing testimony and evaluating exhibits." 2019 WL 1781402 at *2. Thus, as in Bakalar:

> It is not clear that one complicated trial would take significantly less time than two simpler trials. The only extra time required for two trials would be the need for two jury selections. Even there, each jury selection would be simpler if the two cases are not consolidated, so the extra time would be negligible.

Id. The verdict sheet would also be immensely complex, since, as noted in CX Reinsurance, the application of the same law does not simplify two matters with two sets of facts. 2016 WL 6696050 at *2 ("Thus, for example, resolving whether fraud occurred in one case will not resolve whether fraud occurred in another case").

In short, a judge trying Bennett and Sacks as a consolidated case would really be trying two cases with the same timeline. This would not forward the purpose of Rule 42, or LR 40.1, which is to "promote judicial efficiency." Moore, 2018 WL 4833854 at *2.

D. Jury Confusion and Prejudice to the Parties

This Court has said: "Wherever there is a realistic concern that consolidation could cause delay, confusion and prejudice, the judicial economy which exists in some case consolidations becomes moot and the motion to consolidate should be denied." Richardson, 2001 WL 849701 at *2. Further, "where the evidence in one case is not relevant to the issues in the other, consolidation would create a likelihood of prejudice by confusing the issues." Liberty Lincoln Mercury, 149 F.R.D. at 81; and see Farahmand, 2002 WL 31630709 at *2, Fahie v. Ferguson, Civ. A. ST-16-

638, 2017 771194 at *2 (V.I. Super. Ct. Feb. 23, 2017, and Russell v. United States, Civ. A. 12-0407, 2012 WL 2792239 at *2 (M.D. Pa. Jul. 9, 2012), all citing Liberty Lincoln Mercury, supra.

Jury confusion is inevitable if Bennett and Sacks are consolidated. What jury member could hear twenty or more fact witnesses, and remember, in the end, which witness belonged to which plaintiff – or which memorable or telling statement belonged to which witness? This confusion could be mitigated in part by having all the Sacks witnesses testify first, and then having the jury deliberate; after which, the jury would be recalled to hear the Bennett witnesses. This, of course, is not consolidation. It is called "holding two separate trials."

There is no way of knowing, moreover, which party would be prejudiced by this unavoidable jury confusion. It might just as well prejudice the Plaintiffs as the Defendants. If one Plaintiff were to make an offensive or unhinged statement on the witness stand, this might easily injure the other Plaintiff.

Consider, as well, the verdict sheet in this prospective double-case. It would be immensely long. As emphasized above, the determination whether a public employee's statement on a matter of public concern was entitled to First Amendment Protection requires the application of a very specific, fact-intensive, balancing test under Connick, Garcetti, and Pickering. For this reason, the specific facts of each case are crucial to its resolution. There would be very few, if any, overlapping questions on the verdict sheet. This problem could be addressed by providing the jury with separate verdict sheets, one for Bennett and one for Sacks. Here again, we see that the jury would simply be deciding two separate cases which were artificially joined for no apparent reason.

Thus, with reference to Richardson, this Motion should be denied because of the certainty of juror confusion and prejudice to the parties. Fortunately, this will not be problematic for the Court, since "the judicial economy which exists in some case consolidations" is absent here.

E.     Judge-Shopping

Judge shopping has been identified as the primary danger in permitting joinder under LR 40.1. In Moore, this Court wrote:

> Courts interpret the rule [L.R. 40.1] narrowly because the selection of a random judge "encourages transparency, fairness, and avoiding the appearance of arbitrariness." Sherfey v. Johnson & Johnson, No. 12-4162, 2012 WL 3550037, *2 (E.D. Pa. Aug. 17, 2012); see also Ignatyev v. Chertoff, No. 08-1547, 2008 WL 1757841, *2 (E.D. Pa. Apr. 16, 2008) ("[L]abeling a case as 'related' in order to be assigned to a more favorable judge is certainly not what was intended by Local Rule 40.1.").

2013 WL 4833854 at *2. Also see Meijer, Inc. v. Biovail Corp., Civ. A. 08-2431, 2008 WL 2944648 at *2 (E.D. Pa. Jul. 31, 2008), quoting Ignatyev: "Rule 40.1 should be construed narrowly, as preservation of the random assignment system is of great value in assuring transparency in the assignment of judges to all parties."

Consolidation under Federal Rule 42 has also been used to judge shop. In Dixon, supra, the plaintiff acted *pro se* and may simply have been naïve in naming as one of his reasons for seeking consolidation "his disagreement with the manner in which [one case] [was] being handled" by the assigned judge. 2011 WL 109143 at *2. The District Court for the Eastern District of California warned him, nevertheless, that this could be construed as judge shopping, "which is conduct which abuses the judicial process." Id. (internal citation omitted). It observed: "Such conduct can result in the imposition of sanctions, including a recommendation that this action be dismissed." Id.

Other examples of judge-shopping with Federal Rule 42 include Bozgoz v. Haynes, Civ. A. 19-2790, 2020 WL 4462980 at *4 (D.D.C. Aug. 4, 2020) ("This is not Plaintiffs' first foray at judge shopping. They have sought …. to consolidate the portion of the case pending before Judge Jackson with the portion of the case pending before the undersigned … ."); DataTern, Inc. v.

MicroStrategy, Inc., Civ. A. 11-11970, 2018 WL 6310274 at *1 (D. Mass. Dec. 3, 2018) (calling judge-shopping "the efforts to consolidate the cases in front of a single judge that DataTern apparently believed would be desirable."); U.S. v. Sampson, Crim. A. 01-10384, 2015 WL 13333677 at *12 (D. Mass. Nov. 13, 2015) ("I denied Bulger's request [to consolidate the second case with my case] in meaningful measure because my taking the case from [the judge in the second case] would have encouraged the perception that Bulger had successfully manipulated the system to select a judge he preferred.") (brackets in original); Gibson v. Am. Cyanamid Co., Civ. A. 07-C-864, 2010 WL 3062145 at *3 (E.D. Wis. Aug. 2, 2010) ("While it is not for this Court to decide, plaintiffs' attempt to consolidate four months after Judge Adelman denied consolidation, and only fifteen days after an unfavorable dispositive ruling, seems like a transparent judge-shopping strategy.").

It would be imprudent to speculate as to why Plaintiffs and/or their counsel would prefer one judge over another here, if indeed they do. However, this Motion to Consolidate has no apparent merit, and provides no appreciable benefit to the moving parties themselves. The possibility that the Motion was motivated by judge shopping therefore deserves consideration.

IV.     Conclusion

In accordance with the foregoing, Defendants in the case of <u>Bennett v. North Penn School District, et al.</u> respectfully request that Plaintiffs Motion to Consolidate Pursuant to Fed. R. Civ. P. 42 and LR 40.1 be denied.

                                          Respectfully Submitted,

                                          SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: <u>December 29, 2020</u>     By: <u>/s/Karl A. Romberger, Jr.</u>
                                                  Karl A. Romberger, Jr., Esquire, PA60636
                                                  Laura Heller Isenberg, Esquire, PA64833
                                                  Justin D. Barbetta, Esquire, PA318221
                                                  331 Butler Avenue, P. O. Box 5069
                                                  New Britain, Pennsylvania  18901
                                                  (215) 345-9111 – Office
                                                  (215) 348-1147 – Facsimile
                                                  Attorneys for Defendants,
                                                  North Penn School District, et al.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY B. BENNETT,<br>    Plaintiff, | : <br> : <br> : | Civil Action No. 20-05841-AB |
| v. | : <br> : | |
| NORTH PENN SCHOOL DISTRICT<br>BOARD OF SCHOOL DIRECTORS, et al.,<br>    Defendants, | : <br> : <br> : | Jury Trial Demanded |
| AMY L. SACKS | : <br> : | Civil Action No. 20-6155-JS |
| v. | : <br> : <br> : | Jury Trial Demanded |
| PERKIOMEN VALLEY SCHOOL<br>DISTRICT, et al. | : <br> : | |

## **CERTIFICATE OF SERVICE**

    I, Karl A. Romberger, Jr., Esquire, counsel for the Defendants, hereby certify that a true and correct copy of the foregoing DEFENDANTS' NORTH PENN SCHOOL DISTRICT, ET AL., MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS BENNETT'S AND SACKS' MOTION TO CONSOLIDATE PURSUANT TO F.R.C.P. 42(2) AND L.R.40.1 is available and was served through the Court's ECF filing upon counsel of record, with a courtesy copy emailed to:

James E. Beasley, Jr., Esquire  
The Beasley Firm, LLC  
1125 Walnut Street  
Philadelphia, PA 19107  

Alfred Fluehr, Esquire  
Francis Alexander, LLC  
280 N. Providence Road, Suite 1  
Media, PA 19063  

Michael Eidel, Esquire  
Fox Rothschild, LLP  
2000 Market Street, 20th Floor  
Philadelphia, PA 19103  

Joseph J. Santarone, Esquire  
Marshall, Dennehey, Warner, Coleman & Goggin  
2000 Market Street, Suite 2300  
Philadelphia, PA 19103  

                              SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: <u>December 29, 2020</u>        By: <u>/s/Karl A. Romberger., Jr.</u>  
                                             Karl A. Romberger, Jr., Esquire, PA60636  
                                             Justin D. Barbetta, Esquire, PA318221  
                                             331 Butler Avenue, P. O. Box 5069  
                                             New Britain, Pennsylvania 18901  
                                             (215) 345-9111 – Office / (215) 348-1147 – Facsimile  
                                             Attorneys for Defendants,  
                                             North Penn School District, et al.