IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHLEY B. BENNETT,<br>    Plaintiff,<br><br>v.<br><br>NORTH PENN SCHOOL DISTRICT<br>BOARD OF SCHOOL DIRECTORS, et al.,<br>    Defendants. | Civil Action<br><br>No. 20-5841-AB<br><br>Jury Trial Demanded |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

According to Plaintiff's own filings, her racially offensive Facebook post was potentially and actually disruptive to the school district. According to her own filings, and after vowing to fight for her job, Plaintiff failed to show up – twice – for her Loudermill hearing. Both qualified immunity and Plaintiff's factually insufficient pleadings require dismissal of the Individual Defendants.

**I.  Background**

The Complaint purports to set forth three (3) causes of action for a violation(s) of Plaintiff's constitutional rights under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Based upon the allegations of the verified Complaint (which Defendants agree must be accepted as true for purposes of the Motion to Dismiss) and her Brief in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss, Plaintiff's case can best be summarized as follows:

Plaintiff was a long-time employee of the North Penn School District ("District"), including holding the position of Supervisor of Special Education for the District at the time of her separation of employment. Compl. ¶ 1. On June 24, 2020, Plaintiff posted on her Facebook page a comment regarding, *inter alia*, Black Lives Matter ("Facebook Post"). Compl. ¶¶ 19-21. The

speech in dispute was a repost of another individual's "comments about Black Lives Matter, COVID, and other political issues. It also contained a mention of President Donald Trump." Compl. ¶¶ 215. As a result of the Facebook Post, a social media mob formed in opposition to the Facebook Post, members of the North Penn community became outraged, and residents contacted the District complaining of the post. Compl. ¶¶ 22-23.

On June 25, 2020, the District's Director of Human Resources, Mia Kim, notified Plaintiff that she was being suspended as a result of the Facebook Post pending an investigation. Compl. ¶ 26. On June 26, 2020, the District issued a press release ("Press Release") disagreeing with the viewpoints expressed by Plaintiff in the Facebook Post and explaining that Plaintiff was placed on administrative leave while an investigation was concluded. Compl. ¶¶ 29 – 32. The Press Release was allegedly drafted by Defendant Christine Liberaski Kroznuski and Defendant Kim, and approved by all Defendants. Compl. ¶ 30. Plaintiff alleges and concludes that the Press Release amounted to retaliatory conduct that violated Plaintiff's First Amendment rights. Compl. ¶ 29. It must be noted that Plaintiff repeatedly takes aim at Defendants in the Complaint for being "overwhelmingly left-wing administrators and elected officials." E.g., Compl. ¶ 6.

Plaintiff claims that she was never provided with "actual charges" or "evidence." Compl. ¶ 51. However, as part of the District's investigation, Plaintiff was given an opportunity to defend herself when she was interviewed by Defendants Kim and Arney on June 29 and 30, 2020 and July 1, 2020. Compl. ¶ 52. Plaintiff claims that these interviews were conducted with the purpose of coercing Plaintiff to resign or face termination. Compl. ¶ 53. Defendant Kim allegedly discussed the pros and cons of resignation versus termination with Plaintiff during one of the meetings. Compl. ¶¶ 59-69. Plaintiff alleges that she was told by Defendant Kim that she could either resign or face the possibility of termination by the District's Board. Id. Defendant Kim advised Plaintiff that she believed that the Board would ultimately decide to terminate Plaintiff and that Plaintiff should consider same in making her determination as to whether to resign. Id. At the conclusion

of these interviews, Plaintiff decided that she would not resign and would "fight for [her] job." Compl. ¶ 59.

Subsequently, and in an apparent about face, Plaintiff rejected a severance agreement offered by the District and sent a letter of resignation to the District dated July 9, 2020. Compl. ¶ 99. In response, Defendant Kim repeated her position that she thought resignation was in Plaintiff's best interest as opposed to facing discipline by the Board. Compl. ¶ 101. Defendant Kim specifically advised Plaintiff of her opportunity to be heard at a <u>Loudermill</u> hearing scheduled for July 13, 2020, and she sought confirmation regarding Plaintiff's resignation. <u>Id</u>. Plaintiff responded to Defendant Kim's letter on July 10, 2020, stating that she was forced to resign and asking that she no longer be contacted. Compl. ¶ 107.

Based upon the uncertainty as to whether Plaintiff voluntarily resigned, Defendant Kim again requested guidance from Plaintiff regarding her resignation and again advised Plaintiff of the July 13, 2020 <u>Loudermill</u> hearing. Compl. ¶ 109. After receiving correspondence from an attorney claiming to represent Plaintiff (a different attorney than the week before who represented Plaintiff in negotiation of a severance agreement with the District), Defendant Kim again advised Plaintiff that if the District did not receive notice of a voluntary resignation, a <u>Loudermill</u> hearing would be necessary. Compl. ¶ 113. Defendant Kim advised Plaintiff that she would be willing to reschedule the <u>Loudermill</u> hearing for July 14, 2020. <u>Id</u>. Plaintiff did not appear for the July 13 or 14, 2020 <u>Loudermill</u> hearing (effectively abandoning her job) and, as a result, the Board accepted and approved her resignation on July 16, 2020. Plaintiff was paid through July 14, 2020, to which she apparently takes issue and claims that her resignation date was, in fact, July 9, 2020. Compl. ¶ 123.

## II. Argument

The issue of whether Defendants are entitled to qualified immunity has been fully briefed in Defendants' Brief in Support of their Motion to Dismiss, i.e., that Plaintiff's constitutional rights, if any, were not clearly established at the time of the alleged misconduct because her alleged protected speech concerned the new phenomena of Black Lives Matter and the COVID-19 Pandemic. The following arguments are set forth in the alternative to the extent that the Court concludes that all Defendants had sufficient personal involvement and are not entitled to qualified immunity, which is expressly denied for the reasons set forth in Defendants' Motion and Brief.

### A. The Complaint fails to set forth a viable First Amendment Retaliation claim against any Defendant based upon the allegations of the Complaint because disruption of the District's workplace occurred as a result of Plaintiff's speech.

Counts I and II of the Complaint attempt to set forth claims for First Amendment Retaliation. Simply put, Plaintiff claims that she was forced to resign as a result of the Facebook Post that contained political subject matter and, although not entirely clear, that Defendants hold a different political view than that of Plaintiff. It must be noted that there are no allegations that Plaintiff is affiliated with any political party or that Plaintiff has been prevented from associating with any political party as a result of any conduct of Defendants and, therefore, Count II must be dismissed on this basis alone. Additionally, for the following reasons, Plaintiff's First Amendment Retaliation claims must be dismissed.

Where "a public employer penalizes a particular employee because of past expression," the Court applies the familiar balancing test of Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). See Swartzwelder v. McNeilly, 297 F.3d 228, 235 (3d Cir. 2002). Under that test, the Court begins by asking whether the employee's speech involved a "matter of public concern," meaning that the speech is "fairly considered as relating to any matter of political, social[,] or other concern to the community." Baldassare v. State of N.J., 250 F.3d 188, 195 (3d Cir. 2001) If the

answer is yes, the Court considers whether the employee's First Amendment "interest in the speech ... outweighs any potential disruption of the work environment and decreased efficiency of the office." Curinga v. Clairton, 357 F.3d 305, 312 (3d Cir. 2004). And while the government "need not show the existence of actual disruption" caused by the employee's speech, it must at least show "that disruption is likely to occur because of the speech." Munroe v. Central Bucks Sch. Dist., 805 F.3d 454, 472 (3d Cir. 2015). Defendants acknowledge that the government must "make a substantial showing that the speech is, in fact, likely to be disruptive before it may be punished." Waters v. Churchill, 511 U.S. 661, 674 (1994) (citations omitted).

Even assuming, *arguendo*, that Plaintiff's Facebook Post included matters of public concern, Plaintiff's First Amendment Retaliation claim fails as a matter of law because disruption was likely to occur as result and, in fact, it did occur, based upon the verified allegations of the Complaint. More specifically, the following allegations show that disruption either was likely to occur or did occur following publication of the Facebook post:

- "That all ended when the proverbial **social media mob** came for Ashley Bennett in late June 2020 because she expressed mainstream political opinions critical of Black Lives Matter…" Compl. ¶ 2 (emphasis added).
- The District was required to issue a press release the day immediately following the Facebook Post as a result of the community's response to make it clear that the District values diversity. Compl. ¶¶ 5, 34.
- "Some members of the community, ironically, were **outraged** with the content of her repost." Compl. ¶ 22 (emphasis added).
- "However, as is often the case these days, a **social media mob formed…contacting school officials**." Compl. ¶ 23 (emphasis added).

5

- "The District should not have offered aid, succor, and legitimacy to such a **mob**." Compl. ¶ 25 (emphasis added).
- "As the District was posting the press release and commenting for the media, the superintendent defendant Curtis Dietrich and several board members also told members of the **public agitating** to have Bennett fired…" Compl. ¶ 37 (emphasis added).
- The District was required to investigate the incident and interviewed Plaintiff on three (3) separate occasions. Compl. ¶ 52.

Accordingly, based upon the allegations of the Complaint, and whether intended or unintended, disruption at the District occurred as a result of the Facebook Post during a time of civil unrest. A disruptive "mob" formed and residents contacted the District regarding the contents of Plaintiff's Facebook Post. Moreover, Plaintiff admits that it is "often the case these days" that a mob would be formed and would interrupt activity at the District. Therefore, even if the Complaint did not include admissions of actual disruption, Plaintiff concedes that disruption was likely to occur based upon the contents of the Facebook Post. Therefore, even if the Facebook Post was a matter of public concern, any alleged retaliatory conduct regarding Plaintiff's employment by any Defendant was permitted based upon the balancing test of Pickering and explained by Munroe, *supra*. Thus, Counts I and II of the Complaint must be dismissed for failure to set forth a viable claim for which the law provides recovery.

> **B.** **The Complaint fails to set forth a viable Fourteenth Amendment Due Process claim based upon the allegations of the Complaint because Plaintiff was afforded sufficient notice and opportunity to be heard as a matter of law.**

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected

6

interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." Burns v. Pa. Dep't. of Corrections, 544 F.3d 279, 285 (3d Cir.2008). Pursuant to Cleveland Bd. of Educ. v. Loudermill, an essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and an opportunity for a hearing. Loudermill, 470 U.S. 532, 542 (1985). This means that an employee who possesses a constitutionally protected property interest in employment must be given at least some way to respond to the charges against her prior to discharge. Id.

In the case, *sub judice*, Plaintiff was provided with ample notice and opportunity to be heard. Plaintiff was unequivocally aware of why she was facing potential discipline, e.g., the views expressed in her Facebook Post, based upon the District's press release the day following the Post, the "social media mob," etc., and any argument to the contrary is simply disingenuous. Additionally, Plaintiff was afforded, at a minimum, three (3) opportunities to explain/defend herself when she was interviewed by the District's Human Resources Director, Defendant Kim. Thereafter, Defendant Kim provided Plaintiff with a Loudermill notice scheduling a hearing on July 13, 2020, and Kim also offered to reschedule the hearing for July 14, 2020 if it was more convenient for Plaintiff. Compl. ¶¶ 107, 109, 113. Plaintiff declined to be heard when she failed to appear for her Loudermill hearing despite previously stating to Defendant Kim that "she would fight for her job." Regardless, it is axiomatic that Plaintiff had notice of her conduct and an opportunity to defend herself during the investigation and at the scheduled Loudermill hearing for which she voluntarily chose to not appear. Since she was given notice and an opportunity to be heard, the Complaint fails to set forth a viable claim for a violation of Plaintiff's Fourteenth Amendment Due Process rights as a matter of law and the same must be dismissed with prejudice.

**III.     Conclusion**

For the good and sound reasons advanced herein, and for those reasons set forth in their Motion to Dismiss and Brief in Support, Defendants respectfully request that the claims against them be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

                                Respectfully Submitted,

                                SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: September 24, 2021        By:       */s/Karl A. Romberger, Jr.*
                                              Karl A. Romberger, Jr., Esquire, PA 60636
                                              Gary H. Dadamo, Esquire, PA 93292
                                              331 Butler Avenue, Post Office Box 5069
                                              New Britain, Pennsylvania  18901
                                              *t* (215) 345-9111
                                              *kromberger@sweetstevens.com*
                                              *gdadamo@sweetstevens.com*
                                              Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASHLEY B. BENNETT, | : | Civil Action No. 20-cv-05841-AB |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NORTH PENN SCHOOL DISTRICT | : | Jury Trial Demanded |
| BOARD OF SCHOOL DIRECTORS, et al., | : | |
| Defendants, | : | |

## CERTIFICATE OF SERVICE

I, Karl A. Romberger, Jr., attorney for Defendants, certify that a true and correct copy of Defendants' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. PROCEDURE 12(b)(6) were served on this date on the following by electronic mail to:

Francis Malofiy, Esquire
Alfred Fluehr, Esquire
280 North Providence Road Suite 1
Media, Pennsylvania 19063
francis@francisalexander.com

*Attorneys for Plaintiff*


SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: September 24, 2021        By:        */s/Karl A. Romberger, Jr.*
Karl A. Romberger, Jr., Esquire, PA 60636
Gary H. Dadamo, Esquire, PA 93292
331 Butler Avenue, Post Office Box 5069
New Britain, Pennsylvania 18901
*t* (215) 345-9111
*kromberger@sweetstevens.com*
*gdadamo@sweetstevens.com*
Attorneys for Defendant